1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

HARMEET K. DHILLON (SBN: 207873)
harmeet@dhillonlaw.com
MARK P. MEUSER (SBN: 231335)
mmeuser@dhillonlaw.com
GREGORY R. MICHAEL (SBN: 306814)
gmichael@dhillonlaw.com
DHILLON LAW GROUP INC.
177 Post Street, Suite 700
San Francisco, California 94108
Telephone: (415) 433-1700
Facsimile: (415) 520-6593

MARK GERAGOS (SBN: 108325)
mark@geragos.com
ALEXANDRA KAZARIAN (SBN: 244494)
ak@geragos.com
MATTHEW VALLEJO (SBN: 322713)
vallejo@geragos.com
GERAGOS & GERAGOS,
A Professional Corporation
644 South Figueroa Street
Los Angeles, CA 90017-3411
Phone: (213) 625-3900
Fax: (213) 232-3255

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT FOR

## THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **STANISLAUS FUNDING, INC.**, a California corporation dba **PATIOWORLD**,<br><br>      Plaintiff,<br><br>            v.<br><br>**GAVIN NEWSOM**, in his official capacity as the Governor of California; **XAVIER BECERRA**, in his official capacity as the Attorney General of California; **MARK** | Case No.: 2:20-cv-4646<br><br>**COMPLAINT FOR DECLARATORY, INJUNCTIVE RELIEF, AND DAMAGES FOR**<br><br>1)  **14TH AMENDMENT EQUAL PROTECTION;** |

1

Complaint                                                                     Case No.

**GHILARDUCCI**, in his official capacity as Director of the Governor's Office of Emergency Services; **SONIA Y. ANGELL**, in her official capacity as the State Public Health Officer and Department of Public Health Director, **DR. ERICA PAN**, in her official capacity as Interim Health Officer of Alameda County; **GREGORY AHERN**, in his official capacity as the Alameda County Sheriff; **SCOTT HAGGERTY**, in his official capacity as an Alameda County Supervisor; **RICHARD VALLE**, in his official capacity as an Alameda County Supervisor; **WILMA CHAN**, in her official capacity as an Alameda County Supervisor; **NATE MILEY**, in his official capacity as an Alameda County Supervisor; **KEITH CARSON**, in his official capacity as an Alameda County Supervisor; **DR. CHRIS FARNITANO**, in his official capacity as the Contra Costa County Health Officer; **DAVID LIVINGSTON**, in his official public capacity as the Contra Costa County Sheriff; **JOHN M. GIOIA**, in his official capacity as a Contra Costa County Supervisor; **CANDACE ANDERSEN**, in her official capacity as a Contra Costa County Supervisor; **DIANE BURGIS**, in her official capacity as a Contra Costa County Supervisor; **KAREN MITCHOFF**, in her official capacity as a Contra Costa County Supervisor; **FEDERAL D. GLOVER**, in his official capacity as a Contra Costa County Supervisor; **DR. BARBARA FERRER**, in her official capacity as the Director of the Los Angeles County Department of Health; **DR. MUNTU DAVIS**, in his official capacity as the Los Angeles County Health Officer; **ALEX VILLANUEVA**, in his official capacity as the Los Angeles County Sheriff; **HILDA SOLIS**, in her official capacity as a Los Angeles County

2) 5TH AND 14TH AMENDMENT DUE PROCESS;
3) COMMERCE CLAUSE;
4) TAKINGS CLAUSE;
5) 8TH AMENDMENT EXCESSIVE FINES;
6) VIOLATION OF CALIFORNIA CONSTITUTION ART. I, § 1,
7) VIOLATION OF CALIFORNIA CONSTITUTION ART. I, § 7,
8) VIOLATION OF CALIFORNIA CONSTITUTION ART. XI, § 7,
9) VIOLATION OF CALIFORNIA STATUTES REGARDING CRIMINAL SANCTIONS, AND
10) JUST COMPENSATION UNDER CALIFORNIA CODE.

**DEMAND FOR JURY TRIAL**



2

Complaint                                        Case No.

Supervisor; **MARK RIDLEY-THOMAS**, in his official capacity as a Los Angeles County Supervisor; **SHEILA KUEHL**, in her official capacity as a Los Angeles County Supervisor; **JANICE HAHN**, in her official capacity as a Los Angeles County Supervisor; **KATHRYN BARGER**, in her official capacity as a Los Angeles County Supervisor; **MATT WILLIS, MD, MPH**, in his official capacity as the Marin County Director and Public Health Officer; **ROBERT T. DOYLE**, in his official public capacity as the Marin County Sheriff; **JUDY ARNOLD**, in her official capacity as a Marin County Supervisor; **DENNIS RODONI**, in his official capacity as a Marin County Supervisor; **KATIE RICE**, in her official capacity as a Marin County Supervisor; **KATE SEARS**, in her official capacity as a Marin County Supervisor; **DAMON CONNOLLY**, in his official capacity as a Marin County Supervisor; **DR. NICHOLE QUICK**, in her official capacity as the Orange County Director and Public Health Officer; **DON BARNES,** in his official capacity as the Orange County Sheriff; **MICHELLE STEEL**, in her official capacity as an Orange County Supervisor; **ANDREW DO**, in his official capacity as an Orange County Supervisor; **DONALD P. WAGNER**, in his official capacity as an Orange County Supervisor; **DOUG CHAFFEE**, in his official capacity as an Orange County Supervisor; **LISA BARTLETT**, in her official capacity as an Orange County Supervisor; **DR. SCOTT MORROW**, in his official capacity as the San Mateo County Director and Public Health Officer; **CARLOS G. BOLANOS**, in his official capacity as the San Mateo County Sheriff; **DAVE PINE**, in his official capacity as a San Mateo County Supervisor; **CAROLE GROOM**, in her official capacity as a San

3



Complaint

Case No.

Mateo County Supervisor; **DON HORSLEY**, in his official capacity as a San Mateo County Supervisor; **WARREN SLUCUM**, in his official capacity as a San Mateo County Supervisor; **DAVID CANEPA**, in his official capacity as a San Mateo County Supervisor; **DR. SARA H. CODY**, in her official capacity as the Santa Clara County Director and Public Health Officer; **LAURIE SMITH**, in her official public capacity as the Santa Clara County Sheriff; **MIKE WASSERMAN**, in his official capacity as a Santa Clara County Supervisor; **CINDY CHAVEZ**, in her official capacity as a Santa Clara County Supervisor; **DAVE CORTESE**, in his official capacity as a Santa Clara County Supervisor; **SUSAN ELLENBERG**, in her official capacity as a Santa Clara County Supervisor; **JOE SIMITIAN**, in his official capacity as a Santa Clara County Supervisor; **DR. ROBERT LEVIN**, in his official capacity as the Ventura County Director and Public Health Officer; **WILLIAM AYUB**, in his official public capacity as the Ventura County Sheriff; **STEVE BENNETT**, in his official capacity as a Ventura County Supervisor; **LINDA PARKS**, in her official capacity as a Ventura County Supervisor; **KELLY LONG**, in her official capacity as a Ventura County Supervisor; **BOB HUBER**, in his official capacity as a Ventura County Supervisor; **JOHN ZARAGOZA**, in his official capacity as a Ventura County Supervisor;

    Defendants.



4

Complaint

Case No.

*Those who would give up essential liberty to purchase a little temporary safety deserve neither liberty nor safety.*

– Benjamin Franklin, Speech to the Pennsylvania Assembly, November 11, 1755

Plaintiff Stanislaus Funding, Inc., dba Patioworld ("Patioworld") through its attorneys, Dhillon Law Group, Inc. and Geragos & Geragos, brings claims against Gavin Newsom, in his official capacity as Governor of California; Xavier Becerra, in his official capacity as Attorney General of California; Mark Ghilarducci, in his official capacity as Director of the Governor's Office of Emergency Services; Sonia Y. Angell, in her official capacity as the State Public Health Officer and Director of the California Department of Public Health; Dr. Erica Pan, in her official capacity as Interim Health Officer of Alameda County; Gregory Ahern, in his official capacity as the Alameda County Sheriff; Scott Haggerty, Richard Valle, Wilma Chan, Nate Miley, and Keith Carson, in their official capacities as Alameda County Supervisors; Dr. Chris Farnitano, in his official capacity as the Contra Costa County Health Officer; David Livingston, in his official public capacity as the Contra Costa County Sheriff; John M. Gioia, Candace Andersen, Diane Burgis, Karen Mitchoff, and Federal D. Glover, in their official capacities as Contra Costa County Supervisors; Dr. Barbara Ferrer, in her official capacity as the Director of the Los Angeles County Department of Health; Dr. Muntu Davis, in his official capacity as the Los Angeles County Health Officer; Alex Villanueva, in his official capacity as the Los Angeles County Sheriff; Hilda Solis, Mark Ridley-Thomas, Sheila Kuehl, Janice Hahn, and Kathryn Barger, in their official capacities as Los Angeles County Supervisors; Dr. Matt Willis, in his official capacity as the Marin County Director and Public Health Officer; Robert T. Doyle, in his official public capacity as the Marin County Sheriff; Judy Arnold, Dennis Rodoni, Katie Rice, Kate Sears, and Damon Connolly, in their official capacities as Marin County Supervisors; Dr. Nichole Quick, in her official capacity as the Orange County Director and Public Health Officer; Don Barnes**,** in his official capacity as the Orange County



Complaint                                                                                           Case No.

Sheriff; Michelle Steel, in her official capacity as an Orange County Supervisor; Andrew Do, in his official capacity as an Orange County Supervisor; Donald P. Wagner, in his official capacity as an Orange County Supervisor; Doug Chaffee, in his official capacity as an Orange County Supervisor; Lisa Bartlett, in her official capacity as an Orange County Supervisor; Dr. Scott Morrow, in his official capacity as the San Mateo County Director and Public Health Officer; Carlos G. Bolanos, in his official capacity as the San Mateo County Sheriff; Dave Pine, Carole Groom, Don Horsley, Warren Slucum, and David Canepa, in their official capacities as San Mateo County Supervisors; Dr. Sara H. Cody, in her official capacity as the Santa Clara County Director and Public Health Officer; Laurie Smith, in her official public capacity as the Santa Clara County Sheriff; Mike Wasserman, Cindy Chavez, Dave Cortese, Susan Ellenberg, and Joe Simitian, in their official capacities as Santa Clara County Supervisors; Dr. Robert Levin, in his official capacity as the Ventura County Director and Public Health Officer; William Ayub, in his official public capacity as the Ventura County Sheriff; and Steve Bennett, Linda Parks, Kelly Long, Bob Huber, and John Zaragoza, in their official capacities as Ventura County Supervisors. Plaintiff alleges and shows the Court as follows (this "Complaint").

## NATURE OF ACTION

1.      On April 27, 2020, Attorney General William Barr sent a memorandum to all United States Attorneys regarding civil rights violations occurring in various states during the coronavirus crisis.[1]

2.      Attorney General Barr reminded the top federal law enforcement officials of the United States that "the Constitution is not suspended in times of crisis."

---

[1] Available as of the date of filing at: https://cdn.cnsnews.com/attachment/ag_memo_-_balancing_public_safety_with_the_preservation_of_civil_rights_0.pdf.



Complaint                                                                    Case No.

3.     In his memorandum, Attorney General Barr directed all United States Attorneys to identify state directives that could be violating the Constitutional rights and civil liberties of individual citizens. Attorney General Barr then directed that:

> If a state or local ordinance crosses the line from an appropriate exercise of authority to stop the spread of COVID-19 into an overbearing infringement of constitutional and statutory protections, the Department of Justice may have an obligation to address that overreach in federal court.

4.     This lawsuit is filed to challenge the very type of overbearing infringement of constitutional and statutory protections identified by Attorney General Barr.

5.     Defendants have used the Coronavirus pandemic to expand their authority by unprecedented lengths, depriving Plaintiffs and all other residents of California of fundamental rights protected by the U.S. and California Constitutions, especially but not limited to, the rights to liberty, property, and travel, the right to the equal protection of the law, and the rights protected by the California Constitution and California law.

6.     It is this Court's duty to defend these constitutional and statutory principles by safeguarding the rights and liberties of Californians that Defendants violate.

7.     This Action presents facial and as-applied challenges to the Governor of California's March 19, 2020 Executive Order N-33-20 (the "State Order") attached here as Exhibit 1, and the county orders imposed by the respective Health Officers of Alameda County attached as Exhibit 2, Contra Costa County attached as Exhibit 3, Los Angeles County attached as Exhibit 4, Marin County attached as Exhibit 5, San Mateo County attached as Exhibit 6, Santa Clara County attached as Exhibit 7, and Ventura County attached as Exhibit 8 (collectively "the County Orders").

8.     The State and County Orders and Defendants' enforcement thereof violate (1) the Equal Protection clause of the Fourteenth Amendment, (2) the Due Process clause of the Fifth and Fourteenth Amendments, (3) the Commerce Clause, (4) the Takings Clause, (5) the Excessive Fines clause, (6) California Constitution Art. I, § 1, (7) California Constitution Art. I, § 7, (8) California Constitution Art. XI, § 7, (9)



Complaint

Case No.

Violation of California statutes regarding criminal sanctions, and (10) Just
Compensation under California codes.

## JURISDICTION AND VENUE

9.     This action arises under 42 U.S.C. § 1983 in relation to Defendants'
deprivation of Plaintiff's fundamental rights to liberty, property, and travel under the
Due Process clause of the Fourteenth Amendment of the U.S. Constitution; Plaintiffs'
right to equal protection under the Fourteenth Amendment of the U.S. Constitution;
Defendants' violation of the Commerce Clause of Art 1, sec. 8 of the U.S. Constitution;
preemption of the County Orders by the California Constitution; and Defendants'
violations of California state statutes.

10.     Accordingly, this Court has federal question jurisdiction under 28 U.S.C.
§§ 1331 and 1343. This Court has authority to award the requested declaratory relief
under 28 U.S.C. § 2201; the requested injunctive relief and damages under 28 U.S.C. §
1343(a); damages under 42 U.S.C. § 1983 and California law; and attorneys' fees and
costs under 42 U.S.C. § 1988.

11.     The Central District of California is the appropriate venue for this action
pursuant to 28 U.S.C. §§ 1391(b)(1) and (2) because it is the District in which
Defendants maintain offices, exercise their authority in their official capacities, and will
enforce the State Order; and it is the District in which a substantial portion of the events
giving rise to the claims occurred.

## PARTIES

12.     Plaintiff Stanislaus Funding, Inc., is a California corporation doing
business as Patioworld since 1990 and maintains ten (10) showrooms in eight (8)
counties across California. It sells retail merchandise with a focus on high-end outdoor
furnishings and accessory merchandise to a boutique clientele. Its business model was
built around large-ticket in-person sales at its large showrooms with a focus on personal
connections between its sales staff and customers. Due to this business model, its
showroom traffic is very light with between three and four staff members at each



Complaint                                                                    Case No.

location and no more than five to seven customers in each store at any given time. Eight (8) of its locations offer a showroom of 7,000-10,000 square feet, while the remaining two (2) in Pleasanton and Thousand Oaks sport a showroom of approximately 17,000 square feet. At its smallest stores, this works out to over 600 square feet per person at any given time. At its largest locations, Patioworld can offer over 1,500 square feet per person at any given time to both its staff and customers. Patioworld can easily ensure social distancing at all of its locations.

13.     Patioworld operates on a highly seasonal income stream with its peak selling season running from mid-February through approximately Labor Day. The Memorial Day weekend is its highest single sales weekend during the entire year. Patioworld shut down its six northern California locations (Pleasanton, Walnut Creek, San Raphael, San Carlos, Morgan Hill, and Sunnyvale) on March 17, the date the Bay Area County Orders went into effect. Patioworld shut its remaining locations (Woodland Hills, Pasadena, Fountain Valley, and Thousand Oaks) on March 21, the date that the remaining County Orders took effect. Patioworld's estimated losses due to the State Order and County Orders to date is around $4 million. This number is projected to increase to $5.5 million by the end of May.

14.     Defendant Gavin Newsom ("Newsom") is made a party to this Action in his official capacity as the Governor of California. *See, e.g.*, *Ex Parte Young*, 209 U.S. 123 (1908). The California Constitution vests the "supreme executive power of the State" in the Governor, who "shall see that the law is faithfully executed." Cal. Const. art. V, § 1. Also, Newsom signed the State Order on March 19, 2020.

15.     Defendant Xavier Becerra is made a party to this Action in his official capacity as the Attorney General of California. *See, e.g.*, *Ex Parte Young*, *supra*. Under California law, Becerra is the chief law enforcement officer with supervision over all sheriffs in the State. Cal. Const. art. V, § 13.

16.     Defendant Mark Ghilarducci is made a party to this Action in his official capacity as Director of the Governor's Office of Emergency Services. *See*, *e.g.*, *Ex*



Complaint                                                                 Case No.

*Parte Young*, *supra*. Under the State Order, Ghilarducci is tasked with enforcement of the State Order.

17.     Defendant Sonia Y. Angell, MD, MPH ("Dr. Angell") is made a party to this Action in her official capacity as the Director and State Public Health Officer. *See*, *e.g.*, *Ex Parte Young*, *supra*. Dr. Angell is sued herein in her official capacity to challenge the constitutionality of her office's list of "Essential Critical Infrastructure Workers" issued to complement Newsom's Executive Order.[2]

### Alameda County Defendants

18.     Defendant Dr. Erica Pan is made a party to this Action in her official capacity as the Interim Health Officer of Alameda County. *See*, *e.g.*, *Ex Parte Young*, *supra*. She signed the Alameda County Order.

19.     Defendant Gregory Ahern is made a party to this Action in his official capacity as the Alameda County Sheriff. *See*, *e.g.*, *Ex Parte Young*, *supra*. Under California law, he has the responsibility to enforce the Alameda County Order. *See* Cal. Gov't Code § 26601.

20.     Defendants Scott Haggerty, Richard Valle, Wilma Chan, Nate Miley, and Keith Carson are made parties to this Action in their official capacities as Alameda County Supervisors. *See*, *e.g.*, *Ex Parte Young*, *supra*. As such, they exercise broad legislative, executive, and quasi-judicial authority under California law, including the supervision of the county sheriff and public health officials. *See, e.g.*, Cal. Gov't Code § 25000, *et seq*.; Cal. Health and Safety Code § 101000.

21.     The Defendants in this subsection are referred to collectively as the "Alameda County Defendants."

---

[2] Available as of May 7, 2020, at:
https://covid19.ca.gov/img/EssentialCriticalInfrastructureWorkers.pdf.

Complaint                                                                 Case No.

**Contra Costa County Defendants**

22.    Defendant Dr. Chris Farnitano is made a party to this Action in his official capacity as the Health Officer of Contra Costa County. *See, e.g., Ex Parte Young, supra*. He signed the Contra Costa County Order.

23.    Defendant David Livingston is made a party to this Action in his official capacity as the Contra Costa County Sheriff. *See, e.g., Ex Parte Young, supra*. Under California law, he has the responsibility to enforce the Contra Costa County Order. *See* Cal. Gov't Code § 26601.

24.    Defendants John M. Gioia, Candace Andersen, Diane Burgis, Karen Mitchoff, and Federal D. Glover are made parties to this Action in their official capacities as Contra Costa County Supervisors. *See, e.g., Ex Parte Young, supra*. As such, they exercise broad legislative, executive, and quasi-judicial authority under California law, including the supervision of the county sheriff and public health officials. *See, e.g.*, Cal. Gov't Code § 25000, *et seq.*; Cal. Health and Safety Code § 101000.

25.    The Defendants in this subsection are referred to collectively as the "Contra Costa County Defendants."

**Los Angeles County Defendants**

26.    Defendant Dr. Barbara Ferrer is made a party to this Action in her official capacity as the Director of the Los Angeles County Department of Health. *See, e.g., Ex Parte Young, supra*.

27.    Defendant Dr. Muntu Davis is made a party to this Action in his official capacity as the Director and Public Health Officer of Los Angeles County. *See, e.g., Ex Parte Young, supra*. He signed the Los Angeles County Order.

28.    Defendant Alex Villanueva is made a party to this Action in his official capacity as the Los Angeles County Sheriff. *See, e.g., Ex Parte Young, supra*. Under California law, he has the responsibility to enforce the Los Angeles County Order. *See* Cal. Gov't Code § 26601.

11



Complaint

Case No.

29.     Defendants Hilda Solis, Mark Ridley-Thomas, Sheila Kuehl, Janice Hahn, and Kathryn Barger are made parties to this Action in their official capacities as Los Angeles County Supervisors. *See*, *e.g.*, *Ex Parte Young*, *supra*. As such, they exercise broad legislative, executive, and quasi-judicial authority under California law, including the supervision of the county sheriff and public health officials. *See, e.g.*, Cal. Gov't Code § 25000, *et seq.*; Cal. Health and Safety Code § 101000.

30.     The Defendants in this subsection are referred to collectively as the "Los Angeles County Defendants."

**Marin County Defendants**

31.     Defendant Dr. Matt Willis is made a party to this Action in his official capacity as the Health Officer of Marin County. *See*, *e.g.*, *Ex Parte Young*, *supra*. He signed the Marin County Order.

32.     Defendant Robert T. Doyle is made a party to this Action in his official capacity as the Marin County Sheriff. *See*, *e.g.*, *Ex Parte Young*, *supra*. Under California law, he has the responsibility to enforce the Marin County Order. *See* Cal. Gov't Code § 26601.

33.     Defendants Judy Arnold, Dennis Rodoni, Katie Rice, Kate Sears, and Damon Connolly are made parties to this Action in their official capacities as Marin County Supervisors. *See*, *e.g.*, *Ex Parte Young*, *supra*. As such, they exercise broad legislative, executive, and quasi-judicial authority under California law, including the supervision of the county sheriff and public health officials. *See, e.g.*, Cal. Gov't Code § 25000, *et seq.*; Cal. Health and Safety Code § 101000.

34.     The Defendants in this subsection are referred to collectively as the "Marin County Defendants."

**Orange County Defendants**

35.     Defendant Dr. Nichole Quick is made a party to this Action in her official capacity as the Health Officer of Orange County. *See*, *e.g.*, *Ex Parte Young*, *supra*. She signed the Orange County Order.

12



Complaint                                                                                          Case No.

36.    Defendant Don Barnes is made a party to this Action in his official capacity as the Orange County Sheriff. *See*, *e.g.*, *Ex Parte Young*, *supra*. Under California law, he has the responsibility to enforce the Orange County Order. *See* Cal. Gov't Code § 26601.

37.    Defendants Michelle Steel, Andrew Do, Donald P. Wagner, Doug Chaffee, and Lisa Bartlett, are made parties to this Action in their official capacities as Orange County Supervisors. *See*, *e.g.*, *Ex Parte Young*, *supra*. As such, they exercise broad legislative, executive, and quasi-judicial authority under California law, including the supervision of the county sheriff and public health officials. *See, e.g.*, Cal. Gov't Code § 25000, *et seq*.; Cal. Health and Safety Code § 101000.

**San Mateo County Defendants**

38.    Defendant Dr. Scott Morrow is made a party to this Action in his official capacity as the Health Officer of San Mateo County. *See*, *e.g.*, *Ex Parte Young*, *supra*. He signed the San Mateo County Order.

39.    Defendant Carlos G. Bolanos is made a party to this Action in his official capacity as the San Mateo County Sheriff. *See*, *e.g.*, *Ex Parte Young*, *supra*. Under California law, he has the responsibility to enforce the San Mateo County Order. *See* Cal. Gov't Code § 26601.

40.    Defendants Dave Pine, Carole Groom, Don Horsley, Warren Slucum, and David Canepa are made parties to this Action in their official capacities as San Mateo County Supervisors. *See*, *e.g.*, *Ex Parte Young*, *supra*. As such, they exercise broad legislative, executive, and quasi-judicial authority under California law, including the supervision of the county sheriff and public health officials. *See, e.g.*, Cal. Gov't Code § 25000, *et seq*.; Cal. Health and Safety Code § 101000.

41.    The Defendants in this subsection are referred to collectively as the "San Mateo County Defendants."



---

13

Complaint                                                                     Case No.

**Santa Clara County Defendants**

42.    Defendant Dr. Sara H. Cody is made a party to this Action in her official capacity as the Health Officer of Santa Clara County. *See, e.g., Ex Parte Young, supra.* She signed the Santa Clara County Order.

43.    Defendant Laurie Smith is made a party to this Action in her official capacity as the Santa Clara County Sheriff. *See, e.g., Ex Parte Young, supra.* Under California law, she has the responsibility to enforce the Santa Clara County Order. *See* Cal. Gov't Code § 26601.

44.    Defendants Mike Wasserman, Cindy Chavez, Dave Cortese, Susan Ellenberg, and Joe Simitian are made parties to this Action in their official capacities as Santa Clara County Supervisors. *See, e.g., Ex Parte Young, supra.* As such, they exercise broad legislative, executive, and quasi-judicial authority under California law, including the supervision of the county sheriff and public health officials. *See, e.g.,* Cal. Gov't Code § 25000, *et seq.*; Cal. Health and Safety Code § 101000.

45.    The Defendants in this subsection are referred to collectively as the "Santa Clara County Defendants."

**Ventura County Defendants**

46.    Defendant Dr. Robert Levin is made a party to this Action in his official capacity as the Health Officer of Ventura County. *See, e.g., Ex Parte Young, supra.* She signed the Ventura County Order.

47.    Defendant William Ayub is made a party to this Action in his official capacity as the Ventura County Sheriff. *See, e.g., Ex Parte Young, supra.* Under California law, he has the responsibility to enforce the Ventura County Order. *See* Cal. Gov't Code § 26601.

48.    Defendants Steve Bennett, Linda, Parks, Kelly Long, Bob Huber, and John Zaragoza are made parties to this Action in their official capacities as Ventura County Supervisors. *See, e.g., Ex Parte Young, supra.* As such, they exercise broad legislative, executive, and quasi-judicial authority under California law, including the supervision

14



Complaint                                                                                          Case No.

of the county sheriff and public health officials. *See, e.g.*, Cal. Gov't Code § 25000, *et seq.*; Cal. Health and Safety Code § 101000.

49.     The Defendants in this subsection are referred to collectively as the "Ventura County Defendants."

50.     Each Defendant acted under color of state law with respect to all acts or omissions alleged herein.

## FACTUAL ALLEGATIONS

51.     On January 31, 2020, Alex Azar, the United States Secretary of Health and Human Services declared a public health emergency in response to the novel coronavirus, COVID-19.[3] On April 21, 2020, Mr. Azar renewed this declaration.[4]

52.     On or about March 13, 2020, President Donald J. Trump proclaimed a National State of Emergency as a result of the threat of the emergence of COVID-19.[5]

53.     Since the initial outbreak of COVID-19 in the United States in early 2020, the federal government's projections of the anticipated national death toll related to the virus has decreased substantially. Despite such revisions, Defendants have increasingly restricted or banned constitutionally-protected activities.[6][7]

---

[3] Available as of the date of filing at: https://www.phe.gov/emergency/news/healthactions/phe/Pages/2019-nCoV.aspx.
[4] Available as of the date of filing at: https://www.phe.gov/emergency/news/healthactions/phe/Pages/covid19-21apr2020.aspx.
[5] Available as of the date of filing at: https://www.whitehouse.gov/presidential-actions/proclamation-declaring-national-emergency-concerning-novel-coronavirus-disease-covid-19-outbreak/.
[6] *See, e.g.*, https://www.usatoday.com/story/news/investigations/2020/04/09/coronavirus-deaths-u-s-could-closer-60-k-new-model-shows/5122467002.
[7]*See, e.g.*, https://www.wsj.com/articles/surfs-upand-so-are-tensionsafter-california-closes-beaches-11588539203.

Complaint                                                                                           Case No.

**FACTUAL ALLEGATIONS AS TO THE STATE OF CALIFORNIA**

54.    On or about March 4, 2020, Newsom proclaimed a State of Emergency because of the COVID-19 threat.[8]

55.    On or about March 16, 2020, six Bay Area counties imposed a shelter in place order.[9]

56.    Patioworld has at least one showroom in each of these counties except San Francisco.[10] Patioworld closed all of its Bay Area showrooms on March 17, 2020, to comply with the Alameda, Contra Costa, Marin, Orange, San Mateo, and Santa Clara County Orders.[11]

57.    On or about March 19, 2020, Newsom issued Executive Order N-33-20 in which he ordered "all residents … to immediately heed the current State public health directive[]" of that same date. Ex. 1. This prompted orders from several southern California Counties, including three where Patioworld has locations: Los Angeles, Orange, and Ventura. Patioworld promptly shut down its four southern California locations on March 21 in response to these county orders.

58.    The state public health directive requires "all individuals living in the State of California to stay home or at their place of residence except as needed to maintain continuity of operations of the federal critical infrastructure sectors[.]" *Id.*

---

[8] Available as the date of filing at: https://www.gov.ca.gov/wp-content/uploads/2020/03/3.4.20-Coronavirus-SOE-Proclamation.pdf.
[9] Available as of the date of filing at: https://www.statnews.com/2020/03/16/coronavirus-bay-area-counties-shelter-in-place/.
[10] Showrooms are located in Pleasanton (Alameda), Walnut Creek (Contra Costa), Woodland Hills and Pasadena (Los Angeles), San Raphael (Marin), Fountain Valley (Orange), San Carlos (San Mateo), Morgan Hill and Sunnyvale (Santa Clara), and Thousand Oaks (Ventura). *See* https://www.patioworld.net/locations (last visited on May 15, 2020).
[11] Orange County's Order was superseded by the State Order, and there is no longer a separate isolation order imposed by Orange County. *See* https://voiceofoc.org/wp-content/uploads/2020/03/EOC-Press-Release-34-State-of-California-Health-Order-Supersedes-Orange-County-Public-Helath-Order.pdf.

16



Complaint

Case No.

59.     The public health directive provides that its directives "shall stay in effect until further notice." *Id*. Newsom has indicated in various public remarks that living under his emergency orders is the "new normal" until the population has achieved herd immunity and a vaccine is available, which may occur in 12-18 months.[12]

60.     None of the powers explicitly granted under the California State Emergency Services Act allow Newsom to do what he is doing by sequestering every Californian within their homes.[13]

## NEWSOM ARBITRARILY EXEMPTS CERTAIN KINDS OF BUSINESSES, SUCH AS CANNABIS RETAIL STORES, FROM THE STATE ORDER AFTER PRESSURE FROM BUSINESS INTEREST GROUPS

61.     The State Order went on to acknowledge that the federal government had "identified 16 critical infrastructure sectors whose assets, systems, and networks, whether physical or virtual, are considered so vital to the United States that their incapacitation or destruction would have a debilitating effect on security, economic security, public health or safety, or any combination thereof" such that Newsom ordered that "Californians working in these 16 critical infrastructure sectors continue their work because of the importance of these sectors to Californians' health and well-being." Ex. 1.

62.     Newsom then made arbitrary exceptions, including declaring that cannabis retail stores were "essential" after pressure from the United Cannabis Business Association.[14]

---

[12] Press Briefing, April 14, 2020 at 29:55-36:55, last visited May 20, 2020: https://www.youtube.com/watch?v=wQW0QGthFV4 ("As I said, normal, it will not be, at least until we have herd immunity and we have a vaccine…which means they have to redesign those businesses… if we build that workforce to help us with tracing… hundreds of thousands of points of contact in terms of our tracing capacity.")
[13] Cal. Gov't Code § 8565, *et seq*.
[14] *See, e.g.*, https://www.wsj.com/articles/california-deems-pot-an-essential-coronavirus-business-11585005903 (last visited on May 18, 2020).



Complaint                                                                              Case No.

63.     On or about March 22, 2020, the California Public Health Officer designated a list of "Essential Critical Infrastructure Workers." This list was updated on April 28, 2020.[15]

64.     While some of the deemed-essential businesses are clearly critical to human needs despite an emergency (e.g., public safety, food supply chain, utilities), others, when viewed in the light of the prohibitions against Plaintiff, are arbitrary as they bear no connection to public health and have been created for the sole purpose of allowing Defendants' politically preferred trades and industries to continue operating while secondary interests are left in economic distress. The State Public Health Officer's Directive ("the Directive") includes the following as "essential":

   a. "Workers supporting the entertainment industries, studios, and other related establishments, provided they follow COVID-19 public health guidance around physical distancing." Directive, at 23. Workers supporting the entertainment industries are "essential" and allowed to work, while Plaintiff's retail business to provide outdoor furnishings and accessory merchandise to support the lives of California citizens who are sheltering-at-home is not. This distinction bears no connection whatsoever to public health.

   b. "Workers supporting the growth and distribution of plants and associated products for home gardens." Directive, at 6. Plaintiff sells outdoor furnishings and accessory merchandise which is often used as the starting point to design a home garden, to accent a home garden, and to enjoy the home garden after working in it. While the plant sellers are essential, Plaintiff's business is not. This underscores the irrational, arbitrary, and capricious nature of the State and County Orders and Defendants' enforcement.

---

[15] *See*, *supra*, n.2.

18



Complaint                                                                      Case No.

c. "Workers who support the supply chain of building materials from production through application and installation, including cabinetry, fixtures, … [and] appliances" and "[w]orkers in appliances retail, and related merchant retailers[.]" Directive, at 21.

d. Workers in laundromats, laundry services, and dry cleaners come in close, direct contact with the clothing and linens from members of the public, with no temporal limitation. These items which, if a customer is infected with COVID-19, pose as high a risk, if not greater, of infection as Plaintiffs' retail operation.

65. The federal guidelines for essential infrastructure that Newsom referenced in the State Order make no mention of cannabis retail stores.[16]

66. Further, cannabis retail stores operate in violation of federal law. *Taylor v. United States*, 136 S. Ct. 2074, 2080 (2016).

67. The State Order permits violations of federal law, but prohibits the Plaintiffs from exercising their constitutional rights to liberty, property, and travel, and to enjoy the equal protection of the laws.

///

///

///

**THE PURPOSE OF THE STATE ORDER IS TO BEND THE CURVE, OR REDUCE TRANSMISSION RATES TO MANAGEABLE LEVELS**

---

[16] Available as of the date of filing at: https://www.cisa.gov/identifying-critical-infrastructure-during-covid-19.

19



Complaint                                                                Case No.

68.     At a press conference on March 19, 2020, Newsom repeatedly said the rationale for the State Order was to "bend the curve."[17] He also said "[t]he point of the stay at home order is to make those numbers moot"[18] and put them "in the dustbin of history."[19] He added that one goal was to slow down transmission enough to reduce the strain it might place on hospital resources.[20] It is this laudable goal of "bending the curve," that Newsom has now tossed into the dustbin, in favor of an ever-shifting goalpost just out of reach of California's citizens.

69.     In a letter he wrote to President Trump the day before on March 18, 2020, Newsom projected that 56 percent of Californians, or roughly 25.5 million people, could be infected over the next eight weeks.[21] His letter went on to say that "[i]n some parts of our state, our case rate is doubling every four days."[22]

70.     As of May 16, 2020, there are 78,839 confirmed cases,[23] which is only 0.3% of Newsom's projection.

71.     At his March 19 press conference, Newsom explained that a 20 percent hospitalization rate could mean that California would face a shortfall of 19,543 hospital beds above the state's current capacity of approximately 78,000 beds.[24] He added that

---

[17] March 19, 2020 press briefing at 0:30-0:35, 8:10-8:20, 10:00-10:15, 24:20-24:30, 33:45-33:55, and 35:17-36:00, available as of May 18, 2020 at: https://www.youtube.com/watch?v=8OeyeK8-S5o.
[18] *Id.* at 35:10-35:20.
[19] *Id.* 33:55-34:05.
[20] *Id.* at 5:42-8:09.
[21] Available as of May 18, 2020, at: https://www.gov.ca.gov/wp-content/uploads/2020/03/3.18.20-Letter-USNS-Mercy-Hospital-Ship.pdf.
[22] *Id.*
[23] Available as of the date of filing at: https://www.cdph.ca.gov/Programs/CID/DCDC/Pages/Immunization/ncov2019.aspx.
[24] March 19, 2020 press briefing, *supra*, at 5:40-7:32.



Complaint                                                                                           Case No.

California had a surge capacity of 10,207 additional beds that could partially offset this shortfall.[25] Thus, he was predicting a total shortfall of approximately 9,336 beds.[26]

72.     Mark Ghaly, Newsom's Secretary of Health and Human Services, said that the 56 percent estimate came from "[u]sing the available literature, advice from the CDC and our understanding and experience in California, we applied a variety of different measures that looked at an attack rate, that looked at the $R_0$ … we looked at … hospitalization rates that we had available as well as other outcome measures."[27]

73.     The Secretary also stated that "[w]e knew that the attack rate of 56 percent that we chose was somewhat in the middle between the high-end and the low-end of what we'd seen in the literature . . . ."[28]

74.     Newsom admitted that his numbers did not account for any mitigation measures put in place. Rather, those numbers assumed that "we're just along for the ride[.]"[29]

75.     Contrastingly, several infectious disease experts, including Professor of Epidemiology John P.A. Ioannidis of Stanford University, called this an extreme, worst-case scenario that was unlikely to happen.[30] These experts are proving correct, and Newsom is being proved wrong.

76.     Although the California Emergency Services Act provides Newsom with the power to unilaterally promulgate regulations in an emergency, such regulations must at least be reasonable. Because such regulations may severely impinge the civil

---

[25] *Id*. at 7:20-7:40.
[26] *Id*.
[27] *Id*. at 28:49-31:11.
[28] *Id*.
[29] *Id*. at 24:20-24:40.
[30] *Newsom: 56 % of Californians Could Get Coronavirus If Nothing Is Done*, San Francisco Chronicle, March 19, 2020, available as of May 20, 2020 at: https://webcache.googleusercontent.com/search?q=cache:sokxG9_b-2oJ:https://www.sfchronicle.com/health/article/Newsom-56-of-Californians-could-get-coronavirus-15144438.php+&cd=1&hl=en&ct=clnk&gl=us.

21



1  liberties of the populace and curb an individual's freedom, only a clear showing of

2  emergent necessity may justify their imposition. Freedom to move about the state and

3  engage in business is a fundamental right which may be restricted only where necessary

4  to further the most compelling state interest, and such regulations must be narrowly

5  circumscribed to withstand a constitutional challenge for overbreadth and vagueness.

6  *Gayle v. Governor of Guam*, 414 F. Supp. 636, 638-39 (D. Guam 1976) (citing *Carroll*

7  *v. United States*, 267 U.S. 132 (1925)); *People v. McKelvy*, 23 Cal.App.3d 1027 (1972).

8       77.    It is widely accepted and understood that the judiciary defers to the

9  executive branch during states of emergencies. However, the judiciary must at least

10  review the executive's claims of emergency and not serve as a mere rubber-stamp.

11  Additionally, a deferential "hands-off" approach goes out the window if the legislature

12  has limited the executive's exercise of emergency authority. *See Humanitarian Law*

13  *Project v. U.S. Treasury Dep't,* 578 F.3d 1133, 1145 (9th Cir. 2009) (reviewing

14  Executive Order 13224—President's Bush invocation of authority under the

15  International Emergency Economic Powers Act or IEEPA, declaration of national

16  emergency, sanctioning of terrorist groups, and authorizing of Treasury to designate

17  further terrorist groups for sanctioning—in ruling that it was not unconstitutionally

18  vague); *see also United States v. Nazemzadeh*, No. 11 CR 5726 L, 2014 WL 310460, at

19  8 (S.D. Cal. Jan. 28, 2014) ("[IEEPA was] a response to two developments: first,

20  extensive use by Presidents of emergency authority under section 5(b) of the Trading

21  with the Enemy Act of 1917 to regulate both domestic and international economic

22  transactions unrelated to a declared state of emergency . . ."). The California Legislature

23  has set the procedures and limitations on the executive's emergency powers at

24  California Government Code section 8550, *et seq*. These laws are not mere surplusage,

25  and Newsom's actions must be measured against limitations placed on his office's

26  powers by the people through their elected representatives.

27       78.    California state courts also assess an executive's declaration of emergency,

28  its justifications, and orders promulgated under said declaration. *See California Corr.*

22



Complaint                                                             Case No.

*Peace Officers Assn. v. Schwarzenegger*, 163 Cal. App. 4th 802, 818 (2008) (assessing whether Governor's declaration met requirements of Emergency Services Act before ruling that the declaration and the emergency cited—and overcrowded prisons—met the requirements).

79.     The statutory authority by which the Defendants purport to exercise their purportedly untrammeled authority also requires the immediate discontinuation of the Orders once the emergency conditions have abated. California Government Code section 8567 provides "[w]henever the state of war emergency or state of emergency has been terminated, the orders and regulations shall be of no further force or effect." Section 8629 further requires that the Governor "shall proclaim the termination of a state of emergency at *the earliest possible date* that conditions warrant." (Emphasis added.) Continuing the state of emergency despite the abatement of the emergency conditions giving rise to it is *ultra vires,* would constitute an abuse of discretion, and is plainly subject to judicial review. That time has now come.

80.     On information and belief, Plaintiffs allege that conditions giving rise to the Governor's Proclamation on March 4, 2020 no longer meet the requirements of California Government Code section 8558, which requires conditions that "by reason of their magnitude, are or are likely to be beyond the control of the services, personnel, equipment, and facilities of any single county, city and county, or city and require the combined forces of a mutual aid region or regions to combat."

**NEWSOM ADMITS THE CURVE HAS BEEN FLATTENED**

81.     On April 16, 2020, during a briefing, Newsom stated that "[we] have successfully bent and arguably flattened the curve in the state of California."[31] Therefore, by Governor Newsom's own admission, no rational basis exists any longer to justify the State Order or any County Order.

---

[31] April 16, 2020 briefing by the Governor at 37:20, transcript available as of the date of filing, at: https://www.rev.com/blog/transcripts/gov-gavin-newsom-california-covid-19-briefing-transcript-april-16.



Complaint                                                                                           Case No.

82.     As of May 16, 2020, over eight weeks after Newsom's initial announcement, the number of COVID-19 cases so far in California according to the California Department of Public Health is 78,839 with the total number of *confirmed* cases requiring hospitalization—including ICU treatment—at 4,094.[32] This is down 595 from 4,689 on April 29, which is the highest number of simultaneous confirmed hospitalizations recorded by the state of California.[33]

83.     These numbers were compiled from the reports of 98% of all hospitals in California.[34]

84.     This is a far cry from the 20 percent hospitalization rate or the 56 percent infection rate predicted by Newsom in his March 19, 2020, press conference. Such figures would represent approximately 5 million Californians. Without minimizing its significance, 6,096 patients statewide when compared to Newsom's projection of 25.5 million infections, over 5 million total hospitalizations, nearly 100,000 simultaneous hospitalizations, and a 9,336-bed shortfall, shows at a minimum that Newsom has relied on grossly faulty numbers since the imposition of the State Order. Neither the threatened infection rate nor the hospitalization rate have manifested. Even if the mitigation measures imposed by the Orders prevented these rates from manifesting, Defendants bear the burden of demonstrating that the current draconian measures are narrowly tailored under current circumstances to account for Plaintiff's fundamental rights.

85.     On information and belief, part of the data that Newsom depended on for his claim of 25.5 million infections in California within eight weeks in his March 18,

---

[32] Available as of the date of filing at: https://public.tableau.com/views/COVID-19PublicDashboard/Covid-19Hospitals?%3Aembed=y&%3Adisplay_count=no&%3AshowVizHome=no.
[33] *Id.*
[34] *Id.*



Complaint                                                                                  Case No.

2020, letter was the initial rate of infection in Wuhan, the originating epicenter of COVID-19. Then, the numbers apparently showed a frightening $R_0$ of 5.7.[35]

86.    However, now the $R_0$ of COVID-19 without mitigation efforts is understood to be approximately 2.2-2.7.[36] With mitigation efforts, the $R_0$ of COVID-19 has been driven further down. The current $R_0$ for California is estimated to be 0.84 and has remained at 1.0 or below since April 10, 2020.[37] At rates below 1.0, the virus is not considered to be spreading.

87.    Effective lowering of the $R_0$ of COVID-19 need not be done with draconian shutdown orders. Social distancing and vigilant sanitation procedures suffice, as seen in Taiwan and other locations that have relied on temperature checkpoints and sanitation to contain the spread of the virus, to great effect.[38]

88.    On April 27, 2020, a revised study released by a team at Stanford University estimated that, based on antibody tests of 3,300 people, as much as 4.16% of Santa Clara County's population (81,000 people), had already contracted COVID-19 by April 3 and 4, 2020.[39] Santa Clara had 39 deaths as of April 4, 2020[40] out of a county

---

[35] Sanche S, Lin YT, Xu C, Romero-Severson E, Hengartner N, Ke R. High contagiousness and rapid spread of severe acute respiratory syndrome coronavirus. Available as of the date of filing at, available at: https://doi.org/10.3201/eid2607.200282 and: https://wwwnc.cdc.gov/eid/article/26/7/20-0282_article.

[36] Id.

[37] Available as of the date of filing at: https://rt.live/.

[38] Available as of the date of filing at: https://www.cbsnews.com/news/coronavirus-taiwan-great-example-pandemic/. No shelter in place order was ever issued in Taiwan.

[39] Available as of the date of filing at: https://www.medrxiv.org/content/10.1101/2020.04.14.20062463v2.full.pdf.

[40] Available as of the date of filing at: https://www.santaclaraca.gov/i-want-to/stay-informed/newsroom/coronavirus-updates/archived-covid-19-news-updates.



Complaint                                                                                    Case No.

population of 1,927,852.17.[41] This means that the death rate of those who had COVID-19 was not more than 0.048%.

89.     On April 10, 2020, Los Angeles County had 8,430 confirmed cases 241 deaths;[42] on April 11, 2020, Los Angeles County had 8,873 cases and 265 deaths, for an approximate death rate of 2.98 percent.[43] On April 20, 2020, the preliminary results of a collaborative antibody study done between the University of South California and the Public Health Department of Los Angeles County were released. Based on 863 tests, researchers estimated that as many as 5.6 percent of the L.A. County's population, or 442,000, already had COVID-19 on April 10 and 11.[44] Under this new testing, the death rate decreases from 2.98 percent to 0.599 percent of infections.

90.     A similar antibody test in New York City showed that 21 percent of the population (1,763,737) were infected with COVID-19 as of late April.[45] With the then-current number of confirmed deaths (12,571),[46] the putative death rate was 0.71 percent.

---

[41] Available as of the date of filing at:
https://www.census.gov/quickfacts/fact/table/santaclaracountycalifornia/PST045219.
[42] Available as of the date of filing at:
http://publichealth.lacounty.gov/phcommon/public/media/mediapubdetail.cfm?unit=media&ou=ph&prog=media&prid=2309.
[43] Available as of the date of filing at:
http://publichealth.lacounty.gov/phcommon/public/media/mediapubdetail.cfm?unit=media&ou=ph&prog=media&prid=2311.
[44] Available as of the date of filing at:
http://www.publichealth.lacounty.gov/phcommon/public/media/mediapubhpdetail.cfm?prid=2328.
[45] Available as of the date of filing at:
https://www.nytimes.com/2020/04/23/nyregion/coronavirus-antibodies-test-ny.html.
The estimated population of NYC is 8,398,748 as of July 1, 2018 per
https://www.census.gov/quickfacts/newyorkcitynewyork.
[46] Available as of the date of filing at: https://www1.nyc.gov/site/doh/covid/covid-19-data.page.



Complaint                                                                                                    Case No.

91.     Another antibody study by Miami-Dade County told a similar story: the confirmed number of deaths as of late April (1,268)[47] divided by the estimated number of infections (221,000)[48] gave a putative death rate of 0.57 percent. Each of these studies indicates that the COVID-19 mortality rate falls significantly short of those associated with other epidemics, including the 1917-1918 Spanish Flu, believed to have caused at least 2.5 percent of the infected to die.[49]

92.     In a 2006 paper, biosecurity experts Thomas V. Ingelsby, Jennifer B. Nuzzo, Tara O'Toole, and D.A. Henderson from the Center for Biosecurity of the University of Pittsburg Medical Center, identified 12 different disease control measures a community can implement: vaccination, isolation of the sick in hospitals, isolation of the sick at home, antiviral medications, personal hygiene (hand-washing and respiratory etiquette), large-scale quarantines, voluntary quarantines, travel restrictions, prohibitions of social gatherings, school closures, maintaining personal distance, and use of personal protective equipment.[50]

93.     This paper specifically denounces large-scale quarantines, school closures, and prohibitions on large social gatherings as there is no scientific evidence that such conduct actually slows the spread of influenza.[51] The authors note that the negative

---

[47] Available as of the date of filing at: https://www.miamiherald.com/news/coronavirus/article242395581.html.
[48] Available as of the date of filing at: https://www.miamidade.gov/releases/2020-04-24-sample-testing-results.asp.
[49] Available as of the date of filing at: https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3291398.
[50] Available as of the date of filing at: http://citeseerx.ist.psu.edu/viewdoc/download?doi=10.1.1.552.1109&rep=rep1&type=pdf&fbclid=IwAR0GVd4u_RXcWXs8MvfCxE7WUJNs-O5MTyyEEUwkNFxx4epZq8NyJTp_eQc.
[51] *Id.* at 369-72.

27

Complaint                                                                    Case No.

economic consequences from such conduct would be "so extreme … that this mitigation measure should be eliminated from serious consideration."[52]

94.     The authors posit that isolation of the ill and personal hygiene should be the focus during a pandemic while a vaccine is being developed.[53]

95.     Add to this the fact that the California Health and Human Services Agency dismissively denied a document request by the California Globe asking for any documents used to back up the "science" behind the State Order, including mortality rates by county and alternate social distancing proposals.[54]

96.     Studies and health data show that the State Order would not only be of no benefit to preventing the transmission of COVID-19 or death from it—it could actually be detrimental to such efforts.

97.     First, open air and sunlight (whether the mechanism of action is UV radiation or thermal energy) reduce the likelihood of transmission; the open air seemingly dissipates viruses to a negligible amount,[55] while sunlight lessens the lifetime of an infectious, viral particle.[56] [57] A Department of Homeland Security official

---

[52] *Id.* at 371.

[53] *Id.* at 371-72.

[54] Available as of the date of filing at: https://californiaglobe.com/section-2/california-health-and-human-services-agency-denies-it-has-documents-to-justify-lockdown-or-re-opening-policy/.

[55] Available as of the date of filing at: https://www.medrxiv.org/content/10.1101/2020.04.04.20053058v1.

[56] Available as of the date of filing at: https://www.sciencedirect.com/science/article/pii/S016609340400179X (similar coronavirus, the one that causes the SARS outbreak, is vulnerable to UV radiation).

[57] Available as of the date of filing at: https://www.newsweek.com/sunlight-killscoronavirus-scientist-1500012.



Complaint                                                                                                    Case No.

revealed that the preliminary results from a study showed that sunlight and high temperatures could destroy a COVID-19 viral particle within minutes.[58]

98.    Second, COVID-19 seems to most severely affect those with underlying medical issues. The lack of access to fresh air, sunlight, exercise and social companionship (even from six feet away) may be detrimental, if not downright deadly, to the physical and psychological health of humans.[59] Substance abuse relapse, lower immune system response, and higher risks for other medical conditions leaves one more vulnerable to COVID-19 transmission, infection, and death.[60]

99.    Finally, official health bodies do not recommend the closure of public spaces and or the implementation of major, internal travel restrictions. For example, the CDC's official mitigation guidelines for COVID-19 make no mention of closing public parks or beaches.[61] WHO and European CDC guidelines also advise against "internal travel restrictions" during a pandemic because they have little effect on reducing transmission, while imposing huge social and economic costs.[62] There is little to no

---

[58] Available as of the date of filing at: https://www.reuters.com/article/us-health-coronavirus-trump/sunlight-heat-and-humidity-weaken-coronavirus-u-s-officialsays-idUSKCN2253SA.

[59] City Council meeting with video showing discussions with doctors at Hoag Hospital about observing increase in at 11:55-12:10, available as of May 7, 2020, at: http://newportbeach.granicus.com/MediaPlayer.php?view_id=44&clip_id=3477.

[60] Available as of the date of filing at: https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html.

[61] Available as of the date of filing at: https://www.cdc.gov/coronavirus/2019-ncov/downloads/community-mitigation-strategy.pdf.

[62] "There is limited evidence for the effectiveness of internal travel restrictions, and it has legal, ethical and economic implications. Although 37% of national pandemic preparedness plans of Member States have travel restriction plans as a component of NPIs (65), the acceptability is still undetermined." World Health Organization, *Nonpharmaceutical public health measures for mitigating the risk and impact of epidemic and pandemic influenza*, at p. 71, as of May 7, 2020, available at: https://apps.who.int/iris/bitstream/handle/10665/329438/9789241516839-eng.pdf?ua=1; *see also* European Centre for Disease Prevention and Control, *Public Health Measures*

---



Complaint                                                                          Case No.

scientific support for Defendants' shutdowns of local and state beaches, parks, and other open spaces.

100.   The State Order should be terminated because: (1) the State and the people of California are now aware through public information campaigns and the procurement of medical resources for COVID-19; (2) the citizenry has been educated on and is implementing attack rate mitigation efforts through social distancing, hygiene, mask wear, and other means; (3) the information the State Order was based on was flawed; and (4) the attack rate has been reduced to a manageable level which other governments have used as a rule of thumb to lift COVID-19 restrictions.

## NEWSOM'S PLAN TO REOPEN CALIFORNIA

101.   On April 28, 2020, Newsom announced a four-stage plan to reopen California businesses.[63] He set no timetable, but only stated that data, presumably transmission and hospitalization rates, would guide his reopening decisions.[64]

102.   Newsom ordered that California enter Stage Two, during which non-essential retailers would be allowed curbside pickup and delivery (hereinafter "State Order).[65]

---

*for Influenza Pandemics*, p. 9, § 12 ("Internal travel restrictions [have] minor delaying effect[s and] [m]assive [costs and risks], including social disruption.").
[63] Press Release available as of the date of filing at the URL: https://www.gov.ca.gov/2020/04/28/governor-newsom-provides-update-on-californias-pandemic-resilience-roadmap/.
[64] *See* Governor's May 7 Press Release at: https://www.gov.ca.gov/2020/05/07/governor-newsom-releases-updated-industry-guidance/.
[65] Available as of the date of filing at: https://www.cdph.ca.gov/Programs/CID/DCDC/CDPH%20Document%20Library/COVID-19/SHO%20Order%205-7-2020.pdf; *see* the State Guidance FAQs at: https://covid19.ca.gov/industry-guidance/.



Complaint                                                                    Case No.

103.    The guidance also allowed laundromats, dry cleaners, other laundry services, auto repair shops, car washes, landscapers, pet grooming, and dog walking businesses to open completely.[66]

104.    The Order allowed Counties to be more restrictive, or less restrictive as long as the county met certain requirements. These requirements include "six indicators," namely: (1) the ability to monitor and protect our communities through testing, contact tracing, isolating, and supporting those who are positive or exposed; (2) the ability to prevent infection in people who are at risk for more severe COVID-19; (3) the ability of the hospital and health systems to handle surges; (4) the ability to develop therapeutics to meet the demand; (5) the ability for businesses, schools, and child care facilities to support physical distancing; and (6) the ability to determine when to reinstitute certain measures, such as the stay-at-home orders, if necessary.[67]

<div align="center">

**THERE IS NO UNIFORMITY AMONGST THE COUNTIES**

</div>

105.    The initial State and County Orders originally only permitted "Essential Businesses" to open.[68] Newsom now allows any retailer, essential or not, to conduct curbside pickup and delivery. Instead, several Bay Area counties, including Alameda,[69] Contra Costa, [70] and Santa Clara[71] extended their original stay home orders. The only

---

[66] Available as of the date of filing at: https://covid19.ca.gov/pdf/guidance-limited-services.pdf.

[67] Available as of the date of filing at: https://www.gov.ca.gov/2020/04/14/governor-newsom-outlines-six-critical-indicators-the-state-will-consider-before-modifying-the-stay-at-home-order-and-other-covid-19-interventions/.

[68] Available as of the date of filing at: https://www.sfchronicle.com/local-politics/article/Bay-Area-must-shelter-in-place-Only-15135014.php.

[69] Available as of the filing date at: http://www.acphd.org/media/572718/health-officer-order-20-10-shelter-in-place-20200429.pdf.

[70] Available as of the filing date at: https://813dcad3-2b07-4f3f-a25e-23c48c566922.filesusr.com/ugd/84606e_99711106d2074bab8ef27cc16643957e.pdf.

[71] Available as of the filing date at: https://www.sccgov.org/sites/covid19/Pages/order-health-officer-050420.aspx.



Complaint                                                                          Case No.

change to these counties' current health orders is insignificant, allowing a few types of retailers ("Outdoor businesses," e.g., plant nurseries) to open.

106.   Marin, Orange, and San Mateo Counties are doing their best to follow the state's reopening plan, instead of keeping in lockstep with the other Bay Area counties.[72] [73] [74]

107.   Los Angeles County also largely follow Newsom's lead.[75] [76]

108.   However, even if the County Orders follow the state's reopening plan, Plaintiff is still banned from doing business at this time. Its business cannot be conducted curbside. Its customers must be permitted to enter its stores and view the merchandise in its showrooms.

**THE DELETERIOUS EFFECTS OF THE DISPARATE HEALTH ORDERS ON PATIOWORLD**

109.   Due to this chaotic patchwork of local and state health orders, Patioworld is subject to inconsistent and ambiguous regulations which continue to prevent it from doing business.

---

[72] May 14, 2020 Marin County press release, available as of the date of filing at: https://www.marincounty.org/main/county-press-releases/press-releases/2020/hhs-covid-retailreopening-051420.
[73] March 30, 2020, Orange County press release, available as of the date of filing at: https://voiceofoc.org/wp-content/uploads/2020/03/EOC-Press-Release-34-State-of-California-Health-Order-Supersedes-Orange-County-Public-Helath-Order.pdf.
[74] San Mateo County Health Officer's announcement to align with California state's reopening plan is available, as of the date of filing at: https://www.smcgov.org/press-release/health-officer-plans-align-san-mateo-county-state%e2%80%99s-early-phase-2?fbclid=IwAR0okxrz2JVCrGJuq9HsV9Ro1R2ZYOd_d7xQ6JSVRo5M0Nps7SBzTO7a7Ro.
[75] May 12, 2020 Ventura County press release, available as of the date of filing at: https://vcportal.ventura.org/covid19/docs/2020-05-12_VCE_MoreBusinessOpenings.pdf.
[76] May 13, 2020 Los Angeles Health Order, available as the date of filing at: http://publichealth.lacounty.gov/media/coronavirus/docs/HOO/HOO_Safer_at_Home_Order_for_Control_of_COVID_20200513.pdf.

Complaint                                                                  Case No.

110.   Its locations in Santa Clara, Contra Costa, and Alameda County will not even be allowed to reopen partially (i.e. allowing for curbside pickup and delivery), despite such sales being allowed under Newsom's order.

111.   Even under the State Order, the Counties that roughly follow it (e.g., Ventura, Los Angeles, Marin, Orange, and San Mateo County) do not allow retail customers to be in-store, even with social distancing, masks, staggering of appointments, or any other social distancing protocols other businesses are allowed to use.

112.   The sale of outdoor furnishings and accessory merchandise, much like beach town businesses, is a seasonal business which makes the majority of its earnings during the spring and summer.

113.   Patioworld does not make a significant portion of its revenue through e-commerce, but rather the sale of big-ticket items through personal service.

114.   Since the imposition of the State and County Orders, Patioworld has only registered a few online sales.

115.   The Revised State Order, and the revised Health Orders of the Bay Area Counties, Los Angeles County, Orange County, and Ventura County all prevent Patioworld from allowing customers in-store, depriving it of the showroom experience that drives most of its profits and provides jobs to its employees.

116.   Not satisfied with crippling Patioworld by depriving it of a significant engine of profits, Santa Clara, Contra Costa, and Alameda County deliver a death sentence to their Patioworld branches by barring curbside pickups and deliveries, leaving Patioworld with no avenue to make any sales at all.



Complaint                                                                                                          Case No.

## FACTUAL ALLEGATIONS AS TO ALAMEDA COUNTY

117.   On April 29, 2020, Alameda County imposed a revised shelter in place order ("Alameda County Order").[77] It cites three statutory provisions for its authority, but none of them support it. The first deals with "preventive measures" and authorizes a mechanism for the county to pay for those preventive measures. Cal. Health and Safety Code § 101040. The second only applies to the measures a health officer may take to combat a release of hazardous waste. Cal. Health and Safety Code § 101085. Such a local health emergency can only last for seven days unless ratified by the board of supervisors. Cal. Health and Safety Code § 101080. It does not apply here. The third only permits the health officer to "take measures as may be necessary to prevent the spread of the disease or occurrence of additional cases." Cal. Health and Safety Code § 120175. It neglects to mention that any remedial actions taken must comply with "general laws" and that the county must pay for any expense incurred in enforcing them. Cal. Health and Safety Code § 101025.

118.   It purports to impose criminal penalties for violations. "Failure to comply with any of the provisions of this Order constitutes an imminent threat and menace to public health, constitutes a public nuisance, and is punishable by fine, imprisonment, or both."[78]

119.   This creates a strict liability crime for any violation of the Alameda County Order, presumably including a Sunday afternoon drive to sightsee.[79]

120.   All residents are ordered to stay home and only allowed to venture out for one of the stated essential activities.[80]

121.   Homeless individuals are exempted.[81]

---

[77] Available as of the date of filing at: http://www.acphd.org/media/572718/health-officer-order-20-10-shelter-in-place-20200429.pdf.
[78] *Id*. at para. 2; *see also* para. 18.
[79] *Id*. at para. 8.
[80] *Id*. at para. 16.
[81] *Id*. at para. 3.

34



Complaint                                                                                       Case No.

122. Mass transit passengers are not required to follow social distancing if not feasible.[82]

123. Stores that are "essential" may "continue to stock and sell non-essential products."[83]

124. The Alameda County Order admits that Outdoor businesses have lower risk of transmission than indoor businesses as they "generally involve only brief and limited person-to-person interactions, they also carry lower risk of transmission than business activities … which tend to involve prolonged interactions between individuals in close proximity or in confined spaces[.]"[84]

125. Even though the Alameda County Order allows additional businesses to operate, Plaintiff's business is still excluded from the list.[85]

126. Curbside pickup is not allowed.[86]

127. Schools may operate to provide distance learning or essential functions if "social distancing of six feet per person is maintained *to the greatest extent possible*."[87] "Essential functions" of a school are not defined. Also, essential businesses are only required to maintain six feet of distance between employees and customers "except as required to complete Essential Business activity[.]"[88]

128. Childcare businesses may operate if they keep children in "stable" groups of 12.[89] But funerals are limited to 10 people,[90] and no other group size is safe.[91]

---

[82] *Id*. at para. 8.
[83] *Id*. at para. 6 and 16(f)(ii).
[84] *Id*. at para. 12.
[85] *Id*. at para. 16(f).
[86] *Id*. at para. 16(g)(i).
[87] *Id*. at para. 16(f)(xiv)(emphasis added).
[88] *Id*. at para. 16(h)(i).
[89] *Id*. at para. 16(f)(xxvi)(1).
[90] *Id*. at para. 16(a)(vi).
[91] *Id*. at para. 7.



Complaint                                                                 Case No.

129.   If the Alameda County Order conflicts with the State Order, "the most restrictive provision controls."[92]

130.   Alameda County forced Tesla to close its factory doors even though Tesla was considered an essential business according to both Federal and State standards. Alameda County ended up making an exception for Tesla in order to allow Tesla to reopen after Tesla filed a lawsuit.[93] Alameda County thus has one standard for big companies that have many employees and a completely different standard for small mom and pop companies that may not be able to afford lawyers and lobbyist.

## FACTUAL ALLEGATIONS AS TO CONTRA COSTA COUNTY

131.   On April 29, 2020, Contra Costa County imposed a revised shelter in place order ("Contra Costa County Order").[94] It only cites two statutory provisions Alameda County cited as authority. Cal. Health and Safety Code §§ 101040 and 120175. Neither support it either. Besides, it neglects to mention that any remedial actions taken must comply with "general laws" and that the county must pay for any expense incurred in enforcing them. Cal. Health and Safety Code § 101025.

132.   It purports to impose criminal penalties for violations using the same language as the Alameda County Order to create a strict liability crime for any violation,[95] presumably including a Sunday afternoon drive to sightsee.[96]

133.   All residents are ordered to stay home and only allowed to venture out for one of the stated essential activities.[97]

---

[92] *Id.* at para. 15.
[93] Available as of the date of filing at: https://www.cnet.com/roadshow/news/tesla-alameda-county-lawsuit-elon-musk-fremont-plant-production/.
[94] Available as of the date of filing at: https://www.contracosta.ca.gov/DocumentCenter/View/66362/Full-Health-Order.
[95] *Id.* at para. 2; *see also* para. 18.
[96] *Id.* at para. 8.
[97] *Id.* at para. 16.

36



Complaint                                                                 Case No.

134.   Homeless individuals are exempted again.[98]

135.   Mass transit passengers are not required to follow social distancing if not feasible.[99]

136.   Stores that are "essential" may "continue to stock and sell non-essential products."[100]

137.   The Contra Costa County Order admits that Outdoor businesses have lower risk of transmission than indoor businesses as they "generally involve only brief and limited person-to-person interactions, they also carry lower risk of transmission than business activities … which tend to involve prolonged interactions between individuals in close proximity or in confined spaces[.]"[101]

138.   Even though the Contra Costa County Order allows additional businesses to operate, Plaintiff's business is still excluded from the list.[102]

139.   Curbside pickup is not allowed either.[103]

140.   Schools may operate to provide distance learning or essential functions if "social distancing of six feet per person is maintained *to the greatest extent possible*."[104] "Essential functions" of a school are not defined. Also, essential businesses are only required to maintain six feet of distance between employees and customers "except as required to complete Essential Business activity[.]"[105]

---

[98] *Id.* at para. 3.
[99] *Id.* at para. 8.
[100] *Id.* at para. 6 and 16(f)(ii).
[101] *Id.* at para. 12.
[102] *Id.* at para. 16(f).
[103] *Id.* at para. 16(g)(i).
[104] *Id.* at para. 16(f)(xiv)(emphasis added).
[105] *Id.* at para. 16(h)(i).



Complaint

Case No.

141.   Childcare businesses may operate if they keep children in "stable" groups of 12.[106] But funerals are limited to 10 people,[107] and no other group size is safe.[108]

142.   If the Contra Costa County Order conflicts with the State Order, "the most restrictive provision controls."[109]

## FACTUAL ALLEGATIONS AS TO LOS ANGELES COUNTY

143.   On May 13, 2020, Los Angeles County imposed a revised shelter in place order ("Los Angeles County Order").[110] While it does not cite any statutory authority for its issuance, the prior order of May 8, 2020 listed the same three code provisions as Alameda County.[111] The same legal infirmities apply to those code sections. It, too, neglects to mention that any remedial actions taken must comply with "general laws" and that the county must pay for any expense incurred in enforcing them. Cal. Health and Safety Code § 101025.

144.   It purports to impose criminal penalties for violations using the same language as the Alameda County Order to create a strict liability crime for any violation,[112] presumably including a Sunday afternoon drive to sightsee.[113]

145.   All residents are ordered to stay home and only allowed to venture out for one of the stated essential activities.[114]

---

[106] *Id*. at para. 16(f)(xxvi)(1).
[107] *Id*. at para. 16(a)(vi).
[108] *Id*. at para. 7.
[109] *Id*. at para. 15.
[110] Available as of the date of filing at:
http://publichealth.lacounty.gov/media/Coronavirus/docs/HOO/HOO_Safer_at_Home_Order_for_Control_of_COVID_20200513.pdf.
[111] Available as of the date of filing at:
http://www.publichealth.lacounty.gov/media/Coronavirus/docs/HOO/COVID-19_HOO_Addendum_Reopen_Certain_Lower_Risk_Retail_Golf_Courses_Public_Spaces_LACDPH_FINAL_20200508.pdf.
[112] *Supra*, n.77 at para. 2 and 26.
[113] *Id*. at para. 3 and 15-17.
[114] *Id*.



Complaint                                                                    Case No.

146.   Homeless individuals are still exempt.[115]

147.   Under the Los Angeles County Order, Plaintiff is permitted to open, but it may only provide curbside or outdoor pickup or delivery.[116] Its showroom must remain closed. If a customer needs to use the restroom, it would still be a misdemeanor to let them inside.[117]

148.   But the restrooms at essential businesses may be used freely.[118]

149.   If a government function is *impossible* to perform while following social distancing protocols, then the government worker may perform the function without practicing social distancing.[119]

150.   If an essential infrastructure function is *impracticable* to perform while following social distancing protocols, then the worker may perform the function without practicing social distancing.[120]

151.   Also, essential businesses are only required to maintain six feet of distance between employees and customers "except as required to complete a business activity or transaction."[121]

152.   Unlike Alameda, Contra Costa, and Marin counties, Los Angeles childcare businesses,[122] Alcoholics Anonymous gatherings,[123] faith-based organizations,[124] are all limited to 10 people. Apparently, funerals and childcare are more dangerous in Los

---

[115] *Id*. at para. 3.
[116] *Id*. at para. 9.
[117] *Id*. at para. 9(a).
[118] *Id*. at para. 20(c).
[119] *Id*. at para. 5(d).
[120] *Id*. at para. 17.
[121] *Id*. at para. 20(a).
[122] *Id*. at para 18(u).
[123] *Id*. at para 15(f).
[124] *Id*. at para 15(g)



Complaint                                                                              Case No.

Angeles County than they are in Alameda, Contra Costa, or Marin counties. But no other group size in any context is safe.[125]

153.   However, people are permitted to work within six feet of other employees or the public for any length of time—if their duties require it—as long as they wear a face covering.[126] But employers are not required to give their employees a face covering if their interaction is less than six feet for fewer than ten minutes.[127]

154.   If the Los Angeles County Order conflicts with the State Order, "the most restrictive provision controls."[128]

### FACTUAL ALLEGATIONS AS TO MARIN COUNTY

155.   On May 15, 2020, Marin County imposed a revised shelter in place order ("Marin County Order").[129] It cites all three of the erroneous statutory provisions Alameda County cited as authority. Cal. Health and Safety Code §§ 101040, 101085, and 120175. None of them support it either. Besides, it neglects to mention that any remedial actions taken must comply with "general laws" and that the county must pay for any expense incurred in enforcing them. Cal. Health and Safety Code § 101025.

156.   It purports to impose criminal penalties for violations using the same language as the Alameda County Order to create a strict liability crime for any violation,[130] presumably including a Sunday afternoon drive to sightsee.[131]

157.   All residents are ordered to stay home and only allowed to venture out for one of the stated essential activities.[132]

---

[125] *Id*. at para. 3(a), 7(m).
[126] *Id*. at para 20(f).
[127] *Id*.
[128] *Id*. at para. 3(c) and 26.
[129] Available as of the date of filing at: https://coronavirus.marinhhs.org/marin-public-health-order-may-15-2020.
[130] *Id*. at para. 2 and 17.
[131] *Id*. at para. 8 and 16(i).
[132] *Id*.



Complaint

Case No.

158.   Mass transit passengers are not required to follow social distancing if not feasible.[133]

159.   Homeless individuals are exempted again.[134]

160.   Stores that are "essential" may "continue to stock and sell non-essential products[,]" although they must scale back any non-essential components of their business if feasible.[135]

161.   Under Appendix C-1 of the Marin County Order, Plaintiff is permitted to open, but it may only provide curbside or outdoor pickup or delivery.[136] Its showroom must remain closed. If a customer needs to use the restroom, it would still be a misdemeanor to let them inside.[137]

162.   Schools may operate to provide distance learning or essential functions if "social distancing of six feet per person is maintained *to the greatest extent possible*."[138] "Essential functions" of a school are not defined. Also, essential businesses are only required to maintain six feet of distance between employees and customers "except as required to complete Essential Business activity[.]"[139]

163.   Childcare businesses may operate if they keep children in "stable" groups of 12.[140] But funerals are limited to 10 people,[141] and no other group size is safe.[142]

---

[133] *Id*. at para 8.
[134] *Id*. at para. 3.
[135] *Id*. at para. 6 and 15(f)(ii).
[136] Available as of the date of filing at: https://coronavirus.marinhhs.org/appendix-c-1-additional-businesses-permitted-operate-51520.
[137] *Id*.
[138] *Id*. at para. 15(f)(xiv)(emphasis added).
[139] *Id*. at para. 15(h)(i).
[140] *Id*. at para. 15(f)(xxvi)(1).
[141] *Id*. at para. 15(a)(vi).
[142] *Id*. at para. 7.

41



Complaint                                                                      Case No.

164.   If the Marin County Order conflicts with the State Order, "the most restrictive provision controls."[143]

## FACTUAL ALLEGATIONS AS TO SAN MATEO COUNTY

165.   On April 29, 2020, San Mateo County imposed a revised shelter in place order ("San Mateo County Order").[144] It cites all three of the erroneous statutory provisions Alameda County cited as authority. Cal. Health and Safety Code §§ 101040, 101085, and 120175. None of them support it either. Besides, it neglects to mention that any remedial actions taken must comply with "general laws" and that the county must pay for any expense incurred in enforcing them. Cal. Health and Safety Code § 101025.

166.   It purports to impose criminal penalties for violations using the same language as the Alameda County Order to create a strict liability crime for any violation,[145] presumably including a Sunday afternoon drive to sightsee.[146]

167.   All residents are ordered to stay home and only allowed to venture out for one of the stated essential activities.[147]

168.   Mass transit passengers are not required to follow social distancing if not feasible.[148]

169.   Homeless individuals are exempted again.[149]

170.   Stores that are "essential" may "continue to stock and sell non-essential products[,]" although they must scale back any non-essential components of their business if feasible.[150]

---

[143] *Id.* at para. 14.
[144] Available as of the date of filing at:
https://www.smcgov.org/sites/smcgov.org/files/HO%20Order%20c19-5c%20Shelter%20in%20Place%2020200429_complete.pdf.
[145] *Id.* at para. 2 and 17.
[146] *Id.* at para. 8 and 15(i).
[147] *Id.*
[148] *Id.* at para 8.
[149] *Id.* at para. 3.
[150] *Id.* at para. 6 and 15(f)(ii).



Complaint                                                                                    Case No.

171.    Under Appendix C-1 of the San Mateo County Order, Plaintiff is permitted to open, but it may only provide curbside or outdoor pickup or delivery.[151] Its showroom must remain closed. If a customer needs to use the restroom, it would still be a misdemeanor to let them inside.[152]

172.    Schools may operate to provide distance learning or essential functions if "social distancing of six feet per person is maintained *to the greatest extent possible*."[153] "Essential functions" of a school are not defined. Also, essential businesses are only required to maintain six feet of distance between employees and customers "except as required to complete Essential Business activity[.]"[154]

173.    Childcare businesses may operate if they keep children in "stable" groups of 12.[155] But funerals are limited to 10 people,[156] and no other group size is safe.[157]

174.    If the San Mateo County Order conflicts with the State Order, "the most restrictive provision controls."[158]

### FACTUAL ALLEGATIONS AS TO SANTA CLARA COUNTY

175.    On April 29, 2020, Santa Clara County imposed a revised shelter in place order ("Santa Clara County Order").[159] It cites all three of the erroneous statutory provisions Alameda County cited as authority. Cal. Health and Safety Code §§ 101040, 101085, and 120175. None of them support it either. Besides, it neglects to mention that

---

[151] Available as of the date of filing at: https://www.smchealth.org/sites/main/files/file-attachments/ho_order_c19-5d_appendix_c-1_additional_businesses_permitted_to_operate_20200515.pdf?1589577717.
[152] *Id*. at para. 1(b)(i).
[153] *Id*. at para. 15(f)(xiv)(emphasis added).
[154] *Id*. at para. 15(h)(i).
[155] *Id*. at para. 15(f)(xxvi)(1).
[156] *Id*. at para. 15(a)(vi).
[157] *Id*. at para. 7.
[158] *Id*. at para. 14.
[159] Available as of the date of filing at: https://www.sccgov.org/sites/covid19/Documents/05-04-20-Health-Officer-Order.pdf.

43



Complaint                                                                                      Case No.

any remedial actions taken must comply with "general laws" and that the county must pay for any expense incurred in enforcing them. Cal. Health and Safety Code § 101025.

176.   It purports to impose criminal penalties for violations using the same language as the Alameda County Order to create a strict liability crime for any violation,[160] presumably including a Sunday afternoon drive to sightsee.[161]

177.   All residents are ordered to stay home and only allowed to venture out for one of the stated essential activities.[162]

178.   Mass transit passengers are not required to follow social distancing if not feasible.[163]

179.   Homeless individuals are exempted again.[164]

180.   Stores that are "essential" may "continue to stock and sell non-essential products[,]" although they must scale back any non-essential components of their business if feasible.[165]

181.   The Santa Clara County Order admits that Outdoor businesses have lower risk of transmission than indoor businesses as they "generally involve only brief and limited person-to-person interactions, they also carry lower risk of transmission than business activities … which tend to involve prolonged interactions between individuals in close proximity or in confined spaces[.]"[166]

182.   Even though the Santa Clara County Order allows additional businesses to operate, Plaintiff's business is still excluded from the list.[167]

183.   Curbside pickup is not allowed.[168]

---

[160] *Id*. at para. 2 and 18.
[161] *Id*. at para. 8 and 16(i).
[162] *Id*.
[163] *Id*. at para 8.
[164] *Id*. at para. 3.
[165] *Id*. at para. 6 and 16(f)(ii).
[166] *Id*. at para. 12.
[167] *Id*. at para. 16(f), (l). and (m).
[168] *Id*. at para. 16(g)(i).



Complaint                                                                 Case No.

184.   Schools may operate to provide distance learning or essential functions if "social distancing of six feet per person is maintained *to the greatest extent possible*."[169] "Essential functions" of a school are not defined. Also, essential businesses are only required to maintain six feet of distance between employees and customers "except as required to complete Essential Business activity[.]"[170]

185.   Childcare businesses may operate if they keep children in "stable" groups of 12.[171] But funerals are limited to 10 people,[172] and no other group size is safe.[173]

186.   If the Santa Clara County Order conflicts with the State Order, "the most restrictive provision controls."[174]

**FACTUAL ALLEGATIONS AS TO VENTURA COUNTY**

187.   On May 7, 2020, Ventura County imposed a revised shelter in place order. This was revised on May 20, 2020 ("Ventura County Order").[175] It cites all three of the erroneous statutory provisions Alameda County cited as authority. Cal. Health and Safety Code §§ 101040, 101085, and 120175. None of them support it either. Besides, it neglects to mention that any remedial actions taken must comply with "general laws" and that the county must pay for any expense incurred in enforcing them. Cal. Health and Safety Code § 101025.

188.   It purports to impose criminal penalties for violations using similar language as the other counties to create a strict liability crime for any violation ("public nuisance per se"),[176] but unlike the other counties, "pleasure driving" is permitted.[177]

---

[169] *Id*. at para. 16(f)(xiv)(emphasis added).
[170] *Id*. at para. 16(h)(i).
[171] *Id*. at para. 16(f)(xxvi)(1).
[172] *Id*. at para. 16(a)(vi).
[173] *Id*. at para. 7.
[174] *Id*. at para. 15.
[175] Available as of the date of filing at: https://s30623.pcdn.co/wp-content/uploads/2020/05/VC-Public-Health-Officer-Order-May-7-2020.pdf.
[176] *Id*. at para. 12.
[177] *Id*. at para. 11(a)(6).



Complaint                                                                                    Case No.

189.   However, serving someone ice cream in a cone—instead of a covered container—is a misdemeanor and could land you in jail.[178] Also, eating the ice cream from the container "within the line-of-sight of a person standing in front of the facility that sold the food[]" is a crime warranting a fine or jail time, but turning the corner and walking down a side street to eat your ice cream is not.[179]

190.   All residents are ordered to stay home and only allowed to venture out for one of the stated essential activities.[180]

191.   However, funeral services may occur if no more than five people are present inside at one time and fewer than ten gather at the graveside.[181] A wedding may occur if no more than thirteen people participate, including the participants and officiant.[182] An outdoor rally may occur if no one leaves their car or rolls down their windows.[183] A group of four golfers is permitted to golf together if they do not drive golf carts and they maintain 30 feet of distance between groups.[184] A worship service may be live-streamed if no more than ten people gather to produce it.[185]

192.   Finally, if the Ventura County Order conflicts with the State Order, the most restrictive provision controls.[186]

193.   With the May 20, 2020 amended order, Ventura County is the only county allowing Plaintiff's business to operate fully just as long as they establish, implement, and enforce an COVID-19 Prevention plan.[187]

---

[178] *Id*. at para. 7(a).
[179] *Id*. at para. 7(b).
[180] *Id*. at para. 11(a).
[181] *Id*. at para. 11(a)(3).
[182] *Id*. at para. 11(a)(4).
[183] *Id*. at para. 11(a)(5).
[184] *Id*. at para. 11(a)(6).
[185] *Id*. at para. 11(a)(9).
[186] *Id*. at para. 9, 11, and 14.
[187] *Id*. at para. 5.



Complaint                                                                                          Case No.

**CALIFORNIA FEDERAL COURTS ARE TREATING FEDERAL AND STATE**
**EXECUTIVE ORDERS DIFFERENTLY**

194.   A troubling dichotomy has emerged in California federal courts during the COVID-19 pandemic.

195.   Some courts have given broad deference to the state executive branch, even when it infringes upon fundamental rights, such as by the State Order.[188]

196.   At the same time, other courts have closely scrutinized the constitutionality of the exercise of federal executive power, striking down many executive actions taken by President Trump.

197.   For example, in *United States v. California*, 921 F.3d 865 (9th Cir. 2019), the Court allowed states to order state law enforcement to be uncooperative with federal immigration authorities.

198.   Similarly, in *California v. Trump*, 407 F.Supp.3d 869, 892 (N.D. Cal. 2019), the court gave a close reading to 10 U.S.C. § 2801(a)'s use of the term "military installation" to bar President Trump's use of military funds for a border wall despite acknowledging that he was in the right in his declaration of a state of emergency.

199.   Finally, in *Innovation Law Lab v. Wolf*, 951 F.3d 1073, 1087-88 (9th Cir. 2020), the Court went so far as to cite U.S. obligations to asylum seekers under a U.N. refugee treaty in rejecting President Trump's rule that asylum seekers "must enter through official port of entry."

200.   California's federal courts have treated claims challenging executive actions, including under emergency authority, very differently depending upon which executive is claiming broad deference.

---

[188] *Gish v. Newsom*, 5:20-cv-00755, Doc. #51 (D.C. C.D 4/23/20); *Cross Culture Christian Center v. Newsom*, 2:20-cv-00832, Doc. #23 (D.C. E.D. 5/5/20).

47



Complaint                                                                                          Case No.

**OTHER COURTS HAVE ALREADY STRUCK DOWN OR LIMITED**

**SHELTER-IN-PLACE ORDERS IN OTHER STATES**

201.   The Wisconsin Supreme Court recently struck down the shelter-in-place order for Wisconsin because it imposed a criminal sanction but did not follow proper rule-making procedures. *Wisconsin Legislature v. Secretary-Designee Andrea Palm et. al.*, Case No.: 2020AP765-OA (WI 2020).

202.   On May 9, 2020, a federal court in North Carolina issued a temporary restraining order for that state's shelter-in-place order allowing religious organizations to meet if they followed social distancing protocols. *Berean Baptist Church v. Cooper*, Case No.: 4:20-CV-81-D (E.D. N.C., May 16, 2020).

203.   The Sixth Circuit granted a temporary injunction in a free exercise context based on equal protection reasoning. *Roberts v. Neace*, ___F.3d___, No. 20-5465, 2020 WL 2316679 (6th Cir. 2020). It noted that "a proliferation of unexplained exceptions turns a generally applicable law into a discriminatory one." *Id.*, 2020 WL 2316679, at *4-5 (6th Cir. 2020)(citations omitted).

**FIRST CLAIM FOR RELIEF**

**VIOLATION OF THE EQUAL PROTECTION CLAUSE OF THE**

**FOURTEENTH AMENDMENT**

**As enforced by 42 U.S.C. § 1983**

**(By Plaintiff against All Defendants)**

204.   Plaintiff incorporates herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

205.   The equal protection doctrine prohibits "governmental classifications that affect some groups of citizens differently than others." *Engquist v. Or. Dep't. of Agric.*, 553 U.S. 591, 601 (2008) (citations omitted). The touchstone of this analysis is whether a state creates disparity "between classes of individuals whose situations are arguably indistinguishable." *Ross v. Moffitt*, 417 U.S. 600, 609, 94 S.Ct. 2437 (1974). It applies

48



Complaint                                                                                          Case No.

even when the government treats a "class of one" differently. *Willowbrook v. Olech*, 528 U.S. 562, 563 (2000).

206.   While the rational basis test typically applies in this context, any law that "involves a suspect classification, i.e. race, ancestry, and alienage, or … imping[es] upon a fundamental right, i.e. privacy, marriage, voting, travel, and freedom of association" triggers strict scrutiny. *Hoffman v. United States*, 767 F.2d 1431, 1434-35 (9th Cir. 1985)(citations omitted); *Plyler v. Doe*, 457 U.S. 202, 216 (1982) (a state's denial of free public education to undocumented children was unconstitutional).

207.   It is self-evident that the right to freely come and go to operate one's business is a fundamental right and that "[f]reedom of movement is kin to the right of assembly and to the right of association. These rights may not be abridged." *See Aptheker v. Secretary of State*, 378 U.S. 500, 519-20 (1964) (Douglas, J., concurring) "Once the right to travel is curtailed, all other rights suffer, just as when curfew or home detention is placed on a person." *Id*. The right to work and operate its business is an extension of Plaintiff's fundamental rights to liberty and property. This triggers strict scrutiny.

208.   There is no rational basis—much less a compelling reason—for allowing Californians to flock to home improvement stores such as Home Depot and Lowes to buy their patio furniture while preventing Patioworld from selling identical items to those same customers. This is resulting in windfall profits to those businesses and devastating losses to the Plaintiff.

209.   When funerals are limited to five (Ventura) or ten people (the remaining counties, except Los Angeles) childcare businesses may keep children in groups of ten (Los Angeles) or twelve (the remaining counties, except Ventura), and "essential" businesses are allowed to operate if they follow social distancing protocols, it is neither necessary nor rational to shut down Plaintiff's business when its locations offer between 600 and 1,500 square feet per person and it can prove that its customer volume and

49

Complaint                                                                                            Case No.

associated risk of spreading the coronavirus is far less than numerous other "essential" businesses. This is not equal protection, it is selective protection.

210.   Besides, five of the counties only require mass transit passengers to follow social distancing *if feasible*, and government and infrastructure functions in Los Angeles County may dispense with social distancing altogether if it is impossible or impracticable, respectively, to follow social distancing protocols while performing the task.

211.   The State and County Orders have directly and proximately caused tremendous financial harm to Plaintiff, which has suffered approximately $4 million in losses since the imposition of the State and County Orders and stands to lose nearly $5.5 million by the end of May.

212.   Plaintiff has no adequate remedy at law and will suffer serious and irreparable harm to its constitutional rights unless Defendants are enjoined from implementing and enforcing the State and County Orders.

213.   Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiff is entitled to declaratory relief and temporary, preliminary, and permanent injunctive relief invalidating and restraining enforcement of the State and County Orders, with the exception that no injunctive relief is sought against Ventura County.

214.   Plaintiff found it necessary to engage the services of private counsel to vindicate its rights under the law. Plaintiff is therefore entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 1988.

## SECOND CLAIM FOR RELIEF
## VIOLATION OF THE DUE PROCESS CLAUSES OF THE FIFTH AND FOURTEENTH AMENDMENTS
### Rights to liberty, property, and travel as enforced by 42 U.S.C. § 1983
### (By Plaintiff against All Defendants)

215.   Plaintiff incorporates herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.



Complaint                                                    Case No.

216.   Plaintiff has a fundamental interest in conducting its lawful business. *Medina v. Rudman*, 545 F.2d 244, 250 (1st Cir. 1976)(*citing Paul v. Davis*, 424 U.S. 693 (1976)); *see also Aptheker v. Secretary of State*, 378 U.S. 500, 519-20 (1964) (Douglas, J., concurring); *Connor v. Donaldson*, 422 U.S. 563, 580 (1975) *and Robinson v. State of California*, 370 U.S. 660, 666 (1962). Thus, strict scrutiny applies.

217.   The State and County Orders and Defendants' enforcement thereof violate Plaintiff's substantive due process rights as follows:

      a.  The State and County Orders purport to impose criminal penalties for violations, but they are vague and overbroad and open to arbitrary enforcement. Plaintiff is entitled to fair notice of the conduct they punish. Since the State and County Orders are internally and facially contradictory, no person of ordinary intelligence—including Plaintiff—would be able to determine what specific conduct is allowed or penalized. The only certain way to determine this point would be for Plaintiff to open its business and wait to see if any of the Orders were enforced against it.

      b.  Three counties—Los Angeles, Marin, and San Mateo—purport to allow Plaintiff's business to reopen for curbside access only. But without being allowed to open its showroom to customers, Plaintiff is still effectively barred from operating its business. It not feasible or practicable for Plaintiff's customers to view and purchase its large-sized merchandise with only curbside access to the stores.

      c.  Plaintiff is a lawful business in the State of California, and therefore has a right to lawfully pursue its business, a substantive due process right impaired by Defendants' actions.

      d.  Defendants lack any legitimate or compelling interest for depriving Plaintiff of its right to lawfully pursue its business.



Complaint                                                          Case No.

e.  Even if such a legitimate, compelling interest existed, Defendants' Orders are neither rationally related nor narrowly tailored to further any such interest.

218.  The State and County Orders and Defendants' enforcement thereof violate Plaintiff's procedural due process rights as follows:

a.  The State and County Orders provide no process to request redress.

b.  Procedural due process, at a minimum, would permit Plaintiff to meaningfully respond to the Orders (or the continuations thereof) and explain how and why they are unconstitutional as applied to Plaintiff. However, the State and County Orders have prevented Plaintiff from challenging the application of the Orders to it, denying it any process whatsoever before its rights were forcibly taken.

c.  The County Orders each purport to create a strict liability crime such that any violation of any provision automatically "constitutes an imminent threat and menace to public health" bypassing procedural due process as to the burden of proof in a criminal context.

d.  The Los Angeles County Order disregards the statutory duty of the health officer to notify businesses of new orders[189] and requires business owners to check the county website "daily to identify any modifications to the Order[.]"[190] This puts a duty on business owners that state statutes properly places on the health officer.

---

[189] Cal. Health and Safety Code §§ 120275, 120280.
[190] Los Angeles County Order dated May 13, 2020, at para. 22(b), available as of the date of filing at:
http://publichealth.lacounty.gov/media/Coronavirus/docs/HOO/HOO_Safer_at_Home_Order_for_Control_of_COVID_20200513.pdf.



Complaint                                                                    Case No.

e.   Further, this taking lasts indefinitely, with neither the State nor County Orders providing for any mechanism or opportunity to review or challenge the need to continue them in the light of developing events.

219.   Plaintiff has no adequate remedy at law and will suffer serious and irreparable harm to its constitutional rights unless Defendants are enjoined from implementing and enforcing the State and County Orders.

220.   Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiff is entitled to declaratory relief and temporary, preliminary, and permanent injunctive relief invalidating and restraining enforcement of the State and County Orders, with the exception that no injunctive relief is sought against Ventura County.

221.   Plaintiff found it necessary to engage the services of private counsel to vindicate its rights under the law. Plaintiff is therefore entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 1988.

### THIRD CLAIM FOR RELIEF
### PREEMPTION UNDER THE COMMERCE CLAUSE
### As enforced by 42 U.S.C. § 1983
### (By Plaintiff against All Defendants)

222.   Plaintiff incorporates herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

223.   The Commerce Clause is "a substantive restriction on permissible state regulation of interstate commerce." *Dennis v. Higgins*, 498 U.S. 439, 447 (1991)(internal quotation marks, citation omitted). "[I]ndividuals injured by state action that violates this aspect of the Commerce Clause may sue and obtain injunctive and declaratory relief under 42 U.S.C. § 1983. *Dennis*, 498 U.S. at 446. Plaintiff is also entitled to damages and attorney fees. *BFI Medical Waste Systems v. Whatcom County*, 983 F.2d 911, 914 (9th Cir. 1992)(citation omitted).

224.   The test for the quarantine exception to the Commerce Clause is "whether



Complaint                                                                                                          Case No.

the state law (1) regulates evenhandedly; (2) accomplishes a legitimate local public purpose; and (3) has only an incidental effect on interstate commerce." *Washington State Bldg. and Const. Trades Council, AFL- CIO v. Spellman*, 684 F.2d 627 (9th Cir. 1982)(quoting *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970)). "This facial discrimination, in turn, invokes the strictest scrutiny of any purported legitimate local purpose and of the absence of nondiscriminatory alternatives." *Id*. (quotation marks and citation omitted).

225.  The State and County Orders offend all three of prongs of the *Pike* test. They do not regulate evenhandedly, they are not provably accomplishing any legitimate purpose, and they have a massive and devastating effect on all commerce.

226.  The State and County Orders burden far more than the importation of wholesome milk into the City of Madison (*Dean Milk Co. v. Madison*, 340 U.S. 349 (1951)), the movement of waste into New Jersey (*City of Philadelphia v. New Jersey*, 437 U.S. 617 (1978)), or the packaging of cantelopes in Arizona (*Pike v. Bruce Church, Inc.*, 397 U.S. 137, *supra*). The State and County Orders shutter a majority of California's economy.

227.  Plaintiff has already lost approximately $4 million so far, and expects to lose $5.5 million by the end of May.

228.  Plaintiff has no adequate remedy at law and will suffer serious and irreparable harm to its constitutional rights unless Defendants are enjoined from implementing and enforcing the State and County Orders.

229.  Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiff is entitled to declaratory relief and temporary, preliminary, and permanent injunctive relief invalidating and restraining enforcement of the State and County Orders and damages, with the exception that no injunctive relief is sought against Ventura County.

230.  Plaintiff found it necessary to engage the services of private counsel to vindicate its rights under the law. Plaintiff is therefore entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 1988.

54



Complaint                                                                                      Case No.

**FOURTH CLAIM FOR RELIEF**

**VIOLATION OF THE TAKINGS CLAUSE OF THE FIFTH AMENDMENT BY INTERFERENCE WITH PROPERTY**

**(By Plaintiff against All Defendants)**

231.    Plaintiff incorporates herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

232.    The California Supreme Court has found that "While the police power is very broad in concept, it is *not without restrictions* in relation to the taking or damaging of property. When it passes *beyond proper bounds in its invasion of property rights*, it in effect comes within the purview of the law of eminent domain and its exercise requires compensation." *House v. Los Angeles County Flood Control Dist.*, 25 Cal.2d 384, 388 (1944) (emphasis added).

233.    The State and County Orders and the enforcement thereof has caused both a complete and total regulatory and physical taking of Plaintiff's property without just compensation in violation of the Takings Clause of the Fifth Amendment to the U.S. Constitution.[191] At a minimum, the effect of the State and County Orders constitutes a "partial" taking under the *Penn-Central* three-factor test. *See Penn Central Trans. Co. v. City of New York*, 438 U.S. 104, 124 (1978). As a result, Defendants' blatant violation of the Takings Clause of the Fifth Amendment has caused proximate and legal harm to Plaintiff.

234.    Plaintiff is a lawful business operating under the laws of the United States and the state of California.

235.    The regulatory actions taken by the Defendants have resulted in Plaintiff being deprived of all economically beneficial or productive use of its property including, without limitation, its inventory, its leased property, and its business

---

[191] The Takings Clause was incorporated against the states through the Fourteenth Amendment in *Quincy R.R. v. City of Chicago*, 166 U.S. 226 (1897).



Complaint                                                                                    Case No.

property, and further resulted in the involuntary closing of its business locations, ultimately making them worse than worthless, in that it must still pay rent, property maintenance, and related expenses for property it is barred from using.

236.    The State and County Orders are also depriving Plaintiff from operating during its most lucrative season of business. Without the revenues generated during the spring and summer months, Plaintiff may be forced to close permanently.

237.    The County Orders do not include any means to reimburse Plaintiff for its losses.

238.    But for the State and County Orders, Plaintiff would not have shut down its ten locations and forfeited millions of dollars in revenue.

239.    It is foreseeable that the County Orders' shutdown of Plaintiff's business would result in massive economic losses.

240.    As a proximate result of Defendants actions, Plaintiff has been damaged in a sum in excess of $4,000,000.00 or according to proof at the time of trial.

<div align="center">

**FIFTH CLAIM FOR RELIEF**

**VIOLATION OF THE EIGHTH AMENDMENT'S PROHIBITION OF**

**EXCESSIVE FINES**

**As enforced by 42 U.S.C. § 1983**

**(By Plaintiff against All Defendants)**

</div>

241.    Plaintiff incorporates herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

242.    The Excessive Fines Clause was recently incorporated against the states in *Timbs v. Indiana*, 139 S. Ct. 682, 689 (2019). Its principles were enshrined in the Magna Carta, carried forward into the English Bill of Rights of 1689, and now reside in the text of the Eighth Amendment. *Timbs*, 139 S. Ct. at 693 (Thomas, J., concurring).

243.    Its prohibitions on "excessive punitive economic sanctions [are] fundamental to our scheme of ordered liberty and deeply rooted in this Nation's history and tradition." *Timbs*, 139 S. Ct. at 689 (internal quotations, citation omitted).



Complaint                                                                                    Case No.

244.    Plaintiff faces a possibility of up to six months in jail plus a fine of at least $50.00 and up $1,000.00 *for each* violation of the State and County Orders. Cal. Health and Safety Code § 120295; Cal. Gov't Code § 8665.

245.    It is unconstitutional that Plaintiff could face ruinous fines and months of incarceration for attempting to earn a living when there are no indications that a communicable disease has ever even been present within the business premises.

246.    More than a month ago, Newsom publicly admitted that the underlying public health goals giving rise to the State Order have been achieved, stating that "[we] have successfully bent and arguably flattened the curve in the state of California."[192] Therefore, by Governor Newsom's own admission, no rational basis exists any longer to justify the Governor's Order. Yet the State and County Orders remain in force with their concomitant criminal penalties.

247.    Plaintiff has demonstrated a willingness and ability to follow social distancing health and safety protocols.

248.    Plaintiff has no adequate remedy at law and will suffer serious and irreparable harm to its constitutional rights unless Defendants are enjoined from implementing and enforcing the State and County Orders.

249.    Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiff is entitled to declaratory relief and temporary, preliminary, and permanent injunctive relief invalidating and restraining enforcement of the State and County Orders, with the exception that no injunctive relief is sought against Ventura County.

250.    Plaintiff found it necessary to engage the services of private counsel to vindicate its rights under the law. Plaintiff is therefore entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 1988.

---

[192] April 16, 2020 briefing by the Governor at 37:20, transcript available as of May 18, 2020, at: https://www.rev.com/blog/transcripts/gov-gavin-newsom-california-covid-19-briefing-transcript-april-16.



Complaint                                                                                      Case No.

### SIXTH CLAIM FOR RELIEF
### VIOLATION OF THE CALIFORNIA CONSTITUTION
### Art. 1, § 1
### (By Plaintiff against All Defendants)

251. Plaintiff incorporates herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

252. Californians have rights to liberty and the acquisition, possession, and protection of property. Cal. Const. art. I, § 1.

253. The liberty aspect of this provision aligns with the protections offered under the U.S. Constitution. *People v. Garcia*, 19 Cal.App.4th 97, 102 (Cal. App. 1993).

254. Plaintiff specifically incorporates its arguments under its Second Cause of Action, *supra*, herein.

255. The State and County Orders violate this provision by stripping Plaintiff of its liberty and property rights.

256. Plaintiff has no adequate remedy at law and will suffer serious and irreparable harm to its constitutional rights unless Defendants are enjoined from implementing and enforcing the State and County Orders, with the exception that no injunctive relief is sought against Ventura County.

257. Plaintiff found it necessary to engage the services of private counsel to vindicate its rights under the law. Plaintiff is therefore entitled to an award of attorney fees and costs pursuant to California Code of Civil Procedure Section 1021.5.

### SEVENTH CLAIM FOR RELIEF
### VIOLATION OF THE CALIFORNIA CONSTITUTION
### Art. 1, §7
### (By Plaintiff against All Defendants)

258. Plaintiff incorporates herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

---

58



Complaint                                                                    Case No.

259.   Californians have the right to "not be deprived of life, liberty, or property without due process of law or denied equal protection of the laws[.]" Cal. Const. art. I, § 7.

260.   This provision has been interpreted to align with the protections offered under the U.S. Constitution. *In re Ilasa*, 3 Cal.App.5th 489, 497 (Cal. App. 2016).

261.   Plaintiff specifically incorporates its arguments under its First and Second Causes of Action, *supra*, herein.

262.   The State and County Orders violate this provision by stripping Plaintiff of its liberty and property rights and by treating Plaintiff differently than similarly situated classes of businesses.

263.   Plaintiff has no adequate remedy at law and will suffer serious and irreparable harm to its constitutional rights unless Defendants are enjoined from implementing and enforcing the State and County Orders, with the exception that no injunctive relief is sought against Ventura County.

264.   Plaintiff found it necessary to engage the services of private counsel to vindicate its rights under the law. Plaintiff is therefore entitled to an award of attorney fees and costs pursuant to California Code of Civil Procedure Section 1021.5.

## EIGHTH CLAIM FOR RELIEF
## VIOLATION OF THE CALIFORNIA CONSTITUTION
### Art. XI, §7
### (By Plaintiff against All Defendants)

265.   Plaintiff incorporates herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

266.   California counties are prohibited from making or enforcing any order or regulation that violates "general laws." Cal. Const. art. XI, § 7.

267.   A county violates this provision "if the local law duplicates, contradicts, or enters an area fully occupied by general law, either expressly or by legislative



Complaint                                                                                                   Case No.

1  implication." *First Resort, Inc., v. Herrara*, 860 F.3d 1263, 1280 (9th Cir. 2017)
2  (internal quotations omitted).

3      268.   As shown above, the County Orders by their own admission impose
4  stricter requirements on Plaintiff than the State Order. To the extent that the County
5  Orders conflict with the State Order, the County Orders are unconstitutional.

6      269.   Plaintiff has no adequate remedy at law and will suffer serious and
7  irreparable harm to its constitutional rights unless Defendants are enjoined from
8  implementing and enforcing the State and County Orders, with the exception that no
9  injunctive relief is sought against Ventura County.

10      270.   Plaintiff found it necessary to engage the services of private counsel to
11  vindicate its rights under the law. Plaintiff is therefore entitled to an award of attorney
12  fees and costs pursuant to California Code of Civil Procedure Section 1021.5.

<div align="center">

**NINTH CLAIM FOR RELIEF**

**VIOLATION OF CALIFORNIA STATUTES**

**Criminal Sanction Not Supported by County Orders**

(***By Plaintiff against All Defendants***)

</div>

17      271.   Plaintiff incorporates herein by reference each and every allegation
18  contained in the preceding paragraphs of this Complaint as though fully set forth herein.

19      272.   The State Order cannot enact the criminal penalties it purports to impose. It
20  cites California Government Code § 8665 to support its criminal penalties. But that
21  code section only authorizes a criminal sanction for failure "to obey any lawful order or
22  regulation[.]" *Id.* It is not lawful to confine an entire state's population to their homes
23  with limited exceptions for *ad hoc* "essential" functions. This has never been done by
24  any California governor because it is not authorized. Plaintiff has complied with the
25  unlawful order out of deference for the rule of law, but not because it admits that
26  Newsom has the right to impose the State Order. Thus, The State Order has no authority
27  to impose any criminal penalty.

28      273.   The County Orders cannot enact the criminal penalties they purport to

<div align="center">60</div>



impose. They rely on California Health and Safety Code § 120295. Presumably, this statute authorized the purported criminal penalties in the County Orders. Not so.

274.   California Health and Safety Code § 120295 makes it a misdemeanor to violate any of the following listed statutes: § 120130 and §§ 120175-120250 (excluding § 120195).

275.   First, the Counties' reliance on § 120130 is misplaced as it only covers the reporting duties of laboratories regarding communicable diseases in its testing results. It does not authorize the Counties to impose criminal sanctions on average citizens or businesses for operating their businesses.

276.   Second, the Counties' reliance on §§ 120175-120250 (excluding § 120195) is also misplaced.

277.    The only provisions in this range of sections that could be violated by anyone besides the health officer are those dealing with specific isolation orders pertaining to *identified cases* of a communicable disease.[193] The statutes do not contemplate a statewide isolation order as they speak in terms of individuals, lots, buildings, houses, structures, and shelters.[194]

278.   To impose a quarantine or isolation order, a health officer "shall ensure the adequate isolation of *each case*, and appropriate quarantine of the contacts and premises." Cal. Health and Safety Code § 120215. Under this provision, a quarantine order must apply to a specific identified case of a disease, not to all citizens who may or may not be infected.

279.   Besides, the health officer may only lift a quarantine when "all persons having been under strict isolation are considered noninfectious." Cal. Health and Safety Code § 120235. If a statewide quarantine were allowed by this provision, it would likely never be lifted as waiting until the total eradication of all cases of coronavirus is

---

[193] Cal. Health and Safety Code §§ 120220, 120225, 120230, 120240, 120250.
[194] Cal. Health and Safety Code §§ 120220, 120225, 120230.



Complaint                                                                                                    Case No.

1    not feasible.

2        280.    These statutes were not designed to enforce or criminalize violations of a

3    statewide shelter-in-place order. They were only designed to enforce proper isolation

4    orders involving individual citizens who were actually infected with a disease.

5        281.    Plaintiff has no adequate remedy at law and will suffer serious and

6    irreparable harm to its constitutional rights unless Defendants are enjoined from

7    implementing and enforcing the State and County Orders, with the exception that no

8    injunctive relief is sought against Ventura County.

9        282.    Plaintiff found it necessary to engage the services of private counsel to

10   vindicate its rights under the law. Plaintiff is therefore entitled to an award of attorney

11   fees and costs pursuant to California Code of Civil Procedure Section 1021.5.

<div align="center">

**TENTH CLAIM FOR RELIEF**

**JUST COMPENSATION UNDER CALIFORNIA CODE**

**Claim for Damages**

***(By Plaintiff against All Defendants)***

</div>

16       283.    Plaintiff incorporates herein by reference each and every allegation

17   contained in the preceding paragraphs of this Complaint as though fully set forth herein.

18       284.    California law requires the state to pay the reasonable value should the

19   Governor "utilize any private property … deemed by him necessary in carrying out the

20   responsibilities …" of the California Emergency Services Act. Cal. Gov. Code § 8572.

21       285.    California law requires each county imposing one of the County Orders to

22   reimburse their citizens for any losses incurred by compliance with the isolation order.

23   *See, e.g.*, Cal. Health and Safety Code §§ 101025 ("and provide for the payment of all

24   expenses incurred in enforcing them"), 101040 (preventive measures in an emergency

25   shall be funded by the county imposing the order), 120210 (owners of property lost as a

26   result of a quarantine order may be compensated).

27       286.    The County Orders do not include any means to reimburse Plaintiff for its

28   losses.

<div align="center">62</div>



Complaint                                                                    Case No.

287.   But for the State and County Orders, Plaintiff would not have shut down its ten locations and forfeited millions of dollars in revenue.

288.   It is foreseeable that the County Orders' shutdown of Plaintiff's business would result in massive economic losses.

289.   As a proximate result of Defendants actions, Plaintiff has been damaged in a sum in excess of $4,000,000.00 or according to proof at the time of trial.

## CONCLUSION

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment against Defendants as follows:

A.   An order and judgment declaring that the State Order and County Orders, facially and as-applied to Plaintiff, violate the Commerce Clause, the Fifth, Eighth, and Fourteenth Amendments to the U.S. Constitution, Article I, §§ 1 and 7, and Article XI, § 7 of the California Constitution, and California statutes;

B.   An order temporarily, preliminarily, and permanently enjoining and prohibiting Defendants from enforcing the State Order or otherwise interfering with Plaintiff's constitutional rights and liberties (with the exception of Ventura County against which only declaratory relief and damages are sought);

C.   For attorneys' fees and costs pursuant to 42 U.S.C. § 1988, California Code of Civil Procedure Section 1021.5, and any other legal basis for such fees and costs as may apply;

D.   For compensatory damages in the sum of $4,000,000.00 or according to proof at trial; and

E.   Such other and further relief as the Court deems appropriate and just.

Date: May 22, 2020                      DHILLON LAW GROUP INC.

                                        By:   /s/ Harmeet K. Dhillon
                                              Harmeet K. Khillon (SBN: 207873)
                                              Mark P. Meuser (SBN: 231335)



Complaint                                                                    Case No.

Gregory R. Michael (SBN: 306814)

GERAGOS & GERAGOS
Mark Geragos (SBN: 108325)
Alexandra Kazarian (SBN: 244494)
Matthew Vallejo (SBN: 322713)

Attorneys for Plaintiffs

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule 38(b) and Local Rule 38-1, Plaintiffs hereby make a demand for jury trial for all causes herein so triable.

Date: May 22, 2020                    DHILLON LAW GROUP INC.

By:    /s/ Harmeet K. Dhillon
Harmeet K. Dhillon
Mark P. Meuser
Gregory R. Michael

GERAGOS & GERAGOS
Mark Geragos
Alexandra Kazarian
Matthew Vallejo

Attorneys for Plaintiffs



Complaint                                                                    Case No.

# EXHIBIT 1

# EXECUTIVE DEPARTMENT
# STATE OF CALIFORNIA

### EXECUTIVE ORDER N-33-20

**WHEREAS** on March 4, 2020, I proclaimed a State of Emergency to exist in California as a result of the threat of COVID-19; and

**WHEREAS** in a short period of time, COVID-19 has rapidly spread throughout California, necessitating updated and more stringent guidance from federal, state, and local public health officials; and

**WHEREAS** for the preservation of public health and safety throughout the entire State of California, I find it necessary for all Californians to heed the State public health directives from the Department of Public Health.

**NOW, THEREFORE, I, GAVIN NEWSOM,** Governor of the State of California, in accordance with the authority vested in me by the State Constitution and statutes of the State of California, and in particular, Government Code sections 8567, 8627, and 8665 do hereby issue the following Order to become effective immediately:

### IT IS HEREBY ORDERED THAT:

1) To preserve the public health and safety, and to ensure the healthcare delivery system is capable of serving all, and prioritizing those at the highest risk and vulnerability, all residents are directed to immediately heed the current State public health directives, which I ordered the Department of Public Health to develop for the current statewide status of COVID-19. Those directives are consistent with the March 19, 2020, Memorandum on Identification of Essential Critical Infrastructure Workers During COVID-19 Response, found at: https://covid19.ca.gov/. Those directives follow:

ORDER OF THE STATE PUBLIC HEALTH OFFICER
March 19, 2020

To protect public health, I as State Public Health Officer and Director of the California Department of Public Health order all individuals living in the State of California to stay home or at their place of residence except as needed to maintain continuity of operations of the federal critical infrastructure sectors, as outlined at https://www.cisa.gov/identifying-critical-infrastructure-during-covid-19. In addition, and in consultation with the Director of the Governor's Office of Emergency Services, I may designate additional sectors as critical in order to protect the health and well-being of all Californians.

Pursuant to the authority under the Health and Safety Code 120125, 120140, 131080, 120130(c), 120135, 120145, 120175 and 120150, this order is to go into effect immediately and shall stay in effect until further notice.

The federal government has identified 16 critical infrastructure sectors whose assets, systems, and networks, whether physical or virtual, are considered so vital to the United States that their incapacitation or

destruction would have a debilitating effect on security, economic security, public health or safety, or any combination thereof. I order that Californians working in these 16 critical infrastructure sectors may continue their work because of the importance of these sectors to Californians' health and well-being.

This Order is being issued to protect the public health of Californians. The California Department of Public Health looks to establish consistency across the state in order to ensure that we mitigate the impact of COVID-19. Our goal is simple, we want to bend the curve, and disrupt the spread of the virus.

The supply chain must continue, and Californians must have access to such necessities as food, prescriptions, and health care. When people need to leave their homes or places of residence, whether to obtain or perform the functions above, or to otherwise facilitate authorized necessary activities, they should at all times practice social distancing.

2) The healthcare delivery system shall prioritize services to serving those who are the sickest and shall prioritize resources, including personal protective equipment, for the providers providing direct care to them.

3) The Office of Emergency Services is directed to take necessary steps to ensure compliance with this Order.

4) This Order shall be enforceable pursuant to California law, including, but not limited to, Government Code section 8665.

**IT IS FURTHER ORDERED** that as soon as hereafter possible, this Order be filed in the Office of the Secretary of State and that widespread publicity and notice be given of this Order.

This Order is not intended to, and does not, create any rights or benefits, substantive or procedural, enforceable at law or in equity, against the State of California, its agencies, departments, entities, officers, employees, or any other person.

**IN WITNESS WHEREOF** I have hereunto set my hand and caused the Great Seal of the State of California to be affixed this 19th day of March 2020.

_____

GAVIN NEWSOM
Governor of California

**ATTEST:**

_____

ALEX PADILLA
Secretary of State



EXHIBIT 2



# ORDER OF THE HEALTH OFFICER NO. 20-10

## ORDER OF THE HEALTH OFFICER
## OF THE COUNTY OF ALAMEDA DIRECTING
## ALL INDIVIDUALS IN THE COUNTY TO CONTINUE SHELTERING AT
## THEIR PLACE OF RESIDENCE EXCEPT FOR ESSENTIAL NEEDS AND
## IDENTIFIED OUTDOOR ACTIVITIES IN COMPLIANCE WITH
## SPECIFIED REQUIREMENTS; CONTINUING TO EXEMPT HOMELESS
## INDIVIDUALS FROM THE ORDER BUT URGING GOVERNMENT
## AGENCIES TO PROVIDE THEM SHELTER; REQUIRING ALL
## BUSINESSES AND RECREATION FACILITIES THAT ARE ALLOWED
## TO OPERATE TO IMPLEMENT SOCIAL DISTANCING, FACE
## COVERING, AND CLEANING PROTOCOLS; AND DIRECTING ALL
## BUSINESSES, FACILITY OPERATORS, AND GOVERNMENTAL
## AGENCIES TO CONTINUE THE TEMPORARY CLOSURE OF ALL
## OTHER OPERATIONS NOT ALLOWED UNDER THIS ORDER

### DATE OF ORDER: APRIL 29, 2020

**Please read this Order carefully. Violation of or failure to comply with this Order is a misdemeanor punishable by fine, imprisonment, or both. (California Health and Safety Code § 120295, *et seq.*; Cal. Penal Code §§ 69, 148(a)(1))**

UNDER THE AUTHORITY OF CALIFORNIA HEALTH AND SAFETY CODE SECTIONS 101040, 101085, AND 120175, THE HEALTH OFFICER OF THE COUNTY OF ALAMEDA ("HEALTH OFFICER") ORDERS:

1. This Order supersedes the March 31, 2020 Order of the Health Officer directing all individuals to shelter in place ("Prior Order"). This Order amends, clarifies, and extends certain terms of the Prior Order to ensure continued social distancing and limit person-to-person contact to reduce the rate of transmission of Novel Coronavirus Disease 2019 ("COVID-19"). This Order continues to restrict most activity, travel, and governmental and business functions. But in light of progress achieved in slowing the spread of COVID-19 in the County of Alameda (the "County") and neighboring counties, the Order allows a limited number of additional Essential Businesses and certain lower risk Outdoor Businesses (both as defined in Section 16 below) to resume operating. This initial, measured resumption of those activities is designed to keep the overall volume of person-to-person contact very low to prevent a surge in COVID-19 cases in the County and neighboring counties. The activities allowed by this Order will be assessed on an

Order of the County Health Officer
to Shelter in Place (April 29, 2020)




ongoing basis and may need to be modified if the risk associated with COVID-19 increases in the future.  As of the effective date and time of this Order set forth in Section 19 below, all individuals, businesses, and government agencies in the County are required to follow the provisions of this Order.

2.   The primary intent of this Order is to ensure that County residents continue to shelter in their places of residence to slow the spread of COVID-19 and mitigate the impact on delivery of critical healthcare services.  This Order allows a limited number of additional essential and outdoor business activities to resume while the Health Officer continues to assess the transmissibility and clinical severity of COVID-19 and monitors indicators described in Section 11.  All provisions of this Order must be interpreted to effectuate this intent.  Failure to comply with any of the provisions of this Order constitutes an imminent threat and menace to public health, constitutes a public nuisance, and is punishable by fine, imprisonment, or both.

3.   All individuals currently living within the County are ordered to shelter at their place of residence.  They may leave their residence only for: Essential Activities as defined in Section 16.a and Outdoor Activities as defined in Section 16.m; Essential Governmental Functions as defined in Section 16.d; Essential Travel as defined in Section 16.i, to work for Essential Businesses as defined in Section 16.f, and Outdoor Businesses as defined in Section 16.*l*; or to perform Minimum Basic Operations for other businesses that must remain temporarily closed, as provided in Section 16.g.  For clarity, individuals who do not currently reside in the County must comply with all applicable requirements of the Order when in the County.  Individuals experiencing homelessness are exempt from this Section, but are strongly urged to obtain shelter, and governmental and other entities are strongly urged to, as soon as possible, make such shelter available and provide handwashing or hand sanitation facilities to persons who continue experiencing homelessness.

4.   When people need to leave their place of residence for the limited purposes allowed in this Order, they must strictly comply with Social Distancing Requirements as defined in Section 16.k, except as expressly provided in this Order, and must wear Face Coverings as provided in Health Officer Order No. 20-08 (the "Face Covering Order").

5.   All businesses with a facility in the County, except Essential Businesses and Outdoor Businesses, as defined in Section 16, are required to have ceased activities at facilities located within the County except Minimum Basic Operations, as defined in Section 16.  For clarity, all businesses may continue operations consisting exclusively of owners, personnel, volunteers, or contractors performing activities at their own residences (i.e., working from home).  All Essential Businesses are strongly encouraged to remain open.  But all businesses are directed to maximize the number of personnel who work from home.  Essential Businesses and Outdoor Businesses may only assign those personnel who cannot perform their job duties from home to work outside the home.  Outdoor

Order of the County Health Officer
to Shelter in Place (April 29, 2020)

 

Businesses must conduct all business and transactions involving members of the public outdoors.

6.  As a condition of operating under this Order, the operators of all businesses must prepare or update, post, implement, and distribute to their personnel a Social Distancing Protocol for each of their facilities in the County frequented by personnel or members of the public, as specified in Section 16.h.  Businesses that include an Essential Business or Outdoor Business component at their facilities alongside other components must, to the extent feasible, scale down their operations to the Essential Business and Outdoor Business components only; provided, however, mixed retail businesses that are otherwise allowed to operate under this Order may continue to stock and sell non-essential products.  All businesses allowed to operate under this Order must follow any industry-specific guidance issued by the Health Officer related to COVID-19.

7.  All public and private gatherings of any number of people occurring outside a single household or living unit are prohibited, except for the limited purposes expressly permitted in this Order.  Nothing in this Order prohibits members of a single household or living unit from engaging in Essential Travel, Essential Activities, or Outdoor Activities together.

8.  All travel, including, but not limited to, travel on foot, bicycle, scooter, motorcycle, automobile, or public transit, except Essential Travel, as defined below in Section 16.i, is prohibited.  People may use public transit only for purposes of performing Essential Activities and Outdoor Activities, or to travel to and from work for Essential Businesses or Outdoor Businesses, to maintain Essential Governmental Functions, or to perform Minimum Basic Operations at non-essential businesses.  Transit agencies and people riding on public transit must comply with Social Distancing Requirements, as defined in Section 16.k, to the greatest extent feasible, and personnel and passengers must wear Face Coverings as required by the Face Covering Order.  This Order allows travel into or out of the County only to perform Essential Activities and Outdoor Activities, to operate or perform work for Essential Businesses or Outdoor Businesses, to maintain Essential Governmental Functions, or to perform Minimum Basic Operations at non-essential businesses.

9.  This Order is issued based on evidence of continued significant community transmission of COVID-19 within the County and throughout the Bay Area; continued uncertainty regarding the degree of undetected asymptomatic transmission; scientific evidence and best practices regarding the most effective approaches to slow the transmission of communicable diseases generally and COVID-19 specifically; evidence that the age, condition, and health of a significant portion of the population of the County places it at risk for serious health complications, including death, from COVID-19; and further evidence that others, including younger and otherwise healthy people, are also at risk for serious outcomes.  Due to the outbreak of the COVID-19 disease in the general public,

Order of the County Health Officer
to Shelter in Place (April 29, 2020)

 

which is now a pandemic according to the World Health Organization, there is a public health emergency throughout the County. Making the problem worse, some individuals who contract the virus causing the COVID-19 disease have no symptoms or have mild symptoms, which means they may not be aware they carry the virus and are transmitting it to others. Further, evidence shows that the virus can survive for hours to days on surfaces and be indirectly transmitted between individuals. Because even people without symptoms can transmit the infection, and because evidence shows the infection is easily spread, gatherings and other direct or indirect interpersonal interactions can result in preventable transmission of the virus.

10. The collective efforts taken to date regarding this public health emergency have slowed the virus' trajectory, but the emergency and the attendant risk to public health remain significant. As of April 27, 2020, there are 1,483 confirmed cases of COVID-19 in the County (up from 19 on March 15, 2020, just before the first shelter-in-place order) as well as at least 7,273 confirmed cases (up from 258 confirmed cases on March 15, 2020) and at least 266 deaths (up from 3 deaths on March 15, 2020) in the seven Bay Area jurisdictions jointly issuing this Order. The cumulative number of confirmed cases continues to increase, though the rate of increase has slowed in the days leading up to this Order. Evidence suggests that the restrictions on mobility and social distancing requirements imposed by the Prior Order (and the March 16, 2020 shelter-in-place order) are slowing the rate of increase in community transmission and confirmed cases by limiting interactions among people, consistent with scientific evidence of the efficacy of similar measures in other parts of the country and world.

11. The local health officers who jointly issued the Prior Order are monitoring several key indicators ("COVID-19 Indicators"), which are among the many factors informing their decisions whether to modify existing shelter-in-place restrictions. Progress on some of these COVID-19 Indicators—specifically related to case and hospitalization trends and adequate current hospital capacity—makes it appropriate, at this time, to ease certain restrictions imposed by the Prior Order to allow individuals to engage in a limited set of additional activities and perform work for a limited set of additional businesses associated with the lower risk of COVID-19 transmission, as set forth in Section 16.*l*. But the continued prevalence of the virus that causes COVID-19 requires most activities and business functions to remain restricted, and those activities that are permitted to occur must do so subject to social distancing and other infection control practices identified by the Health Officer. Progress on the COVID-19 Indicators will be critical to determinations by the local health officers regarding whether the restrictions imposed by this Order may be further modified. The Health Officer will continually review whether modifications to the Order are justified based on (1) progress on the COVID-19 Indicators; (2) developments in epidemiological and diagnostic methods for tracing, diagnosing, treating, or testing for COVID-19; and (3) scientific understanding of the transmission dynamics and clinical impact of COVID-19. The COVID-19 Indicators include, but are not limited to, the following:

Order of the County Health Officer
to Shelter in Place (April 29, 2020)

 

    a.   The trend of the number of new COVID-19 cases and hospitalizations per day

    b.   The capacity of hospitals and the health system in the County and region, including acute care beds and Intensive Care Unit beds, to provide care for COVID-19 patients and other patients, including during a surge in COVID-19 cases.

    c.   The supply of personal protective equipment (PPE) available for hospital staff and other healthcare providers and personnel who need PPE to safely respond to and treat COVID-19 patients.

    d.   The ability and capacity to quickly and accurately test persons to determine whether they are COVID-19 positive, especially those in vulnerable populations or high-risk settings or occupations.

    e.   The ability to conduct case investigation and contact tracing for the volume of cases and associated contacts that will continue to occur, isolating confirmed cases and quarantining persons who have had contact with confirmed cases.

12. The scientific evidence shows that at this stage of the emergency, it remains essential to continue to slow virus transmission to help (a) protect the most vulnerable; (b) prevent the health care system from being overwhelmed; (c) prevent long-term chronic health conditions, such as cardiovascular, kidney, and respiratory damage and loss of limbs from blood clotting; and (d) prevent deaths. Extension of the Prior Order is necessary to slow the spread of the COVID-19 disease, preserving critical and limited healthcare capacity in the County and advancing toward a point in the public health emergency where transmission can be controlled. At the same time, since the Prior Order was issued the County has made significant progress in expanding health system capacity and healthcare resources and in slowing community transmission of COVID-19. In light of progress on these indicators, and subject to continued monitoring and potential public health-based responses, it is appropriate at this time to allow additional Essential Businesses and Outdoor Businesses to operate in the County. Outdoor Businesses, by virtue of their operation outdoors, carry a lower risk of transmission than most indoor businesses. Because Outdoor Businesses, as defined in section 16.*l*, generally involve only brief and limited person-to-person interactions, they also carry lower risk of transmission than business activities prohibited under the Order, which tend to involve prolonged interactions between individuals in close proximity or in confined spaces where transmission is more likely. Existing Outdoor Businesses also constitute a relatively small proportion of business activity in the County, and therefore do not substantially increase the volume of interaction between persons in the County when reopened.

Order of the County Health Officer
to Shelter in Place (April 29, 2020)

 

13. This Order is issued in accordance with, and incorporates by reference, the March 4, 2020 Proclamation of a State of Emergency issued by Governor Gavin Newsom, the Declarations of Local Health Emergency issued by the Health Officer on March 1 and 5, the March 10, 2020 Resolution of the Board of Supervisors of the County of Alameda Ratifying the Declarations of Local Health Emergency, and the March 17, 2020 Resolution of the Board of Supervisors Ratifying the Declaration of Local Emergency.

14. This Order comes after the release of substantial guidance from the Health Officer, the Centers for Disease Control and Prevention, the California Department of Public Health, and other public health officials throughout the United States and around the world, including the widespread adoption of orders imposing similar social distancing requirements and mobility restrictions to combat the spread and harms of COVID-19. The Health Officer will continue to assess the quickly evolving situation and may modify or extend this Order, or issue additional Orders, related to COVID-19, as changing circumstances dictate.

15. This Order is also issued in light of the March 19, 2020 Order of the State Public Health Officer (the "State Shelter Order"), which set baseline statewide restrictions on non-residential business activities, effective until further notice, as well as the Governor's March 19, 2020 Executive Order N-33-20 directing California residents to follow the State Shelter Order. The State Shelter Order was complementary to the Prior Order and is complementary to this Order. This Order adopts in certain respects more stringent restrictions addressing the particular facts and circumstances in this County, which are necessary to control the public health emergency as it is evolving within the County and the Bay Area. Without this tailored set of restrictions that further reduces the number of interactions between persons, scientific evidence indicates that the public health crisis in the County will worsen to the point at which it may overtake available health care resources within the County and increase the death rate. Also, this Order enumerates additional restrictions on non-work-related travel not covered by the State Shelter Order; sets forth mandatory Social Distancing Requirements for all individuals in the County when engaged in activities outside their residences; and adds a mechanism to ensure that all businesses with facilities that are allowed to operate under the Order comply with the Social Distancing Requirements. Where a conflict exists between this Order and any state public health order related to the COVID-19 pandemic, the most restrictive provision controls. Consistent with California Health and Safety Code section 131080 and the Health Officer Practice Guide for Communicable Disease Control in California, except where the State Health Officer may issue an order expressly directed at this Order and based on a finding that a provision of this Order constitutes a menace to public health, any more restrictive measures in this Order continue to apply and control in this County. In addition, to the extent any federal guidelines allow activities that are not allowed by this Order, this Order controls and those activities are not allowed.

16. <u>Definitions and Exemptions</u>.

Order of the County Health Officer
to Shelter in Place (April 29, 2020)

 

a. For the purposes of this Order, individuals may leave their residence only to perform the following "Essential Activities."  But people at high risk of severe illness from COVID-19 and people who are sick are strongly urged to stay in their residence to the extent possible, except as necessary to seek or provide medical care or Essential Governmental Functions.  Essential Activities are:

    i. To engage in activities or perform tasks important to their health and safety, or to the health and safety of their family or household members (including pets), such as, by way of example only and without limitation, obtaining medical supplies or medication, or visiting a health care professional.

    ii. To obtain necessary services or supplies for themselves and their family or household members, or to deliver those services or supplies to others, such as, by way of example only and without limitation, canned food, dry goods, fresh fruits and vegetables, pet supply, fresh meats, fish, and poultry, and any other household consumer products, products needed to work from home, or products necessary to maintain the habitability, sanitation, and operation of residences.

    iii. To engage in outdoor recreation activity, including, by way of example and without limitation, walking, hiking, bicycling, and running, in compliance with Social Distancing Requirements and with the following limitations:

        1. Outdoor recreation activity at parks, beaches, and other open spaces must comply with any restrictions on access and use established by the Health Officer, government, or other entity that manages such area to reduce crowding and risk of transmission of COVID-19.  Such restrictions may include, but are not limited to, restricting the number of entrants, closing the area to vehicular access and parking, or closure to all public access;

        2. Use of outdoor recreational areas and facilities with high-touch equipment or that encourage gathering, including, but not limited to, playgrounds, gym equipment, climbing walls, picnic areas, dog parks, pools, spas, and barbecue areas, is prohibited outside of residences, and all such areas shall be closed to public access including by signage and, as appropriate, by physical barriers;

        3. Sports or activities that include the use of shared equipment or physical contact between participants may only be engaged in by members of the same household or living unit.

        4. Use of shared outdoor facilities for recreational activities that may occur outside of residences consistent with the restrictions set forth

Order of the County Health Officer
to Shelter in Place (April 29, 2020)

 

in subsections 1, 2, and 3, above, including, but not limited to, golf courses, skate parks, and athletic fields, must, before they may begin, comply with social distancing and health/safety protocols posted at the site and any other restrictions, including prohibitions, on access and use established by the Health Officer, government, or other entity that manages such area to reduce crowding and risk of transmission of COVID-19.

    iv. To perform work for or access an Essential Business, Outdoor Business, or to otherwise carry out activities specifically permitted in this Order, including Minimum Basic Operations, as defined in this Section.

    v. To provide necessary care for a family member or pet in another household who has no other source of care.

    vi. To attend a funeral with no more than 10 individuals present.

    vii. To move residences. When moving into or out of the Bay Area region, individuals are strongly urged to quarantine for 14 days. To quarantine, individuals should follow the guidance of the United States Centers for Disease Control and Prevention.

b. For the purposes of this Order, individuals may leave their residence to work for, volunteer at, or obtain services at "Healthcare Operations," including, without limitation, hospitals, clinics, COVID-19 testing locations, dentists, pharmacies, blood banks and blood drives, pharmaceutical and biotechnology companies, other healthcare facilities, healthcare suppliers, home healthcare services providers, mental health providers, or any related and/or ancillary healthcare services. "Healthcare Operations" also includes veterinary care and all healthcare services provided to animals. This exemption for Healthcare Operations shall be construed broadly to avoid any interference with the delivery of healthcare, broadly defined. "Healthcare Operations" excludes fitness and exercise gyms and similar facilities.

c. For the purposes of this Order, individuals may leave their residence to provide any services or perform any work necessary to the operation and maintenance of "Essential Infrastructure," including airports, utilities (including water, sewer, gas, and electrical), oil refining, roads and highways, public transportation, solid waste facilities (including collection, removal, disposal, recycling, and processing facilities), cemeteries, mortuaries, crematoriums, and telecommunications systems (including the provision of essential global, national, and local infrastructure for internet, computing services, business infrastructure, communications, and web-based services).

Order of the County Health Officer
to Shelter in Place (April 29, 2020)

 

d. For the purposes of this Order, all first responders, emergency management personnel, emergency dispatchers, court personnel, and law enforcement personnel, and others who need to perform essential services are categorically exempt from this Order to the extent they are performing those essential services. Further, nothing in this Order shall prohibit any individual from performing or accessing "Essential Governmental Functions," as determined by the governmental entity performing those functions in the County. Each governmental entity shall identify and designate appropriate personnel, volunteers, or contractors to continue providing and carrying out any Essential Governmental Functions, including the hiring or retention of new personnel or contractors to perform such functions. Each governmental entity and its contractors must employ all necessary emergency protective measures to prevent, mitigate, respond to, and recover from the COVID-19 pandemic, and all Essential Governmental Functions shall be performed in compliance with Social Distancing Requirements to the greatest extent feasible.

e. For the purposes of this Order, a "business" includes any for-profit, non-profit, or educational entity, whether a corporate entity, organization, partnership or sole proprietorship, and regardless of the nature of the service, the function it performs, or its corporate or entity structure.

f. For the purposes of this Order, "Essential Businesses" are:

    i. Healthcare Operations and businesses that operate, maintain, or repair Essential Infrastructure;

    ii. Grocery stores, certified farmers' markets, farm and produce stands, supermarkets, food banks, convenience stores, and other establishments engaged in the retail sale of unprepared food, canned food, dry goods, non-alcoholic beverages, fresh fruits and vegetables, pet supply, fresh meats, fish, and poultry, as well as hygienic products and household consumer products necessary for personal hygiene or the habitability, sanitation, or operation of residences. The businesses included in this subparagraph (ii) include establishments that sell multiple categories of products provided that they sell a significant amount of essential products identified in this subparagraph, such as liquor stores that also sell a significant amount of food.

    iii. Food cultivation, including farming, livestock, and fishing;

    iv. Businesses that provide food, shelter, and social services, and other necessities of life for economically disadvantaged or otherwise needy individuals;

    v. Construction, but only as permitted under the State Shelter Order and only pursuant to the Construction Safety Protocols listed in Appendix B and

Order of the County Health Officer
to Shelter in Place (April 29, 2020)
Page 9 of 16

 

incorporated into this Order by this reference. Public works projects shall also be subject to Appendix B, except if other protocols are specified by the Health Officer;

vi. Newspapers, television, radio, and other media services;

vii. Gas stations and auto-supply, auto-repair (including, but not limited to, for cars, trucks, motorcycles and motorized scooters), and automotive dealerships, but only for the purpose of providing auto-supply and auto-repair services. This subparagraph (vii) does not restrict the on-line purchase of automobiles if they are delivered to a residence or Essential Business;

viii. Bicycle repair and supply shops;

ix. Banks and related financial institutions;

x. Service providers that enable real estate transactions (including rentals, leases, and home sales), including, but not limited to, real estate agents, escrow agents, notaries, and title companies, provided that appointments and other residential real estate viewings must only occur virtually or, if a virtual viewing is not feasible, by appointment with no more than two visitors at a time residing within the same household or living unit and one individual showing the unit (except that in person visits are not allowed when the occupant is present in the residence);

xi. Hardware stores;

xii. Plumbers, electricians, exterminators, and other service providers who provide services that are necessary to maintaining the habitability, sanitation, or operation of residences and Essential Businesses;

xiii. Businesses providing mailing and shipping services, including post office boxes;

xiv. Educational institutions—including public and private K-12 schools, colleges, and universities—for purposes of facilitating distance learning or performing essential functions, or as allowed under subparagraph xxvi, provided that social distancing of six feet per person is maintained to the greatest extent possible;

xv. Laundromats, drycleaners, and laundry service providers;

xvi. Restaurants and other facilities that prepare and serve food, but only for delivery or carry out. Schools and other entities that typically provide free food services to students or members of the public may continue to do so under this Order on the condition that the food is provided to students or members of the public on a pick-up and take-away basis only. Schools and other entities that provide food services under this exemption shall not

Order of the County Health Officer
to Shelter in Place (April 29, 2020)

 

permit the food to be eaten at the site where it is provided, or at any other gathering site;

xvii. Funeral home providers, mortuaries, cemeteries, and crematoriums, to the extent necessary for the transport, preparation, or processing of bodies or remains;

xviii. Businesses that supply other Essential Businesses with the support or supplies necessary to operate, but only to the extent that they support or supply these Essential Businesses. This exemption shall not be used as a basis for engaging in sales to the general public from retail storefronts;

xix. Businesses that have the primary function of shipping or delivering groceries, food, or other goods directly to residences or businesses. This exemption shall not be used to allow for manufacturing or assembly of non-essential products or for other functions besides those necessary to the delivery operation;

xx. Airlines, taxis, rental car companies, rideshare services (including shared bicycles and scooters), and other private transportation providers providing transportation services necessary for Essential Activities and other purposes expressly authorized in this Order;

xxi. Home-based care for seniors, adults, children, and pets;

xxii. Residential facilities and shelters for seniors, adults, and children;

xxiii. Professional services, such as legal, notary, or accounting services, when necessary to assist in compliance with non-elective, legally required activities or in relation to death or incapacity;

xxiv. Services to assist individuals in finding employment with Essential Businesses;

xxv. Moving services that facilitate residential or commercial moves that are allowed under this Order; and

xxvi. Childcare establishments, summer camps, and other educational or recreational institutions or programs providing care or supervision for children of all ages that enable owners, employees, volunteers, and contractors for Essential Businesses, Essential Governmental Functions, Outdoor Businesses, or Minimum Basic Operations to work as allowed under this Order. To the extent possible, these operations must comply with the following conditions:

  1. They must be carried out in stable groups of 12 or fewer children ("stable" means that the same 12 or fewer children are in the same group each day).

  2. Children shall not change from one group to another.

Order of the County Health Officer
to Shelter in Place (April 29, 2020)
Page 11 of 16



3. If more than one group of children is at one facility, each group shall be in a separate room.  Groups shall not mix with each other.

4. Providers or educators shall remain solely with one group of children.

The Health Officer will carefully monitor the changing public health situation as well as any changes to the State Shelter Order.  In the event that the State relaxes restrictions on childcare and related institutions and programs, the Health Officer will consider whether to similarly relax the restrictions imposed by this Order.

g. For the purposes of this Order, "Minimum Basic Operations" means the following activities for businesses, provided that owners, personnel, and contractors comply with Social Distancing Requirements as defined this Section, to the extent possible, while carrying out such operations:

i. The minimum necessary activities to maintain and protect the value of the business's inventory and facilities; ensure security, safety, and sanitation; process payroll and employee benefits; provide for the delivery of existing inventory directly to residences or businesses; and related functions.  For clarity, this section does not permit businesses to provide curbside pickup to customers.

ii. The minimum necessary activities to facilitate owners, personnel, and contractors of the business being able to continue to work remotely from their residences, and to ensure that the business can deliver its service remotely.

h. For the purposes of this Order, all businesses that are operating at facilities in the County visited or used by the public or personnel must, as a condition of such operation, prepare and post a "Social Distancing Protocol" for each of these facilities; provided, however, that construction activities shall instead comply with the Construction Project Safety Protocols set forth in Appendix B and not the Social Distancing Protocol.  The Social Distancing Protocol must be substantially in the form attached to this Order as Appendix A, and it must be updated from prior versions to address new requirements listed in this Order or in related guidance or directives from the Health Officer.  The Social Distancing Protocol must be posted at or near the entrance of the relevant facility and shall be easily viewable by the public and personnel.  A copy of the Social Distancing Protocol must also be provided to each person performing work at the facility.  All businesses subject to this paragraph shall implement the Social Distancing Protocol and provide evidence of its implementation to any authority enforcing this Order upon demand.  The Social Distancing Protocol must explain how the business is achieving the following, as applicable:

Order of the County Health Officer
to Shelter in Place (April 29, 2020)
Page 12 of 16

 

     i. Limiting the number of people who can enter into the facility at any one time to ensure that people in the facility can easily maintain a minimum six-foot distance from one another at all times, except as required to complete Essential Business activity;

     ii. Requiring face coverings to be worn by all persons entering the facility, other than those exempted from face covering requirements (e.g. young children);

     iii. Where lines may form at a facility, marking six-foot increments at a minimum, establishing where individuals should stand to maintain adequate social distancing;

     iv. Providing hand sanitizer, soap and water, or effective disinfectant at or near the entrance of the facility and in other appropriate areas for use by the public and personnel, and in locations where there is high-frequency employee interaction with members of the public (e.g. cashiers);

     v. Providing for contactless payment systems or, if not feasible to do so, the providing for disinfecting all payment portals, pens, and styluses after each use;

     vi. Regularly disinfecting other high-touch surfaces;

     vii. Posting a sign at the entrance of the facility informing all personnel and customers that they should: avoid entering the facility if they have any COVID-19 symptoms; maintain a minimum six-foot distance from one another; sneeze and cough into one's elbow; not shake hands or engage in any unnecessary physical contact; and

     viii. Any additional social distancing measures being implemented (see the Centers for Disease Control and Prevention's guidance at: https://www.cdc.gov/coronavirus/2019-ncov/community/guidance-business-response.html).

i. For the purposes of this Order, "Essential Travel" means travel for any of the following purposes:

     i. Travel related to the provision of or access to Essential Activities, Essential Governmental Functions, Essential Businesses, Minimum Basic Operations, Outdoor Activities, and Outdoor Businesses.

     ii. Travel to care for any elderly, minors, dependents, or persons with disabilities.

     iii. Travel to or from educational institutions for purposes of receiving materials for distance learning, for receiving meals, and any other related services.

Order of the County Health Officer
to Shelter in Place (April 29, 2020)
Page 13 of 16

 

    iv.  Travel to return to a place of residence from outside the County.

    v.  Travel required by law enforcement or court order.

    vi.  Travel required for non-residents to return to their place of residence outside the County.  Individuals are strongly encouraged to verify that their transportation out of the County remains available and functional prior to commencing such travel.

    vii.  Travel to manage after-death arrangements and burial.

    viii.  Travel to arrange for shelter or avoid homelessness.

    ix.  Travel to avoid domestic violence or child abuse.

    x.  Travel for parental custody arrangements.

    xi.  Travel to a place to temporarily reside in a residence or other facility to avoid potentially exposing others to COVID-19, such as a hotel or other facility provided by a governmental authority for such purposes.

j.  For purposes of this Order, "residences" include hotels, motels, shared rental units, and similar facilities.  Residences also include living structures and outdoor spaces associated with those living structures, such as patios, porches, backyards, and front yards that are only accessible to a single family or household unit.

k.  For purposes of this Order, "Social Distancing Requirements" means:

    i.  Maintaining at least six-foot social distancing from individuals who are not part of the same household or living unit;

    ii.  Frequently washing hands with soap and water for at least 20 seconds, or using hand sanitizer that is recognized by the Centers for Disease Control and Prevention as effective in combatting COVID-19;

    iii.  Covering coughs and sneezes with a tissue or fabric or, if not possible, into the sleeve or elbow (but not into hands);

    iv.  Wearing a face covering when out in public, consistent with the orders or guidance of the Health Officer; and

    v.  Avoiding all social interaction outside the household when sick with a fever, cough, or other COVID-19 symptoms.

All individuals must strictly comply with Social Distancing Requirements, except to the limited extent necessary to provide care (including childcare, adult or senior care, care to individuals with special needs, and patient care); as necessary to carry out the work of Essential Businesses, Essential Governmental Functions, or provide for Minimum Basic Operations; or as otherwise expressly provided in this

Order of the County Health Officer
to Shelter in Place (April 29, 2020)
Page 14 of 16



Order.  Outdoor Activities and Outdoor Businesses must strictly adhere to these Social Distancing Requirements.

l.   For purposes of this Order, "Outdoor Businesses" means:

   i.   The following businesses that normally operated primarily outdoors prior to March 16, 2020 and where there is the ability to fully maintain social distancing of at least six feet between all persons:

      1.   Businesses primarily operated outdoors, such as wholesale and retail plant nurseries, agricultural operations, and garden centers.

      2.   Service providers that primarily provide outdoor services, such as landscaping and gardening services, and environmental site remediation services.

   For clarity, "Outdoor Businesses" do not include outdoor restaurants, cafes, or bars.

m.  For purposes of this Order, "Outdoor Activities" means:

   i.   To obtain goods, services, or supplies from, or perform work for, an Outdoor Business.

   ii.   To engage in outdoor recreation as permitted in Section 16.a.

17.  Government agencies and other entities operating shelters and other facilities that house or provide meals or other necessities of life for individuals experiencing homelessness must take appropriate steps to help ensure compliance with Social Distancing Requirements, including adequate provision of hand sanitizer.  Also, individuals experiencing homelessness who are unsheltered and living in encampments should, to the maximum extent feasible, abide by 12 foot by 12 foot distancing for the placement of tents, and government agencies should provide restroom and hand washing facilities for individuals in such encampments as set forth in Centers for Disease Control and Prevention Interim Guidance Responding to Coronavirus 2019 (COVID-19) Among People Experiencing Unsheltered Homelessness (https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/unsheltered-homelessness.html).

18.  Pursuant to Government Code sections 26602 and 41601 and Health and Safety Code section 101029, the Health Officer requests that the Sheriff and all chiefs of police in the County ensure compliance with and enforce this Order.  The violation of any provision of this Order constitutes an imminent threat and menace to public health, constitutes a public nuisance, and is punishable by fine, imprisonment, or both.

Order of the County Health Officer
to Shelter in Place (April 29, 2020)

 

19. This Order shall become effective at 11:59 p.m. on May 3, 2020 and will continue to be in effect until 11:59 p.m. on May 31, 2020, or until it is extended, rescinded, superseded, or amended in writing by the Health Officer.

20. Copies of this Order shall promptly be: (1) made available at the County Administration Building at 1221 Oak Street, Oakland, California 94612; (2) posted on the County Public Health Department's website (acphd.org); and (3) provided to any member of the public requesting a copy of this Order.

21. If any provision of this Order or its application to any person or circumstance is held to be invalid, the remainder of the Order, including the application of such part or provision to other persons or circumstances, shall not be affected and shall continue in full force and effect.  To this end, the provisions of this Order are severable.


**IT IS SO ORDERED:**


_____

Dr. Erica Pan                                                      Dated: April 29, 2020
Interim Health Officer of the County of Alameda



Attachments:   Appendix A – Social Distancing Protocol
                         Appendix B1 – Small Construction Project Safety Protocol
                         Appendix B2 – Large Construction Project Safety Protocol


Order of the County Health Officer
to Shelter in Place (April 29, 2020)

**Appendix A: Social Distancing Protocol** (Updated April 29, 2020)

Business name:  Click or tap here to enter text.

Facility Address:  Click or tap here to enter text.

Approximate gross square footage of space open to the public:  Click or tap here to enter text.

**Businesses must implement all applicable measures listed below, and be prepared to explain why any measure that is not implemented is inapplicable to the business.**

---

***Signage:***

☐ Signage at each public entrance of the facility to inform all employees and customers that they should: avoid entering the facility if they have COVID-19 symptoms; maintain a minimum six-foot distance from one another; sneeze and cough into a cloth or tissue or, if not available, into one's elbow; wear face coverings, as appropriate; and not shake hands or engage in any unnecessary physical contact.

☐ Signage posting a copy of the Social Distancing Protocol at each public entrance to the facility.

---

***Measures To Protect Employee Health (check all that apply to the facility):***

☐ Everyone who can carry out their work duties from home has been directed to do so.

☐ All employees have been told not to come to work if sick.

☐ Symptom checks are being conducted before employees may enter the work space.

☐ Employees are required to wear face coverings, as appropriate.

☐ All desks or individual work stations are separated by at least six feet.

☐ Break rooms, bathrooms, and other common areas are being disinfected frequently, on the following schedule:
      ☐ Break rooms:
      ☐ Bathrooms:
      ☐ Other (Click or tap here to enter text.): Click or tap here to enter text.

☐ Disinfectant and related supplies are available to all employees at the following location(s): Click or tap here to enter text.

☐ Hand sanitizer effective against COVID-19 is available to all employees at the following location(s): Click or tap here to enter text.

☐ Soap and water are available to all employees at the following location(s): Click or tap here to enter text.

☐ Copies of this Protocol have been distributed to all employees.

☐ Optional—Describe other measures: Click or tap here to enter text.

---

***Measures To Prevent Crowds From Gathering (check all that apply to the facility):***

☐ Limit the number of customers in the store at any one time to Click or tap here to enter text., which allows for customers and employees to easily maintain at least six-foot distance from one another at all practicable times.

☐ Post an employee at the door to ensure that the maximum number of customers in the facility set forth above is not exceeded.

**Appendix A: Social Distancing Protocol** (Updated April 29, 2020)

☐ Placing per-person limits on goods that are selling out quickly to reduce crowds and lines. Explain: Click or tap here to enter text.

☐ Optional—Describe other measures: Click or tap here to enter text.

---

### Measures To Keep People At Least Six Feet Apart (check all that apply to the facility)

☐ Placing signs outside the store reminding people to be at least six feet apart, including when in line.

☐ Placing tape or other markings at least six feet apart in customer line areas inside the store and on sidewalks at public entrances with signs directing customers to use the markings to maintain distance.

☐ Separate order areas from delivery areas to prevent customers from gathering.

☐ All employees have been instructed to maintain at least six feet distance from customers and from each other, except employees may momentarily come closer when necessary to accept payment, deliver goods or services, or as otherwise necessary.

☐ Optional—Describe other measures: Click or tap here to enter text.

---

### Measures To Prevent Unnecessary Contact (check all that apply to the facility):

☐ Preventing people from self-serving any items that are food-related.

☐ Lids for cups and food-bar type items are provided by staff; not to customers to grab.

☐ Bulk-item food bins are not available for customer self-service use.

☐ Not permitting customers to bring their own bags, mugs, or other reusable items from home.

☐ Providing for contactless payment systems or, if not feasible, sanitizing payment systems regularly. Describe: Click or tap here to enter text.

☐ Optional—Describe other measures (e.g. providing senior-only hours): Click or tap here to enter text.

---

### Measures To Increase Sanitization (check all that apply to the facility):

☐ Disinfecting wipes that are effective against COVID-19 are available near shopping carts and shopping baskets.

☐ Employee(s) assigned to disinfect carts and baskets regularly.

☐ Hand sanitizer, soap and water, or effective disinfectant is available to the public at or near the entrance of the facility, at checkout counters, and anywhere else where people have direct interactions.

☐ Disinfecting all payment portals, pens, and styluses after each use.

☐ Disinfecting all high-contact surfaces frequently.

☐ Optional—Describe other measures: Click or tap here to enter text.

\* Any additional measures not included here should be listed on separate pages and attached to this document.

**You may contact the following person with any questions or comments about this protocol:**

**Name:** Click or tap here to enter text.          **Phone number:** Click or tap here to enter text.

**Appendix B-1**

**Small Construction Project Safety Protocol**

1.  Any construction project meeting any of the following specifications is subject to this Small Construction Project Safety Protocol ("SCP Protocol"), including public works projects unless otherwise specified by the Health Officer:

    a.  For residential projects, any single-family, multi-family, senior, student, or other residential construction, renovation, or remodel project consisting of 10 units or less.  This SCP Protocol does not apply to construction projects where a person is performing construction on their current residence either alone or solely with members of their own household.

    b.  For commercial projects, any construction, renovation, or tenant improvement project consisting of 20,000 square feet of floor area or less.

    c.  For mixed-use projects, any project that meets both of the specifications in subsection 1.a and 1.b.

    d.  All other construction projects not subject to the Large Construction Project Safety Protocol set forth in Appendix B-2.

2.  The following restrictions and requirements must be in place at all construction job sites subject to this SCP Protocol:

    a.  Comply with all applicable and current laws and regulations including but not limited to OSHA and Cal-OSHA. If there is any conflict, difference, or discrepancy between or among applicable laws and regulations and/or this SCP Protocol, the stricter standard shall apply.

    b.  Designate a site-specific COVID-19 supervisor or supervisors to enforce this guidance.  A designated COVID-19 supervisor must be present on the construction site at all times during construction activities.  A COVID-19 supervisor may be an on-site worker who is designated to serve in this role.

    c.  The COVID-19 supervisor must review this SCP Protocol with all workers and visitors to the construction site.

    d.  Establish a daily screening protocol for arriving staff to ensure that potentially infected staff do not enter the construction site.  If workers leave the jobsite and return the same day, establish a cleaning and decontamination protocol prior to entry and exit of the jobsite.  Post the daily screening protocol at all entrances and exits to the jobsite.  More information on screening can be found online at:  https://www.cdc.gov/coronavirus/2019-ncov/community/index.html.

    e.  Practice social distancing by maintaining a minimum six-foot distance between workers at all times, except as strictly necessary to carry out a task associated with the construction project.

**Appendix B-1**

f.  Where construction work occurs within an occupied residential unit, separate work areas must be sealed off from the remainder of the unit with physical barriers such as plastic sheeting or closed doors sealed with tape to the extent feasible.  If possible, workers must access the work area from an alternative entry/exit door to the entry/exit door used by residents.  Available windows and exhaust fans must be used to ventilate the work area.  If residents have access to the work area between workdays, the work area must be cleaned and sanitized at the beginning and at the end of workdays.  Every effort must be taken to minimize contact between workers and residents, including maintaining a minimum of six feet of social distancing at all times.

g.  Where construction work occurs within common areas of an occupied residential or commercial building or a mixed-use building in use by on-site employees or residents, separate work areas must be sealed off from the rest of the common areas with physical barriers such as plastic sheeting or closed doors sealed with tape to the extent feasible. If possible, workers must access the work area from an alternative building entry/exit door to the building entry/exit door used by residents or other users of the building. Every effort must be taken to minimize contact between worker and building residents and users, including maintaining a minimum of six feet of social distancing at all times.

h.  Prohibit gatherings of any size on the jobsite, including gatherings for breaks or eating, except for meetings regarding compliance with this protocol or as strictly necessary to carry out a task associated with the construction project.

i.  Cal-OSHA requires employers to provide water, which should be provided in single-serve containers.  Sharing of any of any food or beverage is strictly prohibited and if sharing is observed, the worker must be sent home for the day.

j.  Provide personal protective equipment (PPE) specifically for use in construction, including gloves, goggles, face shields, and face coverings as appropriate for the activity being performed.  At no time may a contractor secure or use medical-grade PPE unless required due to the medical nature of a jobsite.  Face coverings must be worn in compliance with Section 5 of the Health Officer's Order No. 20-08, dated April 17, 2020, or any subsequently issued or amended order.

k.  Strictly control "choke points" and "high-risk areas" where workers are unable to maintain six-foot social distancing and prohibit or limit use to ensure that six-foot distance can easily be maintained between individuals.

l.  Minimize interactions and maintain social distancing with all site visitors, including delivery workers, design professional and other project consultants, government agency representatives, including building and fire inspectors, and residents at residential construction sites.

m.  Stagger trades as necessary to reduce density and allow for easy maintenance of minimum six-foot separation.

**Appendix B-1**

n. Discourage workers from using others' desks, work tools, and equipment. If more than one worker uses these items, the items must be cleaned and disinfected with disinfectants that are effective against COVID-19 in between use by each new worker. Prohibit sharing of PPE.

o. If hand washing facilities are not available at the jobsite, place portable wash stations or hand sanitizers that are effective against COVID-19 at entrances to the jobsite and in multiple locations dispersed throughout the jobsite as warranted.

p. Clean and sanitize any hand washing facilities, portable wash stations, jobsite restroom areas, or other enclosed spaces daily with disinfectants that are effective against COVID-19. Frequently clean and disinfect all high touch areas, including entry and exit areas, high traffic areas, rest rooms, hand washing areas, high touch surfaces, tools, and equipment

q. Maintain a daily attendance log of all workers and visitors that includes contact information, including name, phone number, address, and email.

r. Post a notice in an area visible to all workers and visitors instructing workers and visitors to do the following:
   i. Do not touch your face with unwashed hands or with gloves.
   ii. Frequently wash your hands with soap and water for at least 20 seconds or use hand sanitizer with at least 60% alcohol.
   iii. Clean and disinfect frequently touched objects and surfaces such as work stations, keyboards, telephones, handrails, machines, shared tools, elevator control buttons, and doorknobs.
   iv. Cover your mouth and nose when coughing or sneezing, or cough or sneeze into the crook of your arm at your elbow/sleeve.
   v. Do not enter the jobsite if you have a fever, cough, or other COVID-19 symptoms. If you feel sick, or have been exposed to anyone who is sick, stay at home.
   vi. Constantly observe your work distances in relation to other staff. Maintain the recommended minimum six feet at all times when not wearing the necessary PPE for working in close proximity to another person.
   vii. Do not carpool to and from the jobsite with anyone except members of your own household unit, or as necessary for workers who have no alternative means of transportation.
   viii. Do not share phones or PPE.

**Appendix B-2**

**Large Construction Project Safety Protocol**

1. Any construction project meeting any of the following specifications is subject to this Large Construction Project Safety Protocol ("LCP Protocol"), including public works projects unless otherwise specified by the Health Officer:

   a. For residential construction projects, any single-family, multi-family, senior, student, or other residential construction, renovation, or remodel project consisting of more than 10 units.

   b. For commercial construction projects, any construction, renovation, or tenant improvement project consisting of more than 20,000 square feet of floor area.

   c. For construction of Essential Infrastructure, as defined in section 16.c of the Order, any project that requires five or more workers at the jobsite at any one time.

2. The following restrictions and requirements must be in place at all construction job sites subject to this LCP Protocol:

   a. Comply with all applicable and current laws and regulations including but not limited to OSHA and Cal-OSHA. If there is any conflict, difference or discrepancy between or among applicable laws and regulations and/or this LCP Protocol, the stricter standard will apply.

   b. Prepare a new or updated Site-Specific Health and Safety Plan to address COVID-19-related issues, post the Plan on-site at all entrances and exits, and produce a copy of the Plan to County governmental authorities upon request. The Plan must be translated as necessary to ensure that all non-English speaking workers are able to understand the Plan.

   c. Provide personal protective equipment (PPE) specifically for use in construction, including gloves, goggles, face shields, and face coverings as appropriate for the activity being performed. At no time may a contractor secure or use medical-grade PPE, unless required due to the medical nature of a job site. Face Coverings must be worn in compliance with Section 5 of the Health Officer Order No. 20-08, dated April 17, 2020, or any subsequently issued or amended order.

   d. Ensure that employees are trained in the use of PPE. Maintain and make available a log of all PPE training provided to employees and monitor all employees to ensure proper use of the PPE.

   e. Prohibit sharing of PPE.

   f. Implement social distancing requirements including, at minimum:

1

## Appendix B-2

- i.   Stagger stop- and start-times for shift schedules to reduce the quantity of workers at the jobsite at any one time to the extent feasible.
- ii.   Stagger trade-specific work to minimize the quantity of workers at the jobsite at any one time.
- iii.   Require social distancing by maintaining a minimum six-foot distance between workers at all times, except as strictly necessary to carry out a task associated with the project.
- iv.   Prohibit gatherings of any size on the jobsite, except for safety meetings or as strictly necessary to carry out a task associated with the project.
- v.   Strictly control "choke points" and "high-risk areas" where workers are unable to maintain minimum six-foot social distancing and prohibit or limit use to ensure that minimum six-foot distancing can easily be maintained between workers.
- vi.   Minimize interactions and maintain social distancing with all site visitors, including delivery workers, design professional and other project consultants, government agency representatives, including building and fire inspectors, and residents at residential construction sites.
- vii.   Prohibit workers from using others' phones or desks.  Any work tools or equipment that must be used by more than one worker must be cleaned with disinfectants that are effective against COVID-19 before use by a new worker.
- viii.   Place wash stations or hand sanitizers that are effective against COVID-19 at entrances to the jobsite and in multiple locations dispersed throughout the jobsite as warranted.
- ix.   Maintain a daily attendance log of all workers and visitors that includes contact information, including name, address, phone number, and email.
- x.   Post a notice in an area visible to all workers and visitors instructing workers and visitors to do the following:
  1.   Do not touch your face with unwashed hands or with gloves.
  2.   Frequently wash your hands with soap and water for at least 20 seconds or use hand sanitizer with at least 60% alcohol.
  3.   Clean and disinfect frequently touched objects and surfaces such as workstations, keyboards, telephones, handrails, machines, shared tools, elevator control buttons, and doorknobs.
  4.   Cover your mouth and nose when coughing or sneezing or cough or sneeze into the crook of your arm at your elbow/sleeve.
  5.   Do not enter the jobsite if you have a fever, cough, or other COVID-19 symptoms.  If you feel sick, or have been exposed to anyone who is sick, stay at home.
  6.   Constantly observe your work distances in relation to other staff. Maintain the recommended minimum six-feet distancing at all times when not wearing the necessary PPE for working in close proximity to another person.
  7.   Do not share phones or PPE.
- xi.   The notice in section 2.f.x must be translated as necessary to ensure that all non-English speaking workers are able to understand the notice.

2

**Appendix B-2**

g.  Implement cleaning and sanitization practices in accordance with the following:
    i.  Frequently clean and sanitize, in accordance with CDC guidelines, all high-traffic and high-touch areas including, at a minimum: meeting areas, jobsite lunch and break areas, entrances and exits to the jobsite, jobsite trailers, hand-washing areas, tools, equipment, jobsite restroom areas, stairs, elevators, and lifts.
    ii.  Establish a cleaning and decontamination protocol prior to entry and exit of the jobsite and post the protocol at entrances and exits of jobsite.
    iii.  Supply all personnel performing cleaning and sanitization with proper PPE to prevent them from contracting COVID-19.  Employees must not share PPE.
    iv.  Establish adequate time in the workday to allow for proper cleaning and decontamination including prior to starting at or leaving the jobsite for the day.

h.  Implement a COVID-19 community spread reduction plan as part of the Site-Specific Health and Safety Plan that includes, at minimum, the following restrictions and requirements:
    i.  Prohibit all carpooling to and from the jobsite except by workers living within the same household unit, or as necessary for workers who have no alternative means of transportation.
    ii.  Cal-OSHA requires employers to provide water, which should be provided in single-serve containers.  Prohibit any sharing of any food or beverage and if sharing is observed, the worker must be sent home for the day.
    iii.  Prohibit use of microwaves, water coolers, and other similar shared equipment.

i.  Assign a COVID-19 Safety Compliance Officer (SCO) to the jobsite and ensure the SCO's name is posted on the Site-Specific Health and Safety Plan.  The SCO must:
    i.  Ensure implementation of all recommended safety and sanitation requirements regarding the COVID-19 virus at the jobsite.
    ii.  Compile daily written verification that each jobsite is compliant with the components of this LCP Protocol.  Each written verification form must be copied, stored, and made immediately available upon request by any County official.
    iii.  Establish a daily screening protocol for arriving staff, to ensure that potentially infected staff do not enter the construction site.  If workers leave the jobsite and return the same day, establish a cleaning and decontamination protocol prior to entry and exit of the jobsite.  Post the daily screening protocol at all entrances and exit to the jobsite.  More information on screening can be found online at:  https://www.cdc.gov/coronavirus/2019-ncov/community/index.html.
    iv.  Conduct daily briefings in person or by teleconference that must cover the following topics:
        1.  New jobsite rules and pre-job site travel restrictions for the prevention of COVID-19 community spread.
        2.  Review of sanitation and hygiene procedures.
        3.  Solicitation of worker feedback on improving safety and sanitation.
        4.  Coordination of construction site daily cleaning/sanitation requirements.
        5.  Conveying updated information regarding COVID-19.
        6.  Emergency protocols in the event of an exposure or suspected exposure to COVID-19.

Appendix B-2

v.   Develop and ensure implementation of a remediation plan to address any non-compliance with this LCP Protocol and post remediation plan at entrance and exit of jobsite during remediation period.  The remediation plan must be translated as necessary to ensure that all non-English speaking workers are able to understand the document.

vi.   The SCO must not permit any construction activity to continue without bringing such activity into compliance with these requirements.

vii.   Report repeated non-compliance with this LCP Protocol to the appropriate jobsite supervisors and a designated County official.

j.   Assign a COVID-19 Third-Party Jobsite Safety Accountability Supervisor (JSAS) for the jobsite, who at a minimum holds an OSHA-30 certificate and first-aid training within the past two years, who must be trained in the protocols herein and verify compliance, including by visual inspection and random interviews with workers, with this LCP Protocol.

i.   Within seven calendar days of each jobsite visit, the JSAS must complete a written assessment identifying any failure to comply with this LCP Protocol.  The written assessment must be copied, stored, and, upon request by the County, sent to a designated County official.

ii.   If the JSAS discovers that a jobsite is not in compliance with this LCP Protocol, the JSAS must work with the SCO to develop and implement a remediation plan.

iii.   The JSAS must coordinate with the SCO to prohibit continuation of any work activity not in compliance with rules stated herein until addressed and the continuing work is compliant.

iv.   The remediation plan must be sent to a designated County official within five calendar days of the JSAS's discovery of the failure to comply.

k.   In the event of a confirmed case of COVID-19 at any jobsite, the following must take place:

i.   Immediately remove the infected individual from the jobsite with directions to seek medical care.

ii.   Each location the infected worker was at must be decontaminated and sanitized by an outside vendor certified in hazmat clean ups, and work in these locations must cease until decontamination and sanitization is complete.

iii.   The County Public Health Department must be notified immediately and any additional requirements per the County health officials must be completed, including full compliance with any tracing efforts by the County.

l.   Where construction work occurs within an occupied residential unit, any separate work area must be sealed off from the remainder of the unit with physical barriers such as plastic sheeting or closed doors sealed with tape to the extent feasible.  If possible, workers must access the work area from an alternative entry/exit door to the entry/exit door used by residents.  Available windows and exhaust fans must be used to ventilate the work area.  If residents have access to the work area between workdays, the work area must be cleaned and sanitized at the beginning and at the end of workdays. Every effort must be taken to

4

**Appendix B-2**

minimize contact between workers and residents, including maintaining a minimum of six feet of social distancing at all times.

m.  Where construction work occurs within common areas of an occupied residential or commercial building or a mixed-use building in use by on-site employees or residents, any separate work area must be sealed off from the rest of the common areas with physical barriers such as plastic sheeting or closed doors sealed with tape to the extent feasible.  If possible, workers must access the work area from an alternative building entry/exit door to the building entry/exit door used by residents or other users of the building.  Every effort must be taken to minimize contact between worker and building residents and users, including maintaining a minimum of six feet of social distancing at all times.

# EXHIBIT 3



ANNA M. ROTH, RN, MS, MPH
HEALTH SERVICES DIRECTOR

CHRIS FARNITANO, MD
HEALTH OFFICER

CONTRA COSTA
HEALTH SERVICES

OFFICE OF
THE DIRECTOR

1220 Morello, Suite 200
Martinez, CA 94553

Ph (925) 957-2679
Fax (925) 957-2651

**ORDER OF THE HEALTH OFFICER**

**OF THE COUNTY OF CONTRA COSTA DIRECTING**

**ALL INDIVIDUALS IN THE COUNTY TO CONTINUE SHELTERING AT THEIR PLACE OF RESIDENCE EXCEPT FOR ESSENTIAL NEEDS AND IDENTIFIED OUTDOOR ACTIVITIES IN COMPLIANCE WITH SPECIFIED REQUIREMENTS; CONTINUING TO EXEMPT HOMELESS INDIVIDUALS FROM THE ORDER BUT URGING GOVERNMENT AGENCIES TO PROVIDE THEM SHELTER; REQUIRING ALL BUSINESSES AND RECREATION FACILITIES THAT ARE ALLOWED TO OPERATE TO IMPLEMENT SOCIAL DISTANCING, FACE COVERING, AND CLEANING PROTOCOLS; AND DIRECTING ALL BUSINESSES, FACILITY OPERATORS, AND GOVERNMENTAL AGENCIES TO CONTINUE THE TEMPORARY CLOSURE OF ALL OTHER OPERATIONS NOT ALLOWED UNDER THIS ORDER**

**Order No. HO-COVID19-09**

**DATE OF ORDER: APRIL 29, 2020**

**Please read this Order carefully.  Violation of or failure to comply with this Order is a misdemeanor punishable by fine, imprisonment, or both.  (California Health and Safety Code § 120295.)**

UNDER THE AUTHORITY OF CALIFORNIA HEALTH AND SAFETY CODE SECTIONS 101040 AND 120175, THE HEALTH OFFICER OF THE COUNTY OF CONTRA COSTA ("HEALTH OFFICER") ORDERS:

1.  This Order supersedes the March 31, 2020, Order of the Health Officer directing all individuals to shelter in place ("Prior Order").  This Order amends, clarifies, and extends certain terms of the Prior Order to ensure continued social distancing and limit person-to-person contact to reduce the rate of transmission of Novel Coronavirus Disease 2019 ("COVID-19").  This Order continues to restrict most activity, travel, and governmental and business functions.  But in light of progress achieved in slowing the spread of COVID-19 in the County of Contra Costa (the "County") and neighboring counties, the Order allows a limited number of additional businesses to resume operating.  This initial, measured resumption of those activities is designed to keep the overall volume of person-to-person contact very low to prevent a surge in COVID-19 cases in the County and



• Contra Costa Behavioral Health Services • Contra Costa Emergency Medical Services • Contra Costa Environmental Health & Hazardous Materials Programs •
• Contra Costa Health, Housing & Homeless Services • Contra Costa Health Plan • Contra Costa Public Health • Contra Costa Regional Medical Center & Health Centers •

neighboring counties. The activities allowed by this Order will be assessed on an ongoing basis and may need to be modified if the risk associated with COVID-19 increases in the future. As of the effective date and time of this Order set forth in Section 19 below, all individuals, businesses, and government agencies in the County are required to follow the provisions of this Order.

2. The primary intent of this Order is to ensure that County residents continue to shelter in their places of residence to slow the spread of COVID-19 and mitigate the impact on delivery of critical healthcare services. This Order allows a limited number of additional business activities to resume while the Health Officer continues to assess the transmissibility and clinical severity of COVID-19 and monitors indicators described in Section 11. All provisions of this Order must be interpreted to effectuate this intent. Failure to comply with any of the provisions of this Order constitutes an imminent threat and menace to public health, constitutes a public nuisance, and is punishable by fine, imprisonment, or both.

3. All individuals currently living within the County are ordered to shelter at their place of residence. They may leave their residence only for Essential Activities as defined in Section 16.a and Outdoor Activities as defined in Section 16.m, Essential Governmental Functions as defined in Section 16.d, Essential Travel as defined in Section 16.i, to work for Essential Businesses as defined in Section 16.f, and Outdoor Businesses as defined in Section 16.l, or to perform Minimum Basic Operations for other businesses that must remain temporarily closed, as provided in Section 16.g. For clarity, individuals who do not currently reside in the County must comply with all applicable requirements of the Order when in the County. Individuals experiencing homelessness are exempt from this Section, but are strongly urged to obtain shelter, and governmental and other entities are strongly urged to, as soon as possible, make such shelter available and provide handwashing or hand sanitation facilities to persons who continue experiencing homelessness.

4. When people need to leave their place of residence for the limited purposes allowed in this Order, they must strictly comply with Social Distancing Requirements as defined in Section 16.k, except as expressly provided in this Order, and must wear Face Coverings as provided in Health Officer Order No. HO-COVID19-08 (the "Face Covering Order").

5. All businesses with a facility in the County, except Essential Businesses and Outdoor Businesses, as defined in Section 16, are required to cease all activities at facilities located within the County except Minimum Basic Operations, as defined in Section 16. For clarity, all businesses may continue operations consisting exclusively of owners, personnel, volunteers, or contractors performing activities at their own residences (i.e., working from home). All Essential Businesses are strongly encouraged to remain open. But all businesses are directed to maximize the number of personnel who work from home. Essential Businesses and Outdoor Businesses may only assign those personnel who cannot perform their job duties from home to work outside the home. Outdoor Businesses must conduct all business and transactions involving members of the public outdoors.



6. As a condition of operating under this Order, the operators of all businesses must prepare or update, post, implement, and distribute to their personnel a Social Distancing Protocol for each of their facilities in the County frequented by personnel or members of the public, as specified in Section 16.h. Businesses that include an Essential Business or Outdoor Business component at their facilities alongside other components must, to the extent feasible, scale down their operations to the Essential Business and Outdoor Business components only; provided, however, mixed retail businesses that are otherwise allowed to operate under this Order may continue to stock and sell non-essential products. All businesses allowed to operate under this Order must follow any industry-specific guidance issued by the Health Officer related to COVID-19.

7. All public and private gatherings of any number of people occurring outside a single household or living unit are prohibited, except for the limited purposes expressly permitted in this Order. Nothing in this Order prohibits members of a single household or living unit from engaging in Essential Travel, Essential Activities, or Outdoor Activities together.

8. All travel, including, but not limited to, travel on foot, bicycle, scooter, motorcycle, automobile, or public transit, except Essential Travel, as defined below in Section 16.i, is prohibited. People may use public transit only for purposes of performing Essential Activities and Outdoor Activities, or to travel to and from work for Essential Businesses or Outdoor Businesses, to maintain Essential Governmental Functions, or to perform Minimum Basic Operations at non-essential businesses. Transit agencies and people riding on public transit must comply with Social Distancing Requirements, as defined in Section 16.k, to the greatest extent feasible, and personnel and passengers must wear Face Coverings as required by the Face Covering Order. This Order allows travel into or out of the County only to perform Essential Activities and Outdoor Activities, to operate or perform work for Essential Businesses or Outdoor Businesses, to maintain Essential Governmental Functions, or to perform Minimum Basic Operations at non-essential businesses.

9. This Order is issued based on evidence of continued significant community transmission of COVID-19 within the County and throughout the Bay Area; continued uncertainty regarding the degree of undetected asymptomatic transmission; scientific evidence and best practices regarding the most effective approaches to slow the transmission of communicable diseases generally and COVID-19 specifically; evidence that the age, condition, and health of a significant portion of the population of the County places it at risk for serious health complications, including death, from COVID-19; and further evidence that others, including younger and otherwise healthy people, are also at risk for serious outcomes. Due to the outbreak of the COVID-19 disease in the general public, which is now a pandemic according to the World Health Organization, there is a public health emergency throughout the County. Making the problem worse, some individuals who contract the virus causing the COVID-19 disease have no symptoms or have mild symptoms, which means they may not be aware they carry the virus and are transmitting it to others. Further, evidence shows that the virus can survive for hours to days on surfaces and be indirectly transmitted between individuals. Because even people without symptoms can transmit the infection, and because evidence shows the infection is easily spread, gatherings and other direct or indirect interpersonal interactions can result in preventable transmission of the virus.



10. The collective efforts taken to date regarding this public health emergency have slowed the virus' trajectory, but the emergency and the attendant risk to public health remain significant.  As of April 27, 2020, there are 842 confirmed cases of COVID-19 in the County (up from 34 on March 15, 2020, just before the first shelter-in-place order) as well as at least 7,273 confirmed cases (up from 258 confirmed cases on March 15, 2020) and at least 266 deaths (up from three deaths on March 15, 2020) in the seven Bay Area jurisdictions jointly issuing this Order.  The cumulative number of confirmed cases continues to increase, though the rate of increase has slowed in the days leading up to this Order.  Evidence suggests that the restrictions on mobility and social distancing requirements imposed by the Prior Order (and the March 16, 2020, shelter-in-place order) are slowing the rate of increase in community transmission and confirmed cases by limiting interactions among people, consistent with scientific evidence of the efficacy of similar measures in other parts of the country and world.

11. The local health officers who jointly issued the Prior Order are monitoring several key indicators ("COVID-19 Indicators"), which are among the many factors informing their decisions whether to modify existing shelter-in-place restrictions.  Progress on some of these COVID-19 Indicators—specifically related to hospital utilization and capacity—makes it appropriate, at this time, to ease certain restrictions imposed by the Prior Order to allow individuals to engage in a limited set of additional activities and perform work for a limited set of additional businesses associated with the lower risk of COVID-19 transmission, as set forth in Section 16.l.  But the continued prevalence of the virus that causes COVID-19 requires most activities and business functions to remain restricted, and those activities that are permitted to occur must do so subject to social distancing and other infection control practices identified by the Health Officer.  Progress on the COVID-19 Indicators will be critical to determinations by the local health officers regarding whether the restrictions imposed by this Order may be further modified.  The Health Officer will continually review whether modifications to the Order are justified based on (1) progress on the COVID-19 Indicators, (2) developments in epidemiological and diagnostic methods for tracing, diagnosing, treating, or testing for COVID-19; and (3) scientific understanding of the transmission dynamics and clinical impact of COVID-19.  The COVID-19 Indicators include, but are not limited to, the following:

    a.  The trend of the number of new COVID-19 cases and hospitalizations per day.

    b.  The capacity of hospitals and the health system in the County and region, including acute care beds and Intensive Care Unit beds, to provide care for COVID-19 patients and other patients, including during a surge in COVID-19 cases.

    c.  The supply of personal protective equipment (PPE) available for hospital staff and other healthcare providers and personnel who need PPE to safely respond to and treat COVID-19 patients.

    d.  The ability and capacity to quickly and accurately test persons to determine whether they are COVID-19 positive, especially those in vulnerable populations or high-risk settings or occupations.

    e.  The ability to conduct case investigation and contact tracing for the volume of cases and associated contacts that will continue to occur, isolating confirmed cases and quarantining persons who have had contact with confirmed cases.

12. The scientific evidence shows that at this stage of the emergency, it remains essential to continue to slow virus transmission to help (a) protect the most vulnerable; (b) prevent the health care system from being



overwhelmed; (c) prevent long-term chronic health conditions, such as cardiovascular, kidney, and respiratory damage and loss of limbs from blood clotting; and (d) prevent deaths.  Extension of the Prior Order is necessary to slow the spread of the COVID-19 disease, preserving critical and limited healthcare capacity in the County and advancing toward a point in the public health emergency where transmission can be controlled.  At the same time, since the Prior Order was issued the County has made significant progress in expanding health system capacity and healthcare resources and in slowing community transmission of COVID-19.  In light of progress on these indicators, and subject to continued monitoring and potential public health-based responses, it is appropriate at this time to allow additional businesses to operate in the County.  Outdoor Businesses, by virtue of their operation outdoors, carry a lower risk of transmission than most indoor businesses.  Because Outdoor Businesses, as defined in section 16.l, generally involve only brief and limited person-to-person interactions, they also carry lower risk of transmission than business activities prohibited under the Order, which tend to involve prolonged interactions between individuals in close proximity or in confined spaces where transmission is more likely.  Existing Outdoor Businesses also constitute a relatively small proportion of business activity in the County, and therefore do not substantially increase the volume of interaction between persons in the County when reopened.

13. This Order is issued in accordance with, and incorporates by reference, the March 4, 2020, Proclamation of a State of Emergency issued by Governor Gavin Newsom and the March 10, 2020, Proclamation by the Contra Costa County Board of Supervisors declaring the existence of a local emergency.

14. This Order comes after the release of substantial guidance from the Health Officer, the Centers for Disease Control and Prevention, the California Department of Public Health, and other public health officials throughout the United States and around the world, including the widespread adoption of orders imposing similar social distancing requirements and mobility restrictions to combat the spread and harms of COVID-19. The Health Officer will continue to assess the quickly evolving situation and may modify or extend this Order, or issue additional Orders, related to COVID-19, as changing circumstances dictate.

15. This Order is also issued in light of the March 19, 2020, Order of the State Public Health Officer (the "State Shelter Order"), which set baseline statewide restrictions on non-residential business activities, effective until further notice, as well as the Governor's March 19, 2020 Executive Order N-33-20 directing California residents to follow the State Shelter Order.  The State Shelter Order was complementary to the Prior Order and is complementary to this Order.  This Order adopts in certain respects more stringent restrictions addressing the particular facts and circumstances in this County, which are necessary to control the public health emergency as it is evolving within the County and the Bay Area.  Without this tailored set of restrictions that further reduces the number of interactions between persons, scientific evidence indicates that the public health crisis in the County will worsen to the point at which it may overtake available health care resources within the County and increase the death rate.  Also, this Order enumerates additional restrictions on non-work-related travel not covered by the State Shelter Order; sets forth mandatory Social Distancing Requirements for all individuals in the County when engaged in activities outside their residences; and adds a mechanism to ensure that all businesses with facilities that are allowed to operate under the Order comply with the



Social Distancing Requirements.  Where a conflict exists between this Order and any state public health order related to the COVID-19 pandemic, the most restrictive provision controls.  Consistent with California Health and Safety Code section 131080 and the Health Officer Practice Guide for Communicable Disease Control in California, except where the State Health Officer may issue an order expressly directed at this Order and based on a finding that a provision of this Order constitutes a menace to public health, any more restrictive measures in this Order continue to apply and control in this County.  In addition, to the extent any federal guidelines allow activities that are not allowed by this Order, this Order controls and those activities are not allowed.

16. <u>Definitions and Exemptions</u>.

   a. For the purposes of this Order, individuals may leave their residence only to perform the following "Essential Activities."  But people at high risk of severe illness from COVID-19 and people who are sick are strongly urged to stay in their residence to the extent possible, except as necessary to seek or provide medical care or Essential Governmental Functions.  Essential Activities are:

      i. To engage in activities or perform tasks important to their health and safety, or to the health and safety of their family or household members (including pets), such as, by way of example only and without limitation, obtaining medical supplies or medication, or visiting a health care professional.

      ii. To obtain necessary services or supplies for themselves and their family or household members, or to deliver those services or supplies to others, such as, by way of example only and without limitation, canned food, dry goods, fresh fruits and vegetables, pet supply, fresh meats, fish, and poultry, and any other household consumer products, products needed to work from home, or products necessary to maintain the habitability, sanitation, and operation of residences.

      iii. To engage in outdoor recreation activity, including, by way of example and without limitation, walking, hiking, bicycling, and running, in compliance with Social Distancing Requirements and with the following limitations:

        1. Outdoor recreation activity at parks, beaches, and other open spaces must comply with any restrictions on access and use established by the Health Officer, government, or other entity that manages such area to reduce crowding and risk of transmission of COVID-19.  Such restrictions may include, but are not limited to, restricting the number of entrants, closing the area to vehicular access and parking, or closure to all public access;

        2. Use of outdoor recreational areas and facilities with high-touch equipment or that encourage gathering, including, but not limited to, playgrounds, gym equipment, climbing walls, picnic areas, dog parks, pools, spas, and barbecue areas, is prohibited outside of residences, and all such areas shall be closed to public access including by signage and, as appropriate, by physical barriers;



    3.   Use of shared outdoor facilities for recreational activities outside of residences allowed by this Order, including, but not limited to, golf courses, tennis and pickle ball courts, skate parks, shooting and archery ranges, and athletic fields, must comply with any restrictions on access and use established by the Health Officer, government, or other entity that manages such area to reduce crowding and risk of transmission of COVID-19; and

    4.   Sports or activities that include the use of shared equipment or physical contact between participants may only be engaged in by members of the same household or living unit.

  iv.  To perform work for or access an Essential Business, Outdoor Business, or to otherwise carry out activities specifically permitted in this Order, including Minimum Basic Operations, as defined in this Section.

  v.  To provide necessary care for a family member or pet in another household who has no other source of care.

  vi.  To attend a funeral with no more than 10 individuals present.

  vii.  To move residences.  When moving into or out of the Bay Area region, individuals are strongly urged to quarantine for 14 days.  To quarantine, individuals should follow the guidance of the United States Centers for Disease Control and Prevention.

b.  For the purposes of this Order, individuals may leave their residence to work for, volunteer at, or obtain services at "Healthcare Operations," including, without limitation, hospitals, clinics, COVID-19 testing locations, dentists, pharmacies, blood banks and blood drives, pharmaceutical and biotechnology companies, other healthcare facilities, healthcare suppliers, home healthcare services providers, mental health providers, or any related and/or ancillary healthcare services.  "Healthcare Operations" also includes veterinary care and all healthcare services provided to animals.  This exemption for Healthcare Operations shall be construed broadly to avoid any interference with the delivery of healthcare, broadly defined.  "Healthcare Operations" excludes fitness and exercise gyms and similar facilities.

c.  For the purposes of this Order, individuals may leave their residence to provide any services or perform any work necessary to the operation and maintenance of "Essential Infrastructure," including airports, utilities (including water, sewer, gas, and electrical), oil refining, roads and highways, public transportation, solid waste facilities (including collection, removal, disposal, recycling, and processing facilities), cemeteries, mortuaries, crematoriums, and telecommunications systems (including the provision of essential global, national, and local infrastructure for internet, computing services, business infrastructure, communications, and web-based services).

d.  For the purposes of this Order, all first responders, emergency management personnel, emergency dispatchers, court personnel, and law enforcement personnel, and others who need to perform essential services are categorically exempt from this Order to the extent they are performing those essential services. Further, nothing in this Order shall prohibit any individual from performing or accessing "Essential Governmental Functions," as determined by the governmental entity performing those functions in the County.  Each governmental entity shall identify and designate appropriate personnel, volunteers, or contractors to continue providing and carrying out any Essential Governmental Functions, including the hiring or retention of new personnel or contractors to perform such functions.  Each governmental entity and its contractors must employ all necessary emergency protective measures to prevent, mitigate, respond to, and recover from the COVID-19 pandemic, and all Essential Governmental Functions shall be performed in compliance with Social Distancing Requirements to the greatest extent feasible.

e.  For the purposes of this Order, a "business" includes any for-profit, non-profit, or educational entity, whether a corporate entity, organization, partnership or sole proprietorship, and regardless of the nature of the service, the function it performs, or its corporate or entity structure.

f.  For the purposes of this Order, "Essential Businesses" are:
    i.   Healthcare Operations and businesses that operate, maintain, or repair Essential Infrastructure;
    ii.  Grocery stores, certified farmers' markets, farm and produce stands, supermarkets, food banks, convenience stores, and other establishments engaged in the retail sale of unprepared food, canned food, dry goods, non-alcoholic beverages, fresh fruits and vegetables, pet supply, fresh meats, fish, and poultry, as well as hygienic products and household consumer products necessary for personal hygiene or the habitability, sanitation, or operation of residences.  The businesses included in this subparagraph (ii) include establishments that sell multiple categories of products provided that they sell a significant amount of essential products identified in this subparagraph, such as liquor stores that also sell a significant amount of food.
    iii. Food cultivation, including farming, livestock, and fishing;
    iv.  Businesses that provide food, shelter, and social services, and other necessities of life for economically disadvantaged or otherwise needy individuals;
    v.   Construction, but only pursuant to the Construction Safety Protocols listed in Appendix B-1 or Appendix B-2, whichever is applicable.  Public works projects shall also be subject to Appendix B-1 or Appendix B-1, whichever is applicable, except if other protocols are specified by the Health Officer.  Appendix B-1 and Appendix B-2 are incorporated into this Order by this reference;
    vi.  Newspapers, television, radio, and other media services;



vii.  Gas stations and auto-supply, auto-repair (including, but not limited to, for cars, trucks, motorcycles and motorized scooters), and automotive dealerships, but only for the purpose of providing auto-supply and auto-repair services.  This subparagraph (vii) does not restrict the on-line purchase of automobiles if they are delivered to a residence or Essential Business;

viii.  Bicycle repair and supply shops;

ix.  Banks and related financial institutions;

x.  Service providers that enable real estate transactions (including rentals, leases, and home sales), including, but not limited to, real estate agents, escrow agents, notaries, and title companies, provided that appointments and other residential real estate viewings must only occur virtually or, if a virtual viewing is not feasible, by appointment with no more than two visitors at a time residing within the same household or living unit and one individual showing the unit (except that in person visits are not allowed when the occupant is present in the residence);

xi.  Hardware stores;

xii.  Plumbers, electricians, exterminators, and other service providers who provide services that are necessary to maintaining the habitability, sanitation, or operation of residences and Essential Businesses;

xiii.  Businesses providing mailing and shipping services, including post office boxes;

xiv.  Educational institutions—including public and private K-12 schools, colleges, and universities—for purposes of facilitating distance learning or performing essential functions, or as allowed under subparagraph xxvi, provided that social distancing of six-feet per person is maintained to the greatest extent possible;

xv.  Laundromats, drycleaners, and laundry service providers;

xvi.  Restaurants and other facilities that prepare and serve food, but only for delivery or carry out.  Schools and other entities that typically provide free food services to students or members of the public may continue to do so under this Order on the condition that the food is provided to students or members of the public on a pick-up and take-away basis only.  Schools and other entities that provide food services under this exemption shall not permit the food to be eaten at the site where it is provided, or at any other gathering site;

xvii.  Funeral home providers, mortuaries, cemeteries, and crematoriums, to the extent necessary for the transport, preparation, or processing of bodies or remains;

xviii.  Businesses that supply other Essential Businesses with the support or supplies necessary to operate, but only to the extent that they support or supply these Essential Businesses.  This exemption shall not be used as a basis for engaging in sales to the general public from retail storefronts;

xix.  Businesses that have the primary function of shipping or delivering groceries, food, or other goods directly to residences or businesses.  This exemption shall not be used to allow for manufacturing or assembly of



• Contra Costa Behavioral Health Services • Contra Costa Emergency Medical Services • Contra Costa Environmental Health & Hazardous Materials Programs •
• Contra Costa Health, Housing & Homeless Services • Contra Costa Health Plan • Contra Costa Public Health • Contra Costa Regional Medical Center & Health Centers •

non-essential products or for other functions besides those necessary to the delivery operation;

xx. Airlines, taxis, rental car companies, rideshare services (including shared bicycles and scooters), and other private transportation providers providing transportation services necessary for Essential Activities and other purposes expressly authorized in this Order;

xxi. Home-based care for seniors, adults, children, and pets;

xxii. Residential facilities and shelters for seniors, adults, and children;

xxiii. Professional services, such as legal, notary, or accounting services, when necessary to assist in compliance with non-elective, legally required activities or in relation to death or incapacity;

xxiv. Services to assist individuals in finding employment with Essential Businesses;

xxv. Moving services that facilitate residential or commercial moves that are allowed under this Order; and

xxvi. Childcare establishments, summer camps, and other educational or recreational institutions or programs providing care or supervision for children of all ages that enable owners, employees, volunteers, and contractors for Essential Businesses, Essential Governmental Functions, Outdoor Businesses, or Minimum Basic Operations to work as allowed under this Order.  To the extent possible, these operations must comply with the following conditions:

1. They must be carried out in stable groups of 12 or fewer children ("stable" means that the same 12 or fewer children are in the same group each day).
2. Children shall not change from one group to another.
3. If more than one group of children is at one facility, each group shall be in a separate room.  Groups shall not mix with each other.
4. Providers or educators shall remain solely with one group of children.

The Health Officer will carefully monitor the changing public health situation as well as any changes to the State Shelter Order.  In the event that the State relaxes restrictions on childcare and related institutions and programs, the Health Officer will consider whether to similarly relax the restrictions imposed by this Order.

g. For the purposes of this Order, "Minimum Basic Operations" means the following activities for businesses, provided that owners, personnel, and contractors comply with Social Distancing Requirements as defined this Section, to the extent possible, while carrying out such operations:

i. The minimum necessary activities to maintain and protect the value of the business's inventory and facilities; ensure security, safety, and sanitation; process payroll and employee benefits; provide for the delivery of existing inventory directly to residences or businesses; and related functions.  For clarity, this section does not permit businesses to provide curbside pickup to customers.



    ii.   The minimum necessary activities to facilitate owners, personnel, and contractors of the business being able to continue to work remotely from their residences, and to ensure that the business can deliver its service remotely.

h.   For the purposes of this Order, all businesses that are operating at facilities in the County visited or used by the public or personnel must, as a condition of such operation, prepare and post a "Social Distancing Protocol" for each of these facilities; provided, however, that construction activities shall instead comply with the Construction Project Safety Protocols set forth in Appendix B-1 or Appendix B-2, whichever is applicable, and not the Social Distancing Protocol. The Social Distancing Protocol must be substantially in the form attached to this Order as Appendix A, incorporated into this Order by reference, and it must be updated from prior versions to address new requirements listed in this Order or in related guidance or directives from the Health Officer. The Social Distancing Protocol must be posted at or near the entrance of the relevant facility,  and shall be easily viewable by the public and personnel.  A copy of the Social Distancing Protocol must also be provided to each person performing work at the facility. All businesses subject to this paragraph shall implement the Social Distancing Protocol and provide evidence of its implementation to any authority enforcing this Order upon demand.  The Social Distancing Protocol must explain how the business is achieving the following, as applicable:

    i.   Limiting the number of people who can enter into the facility at any one time to ensure that people in the facility can easily maintain a minimum six-foot distance from one another at all times, except as required to complete Essential Business activity;

    ii.   Requiring face coverings to be worn by persons entering the facility in compliance with the Face Covering Order;

    iii.   Where lines may form at a facility, marking six-foot increments at a minimum, establishing where individuals should stand to maintain adequate social distancing;

    iv.   Providing hand sanitizer, soap and water, or effective disinfectant at or near the entrance of the facility and in other appropriate areas for use by the public and personnel, and in locations where there is high-frequency employee interaction with members of the public (e.g. cashiers);

    v.   Providing for contactless payment systems or, if not feasible to do so, the providing for disinfecting all payment portals, pens, and styluses after each use;

    vi.   Regularly disinfecting other high-touch surfaces;

    vii.   Posting a sign at the entrance of the facility informing all personnel and customers that they should: avoid entering the facility if they have any COVID-19 symptoms; maintain a minimum six-foot distance from one another; sneeze and cough into one's elbow; not shake hands or engage in any unnecessary physical contact; and

    viii.   Any additional social distancing measures being implemented (see the Centers for Disease Control and Prevention's guidance at:



https://www.cdc.gov/coronavirus/2019-ncov/community/guidance-business-response.html).

i. For the purposes of this Order, "Essential Travel" means travel for any of the following purposes:
   i. Travel related to the provision of or access to Essential Activities, Essential Governmental Functions, Essential Businesses, Minimum Basic Operations, Outdoor Activities, and Outdoor Businesses.
   ii. Travel to care for any elderly, minors, dependents, or persons with disabilities.
   iii. Travel to or from educational institutions for purposes of receiving materials for distance learning, for receiving meals, and any other related services.
   iv. Travel to return to a place of residence from outside the County.
   v. Travel required by law enforcement or court order.
   vi. Travel required for non-residents to return to their place of residence outside the County. Individuals are strongly encouraged to verify that their transportation out of the County remains available and functional prior to commencing such travel.
   vii. Travel to manage after-death arrangements and burial.
   viii. Travel to arrange for shelter or avoid homelessness.
   ix. Travel to avoid domestic violence or child abuse.
   x. Travel for parental custody arrangements.
   xi. Travel to a place to temporarily reside in a residence or other facility to avoid potentially exposing others to COVID-19, such as a hotel or other facility provided by a governmental authority for such purposes.

j. For purposes of this Order, "residences" include hotels, motels, shared rental units and similar facilities. Residences also include living structures and outdoor spaces associated with those living structures, such as patios, porches, backyards, and front yards that are only accessible to a single family or household unit.

k. For purposes of this Order, "Social Distancing Requirements" means:
   i. Maintaining at least six-foot social distancing from individuals who are not part of the same household or living unit;
   ii. Frequently washing hands with soap and water for at least 20 seconds, or using hand sanitizer that is recognized by the Centers for Disease Control and Prevention as effective in combatting COVID-19;
   iii. Covering coughs and sneezes with a tissue or fabric or, if not possible, into the sleeve or elbow (but not into hands);
   iv. Wearing a face covering when out in public, consistent with the orders or guidance of the Health Officer; and
   v. Avoiding all social interaction outside the household when sick with a fever, cough, or other COVID-19 symptoms.

All individuals must strictly comply with Social Distancing Requirements, except to the limited extent necessary to provide care (including childcare, adult or senior care, care to individuals



with special needs, and patient care); as necessary to carry out the work of Essential Businesses, Essential Governmental Functions, or provide for Minimum Basic Operations; or as otherwise expressly provided in this Order.  Outdoor Activities and Outdoor Businesses must strictly adhere to these Social Distancing Requirements.

    l.   For purposes of this Order, "Outdoor Businesses" means:

        i.   The following businesses that normally operated primarily outdoors prior to March 16, 2020, and where there is the ability to fully maintain social distancing of at least six feet between all persons:

            1.   Businesses primarily operated outdoors, such as wholesale and retail plant nurseries, agricultural operations, and garden centers.

            2.   Service providers that primarily provide outdoor services, such as landscaping and gardening services, and environmental site remediation services.

        For clarity, "Outdoor Businesses" do not include outdoor restaurants, cafes, or bars.

    m.  For purposes of this Order, "Outdoor Activities" means:

        i.   To obtain goods, services, or supplies from, or perform work for, an Outdoor Business.

        ii.   To engage in outdoor recreation as permitted in Section 16.a.

17.  Government agencies and other entities operating shelters and other facilities that house or provide meals or other necessities of life for individuals experiencing homelessness must take appropriate steps to help ensure compliance with Social Distancing Requirements, including adequate provision of hand sanitizer.  Also, individuals experiencing homelessness who are unsheltered and living in encampments should, to the maximum extent feasible, abide by 12 foot by 12 foot distancing for the placement of tents, and government agencies should provide restroom and hand washing facilities for individuals in such encampments as set forth in Centers for Disease Control and Prevention Interim Guidance Responding to Coronavirus 2019 (COVID-19) Among People Experiencing Unsheltered Homelessness (https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/unsheltered-homelessness.html).

18.  Pursuant to Government Code sections 26602 and 41601 and Health and Safety Code section 101029, the Health Officer requests that the Sheriff and all chiefs of police in the County ensure compliance with and enforce this Order.  The violation of any provision of this Order constitutes an imminent threat and menace to public health, constitutes a public nuisance, and is punishable by fine, imprisonment, or both.

19.  This Order shall become effective at 11:59 p.m. on May 3, 2020, and will continue to be in effect until 11:59 p.m. on May 31, 2020, or until it is extended, rescinded, superseded, or amended in writing by the Health Officer.



20. Copies of this Order shall promptly be: (1) made available at the Office of the Director of Contra Costa Health Services, 1220 Morello Avenue, Suite 200, Martinez, CA 94553; (2) posted on the Contra Costa Health Services website (https://www.cchealth.org); and (3) provided to any member of the public requesting a copy of this Order.  Questions or comments regarding this Order may be directed to Contra Costa Health Services at (844) 729-8410.

21. If any provision of this Order or its application to any person or circumstance is held to be invalid, the remainder of the Order, including the application of such part or provision to other persons or circumstances, shall not be affected and shall continue in full force and effect.  To this end, the provisions of this Order are severable.

**IT IS SO ORDERED:**

_____                Dated:  April 29, 2020

Chris Farnitano, M.D.

Health Officer of the County of Contra Costa

Attachments:        Appendix A – Social Distancing Protocol

                    Appendix B-1 – Small Construction Project Safety Protocol

                    Appendix B-2 – Large Construction Project Safety Protocol

# EXHIBIT 4

**COUNTY OF LOS ANGELES DEPARTMENT OF PUBLIC HEALTH**
**ORDER OF THE HEALTH OFFICER**

## SAFER AT HOME ORDER FOR CONTROL OF COVID-19

# CONTINUATION OF SAFER AT HOME ORDER THAT BEGINS TO MOVE THE COUNTY OF LOS ANGELES INTO STAGE 2 OF COUNTY'S ROADMAP TO RECOVERY
### Revised Order Issued: May 13, 2020

**Please read this Order carefully. Violation of or failure to comply with this Order is a crime punishable by fine, imprisonment, or both. (California Health and Safety Code §120295; Los Angeles County Code § 11.02.080.)**

**SUMMARY OF THE ORDER:** This County of Los Angeles Health Officer Order (Order) amends and supersedes all prior orders and addenda of the County of Los Angeles Health Officer (Health Officer) issued on March 16, 19, 21, 27, 31, April 10, May 3 and 8, 2020 (Prior Orders). This Order is issued to comply with State Executive Order N-33-20 issued by Governor Gavin Newsom, wherein the State Public Health Officer ordered all individuals living in the State of California to stay home or at their place of residence, except as needed to maintain continuity of operations of the federal critical infrastructure sectors, as well as subsequent State Executive Orders including but not limited to N-60-20.

Existing community transmission of the Novel Coronavirus Disease (COVID-19) in Los Angeles County (County) continues to present a substantial and significant risk of harm to residents' health. Evidence suggests that the restrictions and requirements imposed by the Health Officer's Prior Orders have slowed the rate of increase of COVID-19 community transmission and related hospitalizations by severely limiting person-to-person interactions. This Order is a limited and measured step to partially move the County of Los Angeles into Stage 2 of its *Roadmap To Recovery: A Phased Approach to Reopening Safely in Los Angeles County*, while keeping a low incidence of person-to-person contact and ensuring continued Social (Physical) Distancing and adherence to other infection control protocols.

This Order continues to require that specific higher-risk businesses remain closed. This Order allows Lower-Risk Retail Businesses to reopen for curbside, doorside, or other outdoor or outside pickup, or via delivery only. As a precondition to reopening, these Lower-Risk Retail Businesses must implement the County's Reopening Protocol for Retail Establishments prior to reopening. This Order, further, conditionally reopens the public beaches for certain types of active recreation, and conditionally reopens additional recreational opportunities.

This Order allows persons to engage in Essential Activities, as defined by the Order, but requires persons to at all times, practice Social (Physical) Distancing while out in public, to lower the risks of person-to-person contact for themselves and others.

This Order is effective within the County of Los Angeles Public Health Jurisdiction, defined as all unincorporated areas and cities within the County of Los Angeles with the exception of the cities of Long Beach and Pasadena. This Order is effective immediately and will continue until further notice.

Safer at Home Order for Control of COVID-19:
Continuation of Safer at Home Order that Begins to Move the County of Los Angeles
Into Stage 2 of County's Roadmap to Recovery

Page 1 of 13

**COUNTY OF LOS ANGELES DEPARTMENT OF PUBLIC HEALTH**
**ORDER OF THE HEALTH OFFICER**



### UNDER THE AUTHORITY OF CALIFORNIA HEALTH AND
### SAFETY CODE SECTIONS 101040, 101085, AND 120175,
### THE COUNTY OF LOS ANGELES HEALTH OFFICER ORDERS:

1. This Order supersedes the Health Officer's Prior Orders. In light of the progress achieved in slowing the spread of COVID-19 in the County, this Order allows the conditional reopening of specific retail and other Lower-Risk Businesses. This limited and measured step is intended to move the County into Stage 2 of its *Roadmap To Recovery: A Phased Approach to Reopening Safely in Los Angeles County*, while keeping a low incidence of person-to-person contact and ensuring continued Social (Physical) Distancing and adherence to other infection control protocols as provided below. The Health Officer will assess the activities allowed by this Order on an ongoing basis and determine whether this Order needs to be modified if the public health risk associated with COVID-19 increases in the future.

2. Although this Order permits some activities and business operations to resume, physical distancing remains the best tool available for people to avoid being exposed to the virus. As such, this Order's intent is to continue to ensure that County residents remain in their residences as much as possible, to limit close contact with others outside their household in both indoor and outdoor spaces. All persons who can telework or work from home should continue to do so as much as possible during this pandemic. Sustained Social (Physical) Distancing and infection control measures will continue slowing the spread of COVID-19 and diminishing its impact on the delivery of critical healthcare services. All provisions of this Order must be interpreted to effectuate that intent. Failure to comply with any of the Order's provisions constitutes an imminent threat and menace to public health, and a public nuisance, and is punishable by fine, imprisonment or both.

3. All persons living within the County of Los Angeles Public Health Jurisdiction are to remain in their residences, except that they may leave for the following purposes: for Essential Activities, as defined in Paragraph 15; for Essential Government Functions, as defined in Paragraph 5; to work at, provide services to, or obtain treatment from Healthcare Operations, as defined in Paragraph 16; to work at or visit Essential Businesses, as defined in Paragraph 18; to work at or provide services to Essential Infrastructure, as defined in Paragraph 17; to work at or visit Lower-Risk Businesses, as defined in Paragraph 9; or to perform Minimum Basic Operations, as defined in Paragraph 21, for businesses whose on-site operations must remain temporarily closed. Persons experiencing homelessness are exempt from this requirement but are strongly urged to obtain shelter and abide by Social (Physical) Distancing requirements.

   a) Nothing in this Order prohibits members of a single household or living unit from engaging in permitted activities together. But gatherings of people who are *not* part of a single household or living unit are prohibited within the County of Los Angeles Public Health Jurisdiction, except for the limited purposes expressly permitted by this Order.

   b) People leaving their residences for the limited purposes allowed by this Order must strictly comply with the Social (Physical) Distancing requirements stated in

Safer at Home Order for Control of COVID-19:
Continuation of Safer at Home Order that Begins to Move the County of Los Angeles
Into Stage 2 of County's Roadmap to Recovery

Page 2 of 13

**COUNTY OF LOS ANGELES DEPARTMENT OF PUBLIC HEALTH**
**ORDER OF THE HEALTH OFFICER**



this Order or specified in guidance or protocols established by the County of Los Angeles Department of Public Health; this includes wearing a cloth face covering whenever there is or can be contact with others who are non-household members in both public and private places.

c) In the event of a conflict between the Social (Physical) Distancing requirements stated in this Order and Department of Public Health guidance or protocols, the more specific requirements shall control.

4. All people residing within the County of Los Angeles Public Health Jurisdiction who are age 65 or older and all people of any age who have active or unstable pre-existing health conditions, should remain in their residences. People in these categories should leave their residences only when necessary to seek medical care or obtain food or other necessities. Public Health strongly recommends that employers offer telework or other accommodations to persons who are age 65 or older and all people of any age who have an active or unstable pre-existing health conditions.

5. All government agencies working in the course and scope of their public service employment are Essential Government Functions.

a) All government employees are essential, including but not limited to, health care providers and emergency responders including employees who serve in the following areas: law enforcement; emergency services and management; first responder; fire; search and rescue; juvenile detention; corrections; healthcare services and operations; public health; laboratory or medical testing; mental health; community health; public works; executive management employees serving in these fields; all employees assigned to serve in or support the foregoing fields; and all employees whose services are otherwise needed to assist in a declared emergency.

b) While all government employees are essential, the employees identified here, and others called to serve in their Disaster Service Worker capacity, must be available to serve the public or assist in response or continuity of operations efforts during this health crisis to the maximum extent allowed under the law.

c) This Order does not, in any way, restrict (a) first responder access to the site(s) named in this Order during an emergency or (b) local, state or federal officers, investigators, or medical or law enforcement personnel from carrying out their lawful duties at the site(s) named in this Order.

d) All persons who perform Essential Governmental Functions are categorically exempt from this Order while performing such governmental functions or services. Each governmental entity shall identify and designate appropriate employees or contractors to continue providing and carrying out any Essential Governmental Functions. All Essential Governmental Functions should be performed in compliance with Social (Physical) Distancing, to the extent possible.

6. This Order does not supersede any stricter limitation imposed by a local public entity within the County of Los Angeles Public Health Jurisdiction.

Safer at Home Order for Control of COVID-19:
Continuation of Safer at Home Order that Begins to Move the County of Los Angeles
Into Stage 2 of County's Roadmap to Recovery

Page 3 of 13

**COUNTY OF LOS ANGELES DEPARTMENT OF PUBLIC HEALTH**
**ORDER OF THE HEALTH OFFICER**



7. The Health Officer orders the continued closure of the following types of higher-risk businesses, recreational sites, commercial properties, and activities, where more frequent and prolonged person-to-person contacts are likely to occur:

   a) Bars and nightclubs that do not serve food and the portions of wineries, breweries and taprooms that provide tastings;

   b) Gyms and fitness centers;

   c) Movie theaters, drive-in theaters, live performance theaters, concert halls and venues, stadiums, arenas, gaming facilities, theme parks, and festivals;

   d) Bowling alleys and arcades;

   e) Public piers, public beach parking lots, and bicycle paths that traverse the sand;

   f) Personal grooming establishments (barbers, hair salons, nail salons);

   g) Massage or body art establishments;

   h) Indoor and outdoor playgrounds for children, except those located within a childcare center;

   i) Community centers, including public pools, and pools, hot tubs, and saunas that are in a multi-unit residence or part of a Homeowners' Association;

   j) Indoor and outdoor flea markets and swap meets;

   k) Indoor museums, indoor or outdoor children museums, gallery spaces, zoos, and libraries;

   l) Indoor malls and indoor shopping centers, including all stores and vendors located therein, regardless of whether they are an Essential or a Lower-Risk Business. As an exception, Essential or Lower-Risk Retail Businesses that are part of an Indoor Mall or Shopping Center, but that are normally accessible by the public from the exterior of the Indoor Mall or Shopping Center may operate. For purposes of this Order, Indoor Mall or Shopping Center is defined as: A building with seven (7) or more sales or retail establishments with adjoining indoor space.

   m) All events and gatherings, unless specifically allowed by this Order.

8. All Essential Businesses may remain open to the public and conduct normal business operations, provided that they implement and maintain the Social (Physical) Distancing Protocol defined in Paragraph 20 and attached to this Order as Appendix A. An Essential Business' owner, manager, or operator must prepare and post a Social (Physical) Distancing Protocol for each facility or office located within the County of Los Angeles Public Health Jurisdiction and must ensure that the Essential Business meets all other requirements of the Social (Physical) Distancing Protocol.

Safer at Home Order for Control of COVID-19:
Continuation of Safer at Home Order that Begins to Move the County of Los Angeles
Into Stage 2 of County's Roadmap to Recovery

Page 4 of 13

**COUNTY OF LOS ANGELES DEPARTMENT OF PUBLIC HEALTH**
**ORDER OF THE HEALTH OFFICER**

9. Lower-Risk Businesses are businesses not specified in Paragraph 7 of this Order, and not defined as an Essential Business in Paragraph 18 of this Order. In general, Lower-Risk Businesses may not reopen at this time. There are, however, two categories of Lower-Risk Businesses that may reopen under this Order: (1) retailers that are not located within an Indoor Mall or Shopping Center ("Lower-Risk Retail Businesses"), and (2) manufacturing and logistics sector businesses that supply Lower-Risk Retail Businesses. These two categories of Lower-Risk Businesses may reopen subject to the following conditions:

   a) All Lower-Risk Retail Businesses that sell goods and services to the public may only provide these goods and services to the public via curbside, doorside, or other outdoor or outside pickup, or via delivery. Members of the public are not permitted inside a retail Lower-Risk Retail Business.

   b) For any Lower-Risk Retail Business that sells goods and services, the owner, manager, or operator must, prior to reopening, prepare, implement and post the required Los Angeles County Department of Public Health Reopening Protocol for Retail Establishments, attached to this Order as Appendix B.

   c) For any non-retail Lower-Risk Business that is a manufacturing and logistics sector business that supplies Lower-Risk Retail Businesses, the owner, manager, or operator must, prior to reopening, prepare, implement and post the required Los Angeles County Department of Public Health Reopening Protocol, applicable to the business type or location, attached to this Order as Appendix C.

## REASONS FOR THE ORDER

10. This Order is based upon the following determinations: evidence of continued and significant community transmission of COVID-19 within the County; continued uncertainty regarding the degree of undetected asymptomatic transmission; scientific evidence and best practices regarding the most effective approaches to slow the transmission of communicable diseases generally and COVID-19 specifically; evidence that a significant portion of the County population is at risk for serious health complications, including hospitalizations and death from COVID-19, due to age or pre-existing health conditions; and further evidence that other County residents, including younger and otherwise healthy people, are also at risk for serious negative health outcomes and for transmitting the virus to others. The Order's intent is to protect the public from the avoidable risk of serious illness and death resulting from the spread of COVID-19.

11. Existing community transmission of COVID-19 in Los Angeles County continues to present a substantial and significant risk of harm to residents' health. There is still no vaccine available yet to protect against COVID-19, and no treatment for it. As of May 13, 2020, there have been at least 34,428 cases of COVID-19 and 1,654 deaths reported in Los Angeles County. There remains a strong likelihood of a significant and increasing number of cases of community transmission. Making the community transmission problem worse, some individuals who contract the virus causing COVID-19 have no symptoms or have only mild symptoms, and so are unaware that they carry the virus and are transmitting it to others. Further, evidence shows that the virus can survive for hours or even days on surfaces and can be indirectly transmitted

Safer at Home Order for Control of COVID-19:                                    Page 5 of 13
Continuation of Safer at Home Order that Begins to Move the County of Los Angeles
Into Stage 2 of County's Roadmap to Recovery

between individuals. Because even people without symptoms can transmit the virus, and because evidence shows the infection is easily spread, preventing, limiting, and placing conditions on various types of gatherings and other direct and indirect interpersonal interactions have been proven to reduce the risk of transmitting the virus.

12. Evidence suggests that the restrictions and requirements imposed by Prior Orders slowed the rate of increase in community transmission and hospitalizations by limiting interactions among people, consistent with the efficacy of similar measures in other parts of the country and world. Although the hospitals within the County are seeing increased numbers of COVID-19 patients, including patients with severe illness, the hospitals have not become overwhelmed or exceeded capacity. However, because there is not yet a vaccine or proven therapeutic drug, the public health emergency and attendant risks to the public's health by COVID-19 still predominate.

13. In line with the State Public Health Officer, the Health Officer is monitoring several key indicators (COVID-19 Indicators) within the County. Progress on some of these COVID-19 Indicators – specifically related to hospital utilization and capacity – makes it appropriate, at this time, to ease certain restrictions imposed by the Prior Orders. But the prevalence of the virus that causes COVID-19 requires other restrictions to continue. Activities and business operations that are permitted must be conducted in accordance with the required Social (Physical) Distancing, reopening protocols, and other infection control protocols ordered by the Health Officer.

14. The Health Officer will continue monitoring COVID-19 Indicators to determine when the County is ready to move to Stage Three of its Roadmap to Recovery. Those Indicators include, but are not limited to:
   a) The trend of the number of new COVID-19 cases, hospitalization rates, and death rates.

   b) The capacity of hospitals and the healthcare system in the County, including acute care beds, Intensive Care Unit beds, and ventilators to provide care for existing COVID-19 patients and other patients, and capacity to surge with an increase of COVID-19 cases.

   c) The supply of personal protective equipment (PPE) available for hospital staff, nursing home staff and other healthcare providers and personnel who need PPE to safely respond to and treat COVID-19 patients and other patients.

   d) The ability and capacity to quickly and accurately test persons to determine whether individuals are COVID-19 positive, especially those in vulnerable populations or high-risk settings or occupations, and to identify and assess outbreaks.

   e) The ability to conduct case investigation and contact tracing for the volume of future cases and associated contacts, isolating confirmed cases and quarantining persons who have had contact with confirmed cases.

Safer at Home Order for Control of COVID-19:
Continuation of Safer at Home Order that Begins to Move the County of Los Angeles
Into Stage 2 of County's Roadmap to Recovery

Page 6 of 13

**COUNTY OF LOS ANGELES DEPARTMENT OF PUBLIC HEALTH**
**ORDER OF THE HEALTH OFFICER**

**COUNTY OF LOS ANGELES**
**Public Health**

## DEFINITIONS AND EXEMPTIONS

15. For purposes of this Order, individuals may leave their home residence to perform the following Essential Activities:

   a) To engage in activities or perform tasks important to their health and safety, or to the health and safety of their family or household members (including pets), such as, visiting a health or veterinary care professional or obtaining medical supplies or medication;

   b) To obtain necessary services and supplies for their family or household members, or to deliver the same, such as, obtaining grocery items or necessary supplies from Essential Businesses for one's household or for delivery to others;

   c) To perform work for, to access an Essential Business or Lower-Risk Business, or to carry out Minimum Basic Operations for businesses that are closed or operating remotely.

   d) To obtain or access services from Essential Governmental Functions, such as, access to court, social and administrative services, or complying with an order of law enforcement or court;

   e) To care for minors, the elderly, dependents, persons with disabilities, or other vulnerable persons;

   f) To obtain in-person behavioral health or substance use disorder support in therapeutic small group meetings, such as Alcoholics Anonymous or Narcotics Anonymous, provided that the gathering is limited to 10 people or fewer and Social (Physical) Distancing is practiced.

   g) Staff of organizations or associations, including faith-based organizations, may gather in a single space for the sole purpose of preparing and facilitating live-stream or other virtual communications with their members, including worship services, provided that the staff gathering is limited to 10 people or fewer and the Social (Physical) Distancing Protocol provide in Paragraph 20 and attached to this Order as Appendix A is observed.

   h) Engaging in outdoor recreation activity, in compliance with Social (Physical) Distancing requirements and subject to the following limitations:

      i. Outdoor recreation activity at parks, trails, and beaches, and other open spaces must comply with any access or use restrictions established by the Health Officer, government, or other entity that manages the area to reduce crowding and the risk of COVID-19 transmission.

      ii. Use of shared outdoor facilities for recreational activities, including but not limited to golf courses, tennis and pickleball courts, shooting and archery ranges, equestrian centers, model airplane areas, community gardens, and bike parks, must comply with any access or use restrictions established by the Health Officer, government, or other entity that manages the area to reduce crowding and the risk of COVID-19 transmission.

Safer at Home Order for Control of COVID-19:
Continuation of Safer at Home Order that Begins to Move the County of Los Angeles
Into Stage 2 of County's Roadmap to Recovery

Page 7 of 13

    iii. Local public entities may elect to temporarily close certain streets or areas to automobile traffic, to allow for increased space for persons to engage in recreational activity permitted by and in compliance with Social (Physical) Distancing requirements specified in this Order.

16. Individuals may leave their residence to work for, volunteer at, or obtain services at Healthcare Operations: hospitals, clinics, laboratories, dentists, optometrists, pharmacies, physical therapists, rehabilitation and physical wellness programs, chiropractors, pharmaceutical and biotechnology companies, other licensed healthcare facilities, healthcare suppliers, home healthcare service providers, mental or behavioral health providers, alcohol and drug treatment providers, cannabis dispensaries with a medicinal cannabis license and all other required state and local licenses, medical or scientific research companies, or any related and/or ancillary healthcare services, manufacturers, distributors and servicers of medical devices, diagnostics, and equipment, veterinary care, and other animal healthcare. This exemption shall be construed to avoid any impact to the delivery of healthcare, broadly defined. Healthcare Operations does not include fitness and exercise gyms. In working for, volunteering at, or obtaining services from Healthcare Operations, individuals must comply with the specific Social (Physical) Distancing requirements and infection control guidance for that clinical or non-clinical setting.

17. Individuals may leave their residence to provide any service or perform any work necessary to the operation and maintenance of Essential Infrastructure, which is defined as, public health operations, public works construction, airport operations, port operations, food supply, water, sewer, gas, electrical, oil extraction and refining, roads and highways, public transportation, solid waste collection, removal and processing, flood control and watershed protection, cemeteries, mortuaries, crematoriums, and internet and telecommunications systems (including the provision of essential global, national, local infrastructure for computing services, business infrastructure, communications, and web-based services), and manufacturing and distribution companies deemed essential as part of the Essential Infrastructure supply chain, provided that they carry out those services or that work. In providing these services or performing this work, individuals must comply with Social (Physical) Distancing requirements to the extent practicable.

18. For purposes of this Order, Essential Businesses are:
    a) Grocery stores, certified farmers' markets, farm and produce stands, supermarkets, food banks, convenience stores, warehouse stores, and other establishments engaged in the retail sale of canned food, dry goods, fresh fruit and vegetables, pet supply, water, fresh meats, fish, and poultry, and any other household consumer products (such as cleaning or personal care products). This includes stores that sell groceries and other non-grocery products, such as products necessary to maintaining the safety, sanitation, and essential operation of residences. This does not include businesses that sell only prepackaged non-potentially hazardous food which is incidental to the primary retail business;
    b) Food processors, confectioners, food packagers, food testing labs that are not open to the public, and food cultivation, including farming, livestock, and fishing;

Safer at Home Order for Control of COVID-19:
Continuation of Safer at Home Order that Begins to Move the County of Los Angeles
Into Stage 2 of County's Roadmap to Recovery

Page 8 of 13

c) Organizations and businesses that provide food, shelter, social services, and other necessities of life for economically disadvantaged or otherwise needy individuals (including gang prevention and intervention, domestic violence, and homeless service agencies);

d) Newspapers, television news, radio, magazine, podcast and journalism activities. This includes taped, digitally recorded or online-streamed content of any sort that is produced by a single individual or household in a residence without the physical presence of individuals other than the single individual or members of the household.

e) Gas stations, auto-supply, mobile auto repair operations, auto repair shops (including, without limitation, auto repair shops adjacent to or otherwise in connection with a retail or used auto dealership), and bicycle repair shops and related facilities;

f) Banks, credit unions, financial institutions and insurance companies;

g) Hardware stores, nurseries; building supply stores;

h) Plumbers, electricians, exterminators, custodial/janitorial workers, handyman services, funeral homes and morticians, moving services, HVAC installers, carpenters, vegetation services, tree maintenance, landscapers, gardeners, property managers, private security personnel and other service providers who provide services to maintain the safety, sanitation, and essential operation to properties and other Essential Businesses;

i) Businesses providing mailing and shipping services, including post office boxes;

j) Educational institutions (including public and private K-12 schools, colleges, and universities) for purposes of facilitating distance learning, providing meals for pick-up, or performing Minimum Basic Operations, provided that Social (Physical) Distancing is practiced;

k) Laundromats, dry cleaners, and laundry service providers;

l) Restaurants and other food facilities that prepare and serve food, but only for delivery, drive thru or carry out. Indoor and outdoor table dining is not permitted. Cafeterias, commissaries, and restaurants located within hospitals, nursing homes, or other licensed health care facilities may provide dine-in service, as long as Social (Physical) Distancing is practiced;

m) Businesses that supply office or computer products needed by people who work from home;

n) Businesses that supply other Essential Businesses with the support or supplies necessary to operate;

o) Non-manufacturing, transportation or distribution businesses that ship, truck, transport, or provide logistical support to deliver groceries, food, goods or services directly to residences, Essential Businesses, Healthcare Operations, and Essential Infrastructure. This exemption shall not be used as a basis for engaging in sales to the general public from retail storefronts;

**COUNTY OF LOS ANGELES DEPARTMENT OF PUBLIC HEALTH**
**ORDER OF THE HEALTH OFFICER**



p) Airlines, taxis, ride sharing services and other private transportation providers providing transportation services necessary for activities of daily living and other purposes expressly authorized in this Order;

q) Businesses that manufacture parts and provide necessary service for Essential Infrastructure;

r) Home-based care for seniors, adults, disabled persons, or children;

s) Residential facilities and shelters for homeless residents, disabled persons, seniors, adults, children and animals;

t) Professional services, such as legal, payroll or accounting services, when necessary to assist in compliance with legally mandated activities, and the permitting, inspection, construction, transfer and recording of ownership of housing, including residential and commercial real estate and anything incidental thereto, provided that appointments and other residential viewings must only occur virtually or, if a virtual viewing is not feasible, by appointment with no more than two visitors at a time residing within the same household or living unit and one individual showing the unit (except that in-person visits are not allowed when the occupant is still residing in the residence);

u) Childcare facilities providing services that enable people to work as permitted in this Order. To the extent possible, childcare facilities must operate under the following conditions: (1) Childcare must be carried out in stable groups of 10 or fewer ("stable" means the same ten (10) or fewer children are in the same group each day); (2) Children shall not change from one group to another; (3) If more than one group of children is cared for at one facility, each group shall be in a separate room. Groups shall not mix with each other; (4) Childcare providers shall remain solely with one group of children;

v) Hotels, motels, shared rental units and similar facilities;

w) Construction, which includes the operation, inspection, and maintenance of construction sites and construction projects for construction of commercial, office and institutional buildings, residential and housing construction; and

x) Manufacturers and retailers of fabric or cloth that is made into personal protective equipment, such as, face coverings.

19. For purposes of this Order, "Social (Physical) Distancing" means: (1) Maintaining at least six (6)-feet of physical distance from individuals who are not members of the same household; (2) Frequently washing hands with soap and water for at least 20 seconds, or using hand sanitizer that contains at least 60% alcohol; (3) Wearing a cloth face-covering when in contact with others who do not live in the same household or living unit; and (4) Avoiding all physical interaction outside the household when sick with a fever or cough, except for necessary medical care.

Safer at Home Order for Control of COVID-19:
Continuation of Safer at Home Order that Begins to Move the County of Los Angeles
Into Stage 2 of County's Roadmap to Recovery

Page 10 of 13

20. For purposes of this Order, the "Social (Physical) Distancing Protocol" that must be implemented and posted must demonstrate how the following infection control measures are being implemented and achieved, as applicable:
   a) Limiting the number of people who may enter into the facility at any one time to ensure that people in the facility can easily maintain a minimum six (6) foot physical distance from others, at all times, except as required to complete a business activity or transaction. Members of a single household or living unit may stand or move together but must be separated from others by a physical distance of at least six (6) feet.
   b) Where lines may form at a facility, marking six (6) foot increments at a minimum, establishing where individuals should stand to maintain adequate Social (Physical) Distancing, whether inside or outside the facility.
   c) Providing hand sanitizer, soap and water, or effective disinfectant at or near the entrance of the facility and in other appropriate areas for use by the public and employees, and in locations where there is high-frequency employee interaction with members of the public (e.g. cashiers). Restrooms normally open to the public shall remain open to the public.
   d) Posting a sign in a conspicuous place at all public entries that instructs the public not to enter if they are experiencing symptoms of respiratory illness, including fever or cough, to wear face coverings, and to maintain Social (Physical) Distancing from one another.
   e) Providing for the regular disinfection of high-touch surfaces, and disinfection of all payment portals, pens, and styluses after each use. All businesses are encouraged to also offer touchless payment mechanisms, if feasible.
   f) Providing cloth-face coverings to employees and contracted workers whose duties require close contact (within 6 feet for 10 minutes or more) with other employees and/or the public.
   g) Requiring that members of the public who enter the facility wear a face-covering during their time in the facility.
   h) Adhering to communicable disease control protocols provided by the Los Angeles County Department of Public Health, including requirements for cleaning and disinfecting the site. See protocols posted at www.publichealth.lacounty.gov/media/Coronavirus/

**ADDITIONAL TERMS**

21. Operators of businesses that are required to cease in-person operations may travel to those businesses for purposes of Minimum Basic Operations, which means:
   a) The minimum necessary activities to maintain and protect the value of the business's inventory and facilities; ensure security, safety, and sanitation; and process payroll and employee benefits;
   b) The minimum necessary activities to facilitate the business's owners, employees, and contractors being able to continue to work remotely from their residences, and to ensure that the business can deliver its services remotely.

**COUNTY OF LOS ANGELES DEPARTMENT OF PUBLIC HEALTH**
**ORDER OF THE HEALTH OFFICER**



22. The County shall promptly provide copies of this Order by: (a) posting it on the Los Angeles Department of Public Health's website (www.publichealth.lacounty.gov), (b) posting it at the Kenneth Hahn Hall of Administration located at 500 West Temple Street, Los Angeles, CA 90012, (c) providing it to any member of the public requesting a copy, and (d) issuing a press release to publicize the Order throughout the County.

   a) The owner, manager, or operator of any facility that is likely to be impacted by this Order is strongly encouraged to post a copy of this Order onsite and to provide a copy to any member of the public requesting a copy.

   b) Because guidance may change, the owner, manager, or operator of any facility that is subject to this Order is ordered to consult the Los Angeles County Department of Public Health's website (www.publichealth.lacounty.gov) daily to identify any modifications to the Order and is required to comply with any updates until the Order is terminated.

23. If any subsection, sentence, clause, phrase, or word of this Order or any application of it to any person, structure, gathering, or circumstance is held to be invalid or unconstitutional by a decision of a court of competent jurisdiction, then such decision will not affect the validity of the remaining portions or applications of this Order.

24. This Order incorporates by reference, the March 4, 2020 Proclamation of a State of Emergency issued by Governor Gavin Newsom and the March 4, 2020 declarations of a local and public health emergency issued by the Los Angeles County Board of Supervisors and Los Angeles County Health Officer, respectively, and as they may be supplemented.

25. This Order is issued in light of the March 19, 2020 Order of the State Public Health Officer, (the "State Shelter Order") which set the baseline statewide restrictions on non-residential business activities, effective until further notice, as well as the Governor's March 19, 2020 Executive Order N-33-20 and the May 4, 2020 Executive Order N-60-20 directing California residents to follow the State Shelter Order. This Order adopts in certain respects more stringent restrictions addressing the particular facts and circumstances in the County of Los Angeles Public Health Jurisdiction, which are necessary to control the public health emergency as it is evolving. Without this tailored set of restrictions to further reduce the number of interactions between persons, scientific evidence indicates that the public health crisis will worsen to the point at which it may overtake available healthcare resources within the County and increase the death rate.

Safer at Home Order for Control of COVID-19:
Continuation of Safer at Home Order that Begins to Move the County of Los Angeles
Into Stage 2 of County's Roadmap to Recovery

Page 12 of 13

**COUNTY OF LOS ANGELES DEPARTMENT OF PUBLIC HEALTH**
**ORDER OF THE HEALTH OFFICER**



26. This Order is consistent with the provisions in the Governor's Executive Order N-60-20 and the State Public Health Officer's May 7, 2020 Order, that local health jurisdictions may implement or continue more restrictive public health measures in the jurisdiction if the Local Health Officer believes conditions in that jurisdiction warrant them. Where a conflict exists between this Order and any state public health order related to controlling the spread of COVID-19 during this pandemic, the most restrictive provision controls. Consistent with California Health and Safety Code section 131080, except where the State Health Officer may issue an order expressly directed at this Order or a provision of this Order and based upon a finding that a provision of this Order constitutes a menace to the public health, any more restrictive measures in this Order may continue to apply and control in the County of Los Angeles Public Health Jurisdiction.

27. Pursuant to Sections 26602 and 41601 of the California Government Code and Section 101029 of the California Health and Safety Code, the Health Officer requests that the Sheriff and all chiefs of police in all cities located in the Los Angeles County Public Health Jurisdiction ensure compliance with and enforcement of this Order. The violation of any provision of this Order constitutes an imminent threat and menace to public health, constitutes a public nuisance, and is punishable by fine, imprisonment or both.

28. This Order shall become effective immediately on May 13, 2020 and will continue to be until it is extended, rescinded, superseded, or amended in writing by the Health Officer.


**IT IS SO ORDERED:**

_____          MAY 13, 2020
**Muntu Davis, M.D., M.P.H.**                 **Date**
Health Officer,
County of Los Angeles

Safer at Home Order for Control of COVID-19:
Continuation of Safer at Home Order that Begins to Move the County of Los Angeles
Into Stage 2 of County's Roadmap to Recovery

Page 13 of 13

# EXHIBIT 5

Select Language

# Marin Public Health Order for May 15, 2020

### ORDER OF THE HEALTH OFFICER

### OF THE COUNTY OF MARIN DIRECTING

### ALL INDIVIDUALS IN THE COUNTY TO CONTINUE SHELTERING AT THEIR PLACE OF RESIDENCE EXCEPT FOR IDENTIFIED NEEDS AND ACTIVITIES, IN COMPLIANCE WITH SPECIFIED REQUIREMENTS; CONTINUING TO EXEMPT HOMELESS INDIVIDUALS FROM THE ORDER BUT URGING GOVERNMENT AGENCIES TO PROVIDE THEM SHELTER; REQUIRING ALL BUSINESSES AND RECREATION FACILITIES THAT ARE ALLOWED TO OPERATE TO IMPLEMENT SOCIAL DISTANCING, FACE COVERING, AND CLEANING PROTOCOLS; AND DIRECTING ALL BUSINESSES, FACILITY OPERATORS, AND GOVERNMENTAL AGENCIES TO CONTINUE THE TEMPORARY CLOSURE OF ALL OTHER OPERATIONS NOT ALLOWED UNDER THIS ORDER

### DATE OF ORDER: MAY 15, 2020

**Please read this Order carefully. Violation of or failure to comply with this Order is a misdemeanor punishable by fine, imprisonment, or both. (California Health and Safety Code § 120295, *et seq.*; Cal. Penal Code §§ 69, 148(a)(1) *et seq.*;)**

UNDER THE AUTHORITY OF CALIFORNIA HEALTH AND SAFETY CODE SECTIONS 101040, 101085, AND 120175, THE HEALTH OFFICER OF THE COUNTY OF MARIN ("HEALTH OFFICER") ORDERS:

1. This Order supersedes the April 29, 2020 Order of the Health Officer directing all individuals to shelter in place ("Prior Order"). This Order amends, clarifies, and continues certain terms of the Prior Order to ensure continued social distancing and limit person-to-person contact to reduce the rate of transmission of Novel Coronavirus Disease 2019 ("COVID-19"). This Order continues to restrict most activity, travel, and governmental and business functions to essential needs and to the Outdoor Activities and Outdoor Businesses that the prior Order allowed to resume. But in light of progress achieved in slowing the spread of COVID-19 in the County of Marin (the "County") and neighboring counties, the Order allows a limited number of Additional Businesses and Additional Activities (as defined in Section 15 below and described in Appendix C-1 (https://coronavirus.marinhhs.org/appendix-c-1-additional-businesses-permitted-operate-51520) and C-2 (https://coronavirus.marinhhs.org/appendix-c-2-allowed-additional-activities-51520)) to resume operating, subject to specified conditions and safety precautions to reduce associated risk of COVID-19 transmission. This gradual and measured resumption of activity is designed to manage the overall volume, duration, and intensity of person-to-person contact to prevent a surge in COVID-19 cases in the County and neighboring counties. As further provided in Section 11 below, the Health Officer will

continue to monitor the risks of the activities and businesses allowed under this Order based on the COVID-19 Indicators (as defined in Section 11) and other data, and may, if conditions support doing so, incrementally add to the list of Additional Businesses and Additional Activities. The activities allowed by this Order will be assessed on an ongoing basis and these activities and others allowed by the Order may need to be modified (including, without limitation, temporarily restricted or prohibited) if the risk associated with COVID-19 increases in the future. As of the effective date and time of this Order set forth in Section 18 below, all individuals, businesses, and government agencies in the County are required to follow the provisions of this Order.

2. The primary intent of this Order is to ensure that County residents continue to shelter in their places of residence to slow the spread of COVID-19 and mitigate the impact on delivery of critical healthcare services. This Order allows a limited number of Additional Businesses and Additional Activities to resume while the Health Officer continues to assess the transmissibility and clinical severity of COVID-19 and monitors indicators described in Section 11. All provisions of this Order must be interpreted to effectuate this intent. Failure to comply with any of the provisions of this Order constitutes an imminent threat and menace to public health, constitutes a public nuisance, and is punishable by fine, imprisonment, or both.

3. All individuals currently living within the County are ordered to shelter at their place of residence. They may leave their residence only for Essential Activities as defined in Section 15.a, Outdoor Activities as defined in Section 15.m, and Additional Activities as defined in Section 15.X; Essential Governmental Functions as defined in Section 15.d; Essential Travel as defined in Section 15.i; to work for Essential Businesses as defined in Section 15.f, Outdoor Businesses as defined in Section 15.*l*, and Additional Businesses as defined in Section 15.X; or to perform Minimum Basic Operations for other businesses that must remain temporarily closed, as provided in Section 15.g. For clarity, individuals who do not currently reside in the County must comply with all applicable requirements of the Order when in the County. Individuals experiencing homelessness are exempt from this Section, but are strongly urged to obtain shelter, and governmental and other entities are strongly urged to, as soon as possible, make such shelter available and provide handwashing or hand sanitation facilities to persons who continue experiencing homelessness.

4. When people need to leave their place of residence for the limited purposes allowed in this Order, they must strictly comply with Social Distancing Requirements as defined in Section 15.k, except as expressly provided in this Order, and must wear Face Coverings as provided in, and subject to the limited exceptions in, Health Officer Order Generally Requiring Members of the Public and Workers to Wear Face Coverings (the "Face Covering Order").

5. All businesses with a facility in the County, except Essential Businesses, Outdoor Businesses, and Additional Businesses, as defined in Section 15, are required to cease all activities at facilities located within the County except Minimum Basic Operations, as defined in Section 15. For clarity, all businesses may continue operations consisting exclusively of owners, personnel, volunteers, or contractors performing activities at their own residences (i.e., working from home). All Essential Businesses are strongly encouraged to remain open. But all businesses are directed to maximize the number of personnel who work from home. Essential Businesses, Outdoor Businesses, and Additional Businesses may only assign those personnel who cannot perform their job duties from home to work outside the home. Outdoor Businesses must conduct all business and transactions involving members of the public outdoors.

6.  As a condition of operating under this Order, the operators of all businesses must prepare or update, post, implement, and distribute to their personnel a Site-Specific Protection Plan for each of their facilities in the County frequented by personnel or members of the public, as specified in Section 15.h.  In addition to the Site-Specific Protection Plan, all businesses allowed to operate under this Order must follow any industry-specific guidance issued by the Health Officer related to COVID-19 and any conditions on operation specified in this Order, including those specified in Appendix C-1 (https://coronavirus.marinhhs.org /appendix-c-1-additional-businesses-permitted-operate-51520).  Except as otherwise provided in Appendix C-1 (https://coronavirus.marinhhs.org/appendix-c-1-additional-businesses-permitted-operate-51520), businesses that include an Essential Business or Outdoor Business component at their facilities alongside other components must, to the extent feasible, scale down their operations to the Essential Business and Outdoor Business components only; provided, however, mixed retail businesses that are otherwise allowed to operate under this Order may continue to stock and sell non-essential products.

7.  All public and private gatherings of any number of people occurring outside a single household or living unit are prohibited, except for the limited purposes expressly permitted in this Order.  Nothing in this Order prohibits members of a single household or living unit from engaging in Essential Travel, Essential Activities, Outdoor Activities, or Additional Activities together.

8.  All travel, including, but not limited to, travel on foot, bicycle, scooter, motorcycle, automobile, or public transit, except Essential Travel, as defined below in Section 15.i, is prohibited.  People may use public transit only for purposes of performing Essential Activities, Outdoor Activities, or Additional Activities, or to travel to and from Essential Businesses, Outdoor Businesses, or Additional Businesses, to maintain Essential Governmental Functions, or to perform Minimum Basic Operations at businesses that are not allowed to resume operations.  Transit agencies and people riding on public transit must comply with Social Distancing Requirements, as defined in Section 15.k, to the greatest extent feasible, and personnel and passengers must wear Face Coverings as required by the Face Covering Order.  This Order allows travel into or out of the County only to perform Essential Activities, Outdoor Activities, or Additional Activities; to operate, perform work for, or access a business allowed to operate under this Order; to perform Minimum Basic Operations at other businesses; or to maintain Essential Governmental Functions.

9.  This Order is issued based on evidence of continued significant community transmission of COVID-19 within the County and throughout the Bay Area; continued uncertainty regarding the degree of undetected asymptomatic transmission; scientific evidence and best practices regarding the most effective approaches to slow the transmission of communicable diseases generally and COVID-19 specifically; evidence that the age, condition, and health of a significant portion of the population of the County places it at risk for serious health complications, including death, from COVID-19; and further evidence that others, including younger and otherwise healthy people, are also at risk for serious outcomes.  Due to the outbreak of the COVID-19 disease in the general public, which is now a pandemic according to the World Health Organization, there is a public health emergency throughout the County.  Making the problem worse, some individuals who contract the virus causing the COVID-19 disease have no symptoms or have mild symptoms, which means they may not be aware they carry the virus and are transmitting it to others.  Further, evidence shows that the virus can survive for hours to days on surfaces and be indirectly transmitted between individuals.  Because even people without symptoms can transmit the infection, and because evidence shows the infection is easily spread, gatherings and other direct or indirect interpersonal interactions can result in preventable transmission of the virus.

10. The collective efforts taken to date regarding this public health emergency have slowed the virus' trajectory, but the emergency and the attendant risk to public health remain significant. As of May 14, 2020, there have been 275 confirmed cases of COVID-19 in the County (up from 9 on March 15, 2020, just before the first shelter-in-place order), including14 deaths.

11. The local health officers who jointly issued the Prior Order are monitoring several key indicators ("COVID-19 Indicators"), which are among the many factors informing their decisions whether to modify existing shelter-in-place restrictions. Progress on some of these COVID-19 Indicators—specifically related to hospital utilization and capacity—makes it appropriate, at this time, to allow certain Additional Businesses to resume operations and Additional Activities to take place under specified conditions, as set forth in Section 15.*l.* But the continued prevalence of the virus that causes COVID-19 requires most activities and business functions to remain restricted, and those activities that are allowed to occur must do so subject to social distancing and other infection control practices identified by the Health Officer. Evaluation of the COVID-19 Indicators will be critical to determinations by the local health officers regarding whether the restrictions imposed by this Order will be further modified to ease or tighten the restrictions imposed by this Order and augment, limit, or prohibit the Additional Businesses and Additional Activities allowed to resume. The Health Officer will continually review whether modifications to the Order are warranted based on (1) progress on the COVID-19 Indicators; (2) developments in epidemiological and diagnostic methods for tracing, diagnosing, treating, or testing for COVID-19; and (3) scientific understanding of the transmission dynamics and clinical impact of COVID-19. The COVID-19 Indicators include, but are not limited to, the following:

    a. The capacity of hospitals and the health system in the County and region, including acute care beds and Intensive Care Unit beds, to provide care for COVID-19 patients and other patients, including during a surge in COVID-19 cases.

    b. The supply of personal protective equipment (PPE) available for hospital staff and other healthcare providers and personnel who need PPE to safely respond to and treat COVID-19 patients.

    c. The ability and capacity to quickly and accurately test persons to determine whether they are COVID-19 positive, especially those in vulnerable populations or high-risk settings or occupations.

    d. The ability to conduct case investigation and contact tracing for the volume of cases and associated contacts that will continue to occur, isolating confirmed cases and quarantining persons who have had contact with confirmed cases.

12. The scientific evidence shows that at this stage of the emergency, it remains essential to continue to slow virus transmission to help (a) protect the most vulnerable; (b) prevent the health care system from being overwhelmed; (c) prevent long-term chronic health conditions, such as cardiovascular, kidney, and respiratory damage and loss of limbs from blood clotting; and (d) prevent deaths. Continuation of the Prior Order is necessary to slow the spread of the COVID-19 disease, preserving critical and limited healthcare capacity in the County and advancing toward a point in the public health emergency where transmission can be controlled. At the same time, since the Prior Order was issued the County has continued to make progress in expanding health system capacity and healthcare resources and in slowing community transmission of COVID-19. In light of progress on these indicators, and subject to continued monitoring and potential public health-based responses, in addition to those already allowed to operate under the Prior Order

as Essential Businesses and Outdoor Businesses, it is appropriate at this time to begin allowing operation of specified Additional Businesses.  These businesses are identified based on health-related considerations and transmission risk factors including, but not limited to, the intensity and quantity of contacts and the ability to substantially mitigate transmission risks associated with the operations.

13. This Order is issued in accordance with, and incorporates by reference, the March 4, 2020 Proclamation of a State of Emergency issued by Governor Gavin Newsom, the March 3, 2020 Proclamation by the Assistant Director of Emergency Services Declaring the Existence of a Local Emergency in the County, the March 3, 2020 Declaration of Local Health Emergency Regarding Novel Coronavirus 2019 (COVID-19) issued by the Health Officer, and the March 10, 2020 Resolution of the Board of Supervisors of the County of Marin Ratifying and Extending the Proclamation of a Local Emergency.

14. This Order is also issued in light of the March 19, 2020 Order of the State Public Health Officer (the "State Shelter Order"), which set baseline statewide restrictions on non-residential business activities, effective until further notice, and the Governor's March 19, 2020 Executive Order N-33-20 directing California residents to follow the State Shelter Order. The May 4, 2020 Executive Order issued by Governor Newsom and May 7, 2020 Order of the State Public Health Officer permit certain businesses to reopen if a local health officer believes the conditions in that jurisdictions warrant it, but expressly acknowledge the authority of local health officers to establish and implement public health measures within their respective jurisdictions that are more restrictive than those implemented by the State Public Health Officer.  This Order adopts in certain respects more stringent restrictions addressing the particular facts and circumstances in this County, which are necessary to control the public health emergency as it is evolving within the County and the Bay Area.  Without this tailored set of restrictions that further reduces the number of interactions between persons, scientific evidence indicates that the public health crisis in the County will worsen to the point at which it may overtake available health care resources within the County and increase the death rate.  Also, this Order enumerates additional restrictions on non-work-related travel not covered by the State Shelter Order; sets forth mandatory Social Distancing Requirements for all individuals in the County when engaged in activities outside their residences; and adds a mechanism to ensure that all businesses with facilities that are allowed to operate under the Order comply with the Social Distancing Requirements.  Where a conflict exists between this Order and any state public health order related to the COVID-19 pandemic, the most restrictive provision controls.  Consistent with California Health and Safety Code section 131080 and the Health Officer Practice Guide for Communicable Disease Control in California, except where the State Health Officer may issue an order expressly directed at this Order and based on a finding that a provision of this Order constitutes a menace to public health, any more restrictive measures in this Order continue to apply and control in this County.  In addition, to the extent any federal guidelines allow activities that are not allowed by this Order, this Order controls and those activities are not allowed.

15. <u>Definitions and Exemptions</u>.

    a. For the purposes of this Order, individuals may leave their residence only to perform the following "Essential Activities."  But people at high risk of severe illness from COVID-19 and people who are sick are strongly urged to stay in their residence to the extent possible, except as necessary to seek or provide medical care or Essential Governmental Functions.  Essential Activities are:

        i. To engage in activities or perform tasks important to their health and safety, or to the health and

safety of their family or household members (including pets), such as, by way of example only and without limitation, obtaining medical supplies or medication, or visiting a health care professional.

ii. To obtain necessary services or supplies for themselves and their family or household members, or to deliver those services or supplies to others, such as, by way of example only and without limitation, canned food, dry goods, fresh fruits and vegetables, pet supply, fresh meats, fish, and poultry, and any other household consumer products, or products necessary to maintain the habitability, sanitation, and operation of residences.

iii. To engage in outdoor recreation activity, including, by way of example and without limitation, walking, hiking, bicycling, and running, in compliance with Social Distancing Requirements and with the following limitations:

    1. Outdoor recreation activity at parks, beaches, and other open spaces must comply with any restrictions on access and use established by the Health Officer, government, or other entity that manages such area to reduce crowding and risk of transmission of COVID-19.  Such restrictions may include, but are not limited to, restricting the number of entrants, closing the area to vehicular access and parking, or closure to all public access;

    2. Except as otherwise provided in Appendix C-2 (https://coronavirus.marinhhs.org/appendix-c-2-allowed-additional-activities-51520), use of outdoor recreational areas and facilities with high-touch equipment or that encourage gathering, including, but not limited to, playgrounds, gym equipment, climbing walls, picnic areas, dog parks, pools, spas, and barbecue areas, is prohibited outside of residences, and all such areas shall be closed to public access including by signage and, as appropriate, by physical barriers;

    3. Except as otherwise provided in Appendix C-2 (https://coronavirus.marinhhs.org/appendix-c-2-allowed-additional-activities-51520), sports or activities that include the use of shared equipment or physical contact between participants may only be engaged in by members of the same household or living unit.

    4. Use of shared outdoor facilities for recreational activities that may occur outside of residences consistent with the restrictions set forth in subsections 1, 2, and 3, above, including, but not limited to, golf courses, skate parks, and athletic fields, must, before they may begin, comply with social distancing and health/safety protocols posted at the site and any other restrictions, including prohibitions, on access and use established by the Health Officer, government, or other entity that manages such area to reduce crowding and risk of transmission of COVID-19; and

iv. To perform work for or access an Essential Business, Outdoor Business, or Additional Business; or to otherwise carry out activities specifically permitted in this Order, including Minimum Basic Operations, as defined in this Section.

v. To provide necessary care for a family member or pet in another household who has no other source of care.

vi. To attend a funeral with no more than 10 individuals present.

    vii. To move residences.  When moving into or out of the Bay Area region, individuals are strongly urged to quarantine for 14 days.  To quarantine, individuals should follow the guidance of the United States Centers for Disease Control and Prevention.

    viii. To engage in Additional Activities, as specified in Appendix C-2 (https://coronavirus.marinhhs.org/appendix-c-2-allowed-additional-activities-51520).

b. For the purposes of this Order, individuals may leave their residence to work for, volunteer at, or obtain services at "Healthcare Operations," including, without limitation, hospitals, clinics, COVID-19 testing locations, dentists, pharmacies, blood banks and blood drives, pharmaceutical and biotechnology companies, other healthcare facilities, healthcare suppliers, home healthcare services providers, mental health providers, or any related and/or ancillary healthcare services.  "Healthcare Operations" also includes veterinary care and all healthcare services provided to animals.  This exemption for Healthcare Operations shall be construed broadly to avoid any interference with the delivery of healthcare, broadly defined.  "Healthcare Operations" excludes fitness and exercise gyms and similar facilities.

c. For the purposes of this Order, individuals may leave their residence to provide any services or perform any work necessary to the operation and maintenance of "Essential Infrastructure," including airports, utilities (including water, sewer, gas, and electrical), oil refining, roads and highways, public transportation, solid waste facilities (including collection, removal, disposal, recycling, and processing facilities), cemeteries, mortuaries, crematoriums, and telecommunications systems (including the provision of essential global, national, and local infrastructure for internet, computing services, business infrastructure, communications, and web-based services).

d. For the purposes of this Order, all first responders, emergency management personnel, emergency dispatchers, court personnel, and law enforcement personnel, and others who need to perform essential services are categorically exempt from this Order to the extent they are performing those essential services.  Further, nothing in this Order shall prohibit any individual from performing or accessing "Essential Governmental Functions," as determined by the governmental entity performing those functions in the County.  Each governmental entity shall identify and designate appropriate personnel, volunteers, or contractors to continue providing and carrying out any Essential Governmental Functions, including the hiring or retention of new personnel or contractors to perform such functions. Each governmental entity and its contractors must employ all necessary emergency protective measures to prevent, mitigate, respond to, and recover from the COVID-19 pandemic, and all Essential Governmental Functions shall be performed in compliance with Social Distancing Requirements to the greatest extent feasible.

e. For the purposes of this Order, a "business" includes any for-profit, non-profit, or educational entity, whether a corporate entity, organization, partnership or sole proprietorship, and regardless of the nature of the service, the function it performs, or its corporate or entity structure.

f. For the purposes of this Order, "Essential Businesses" are:

    i. Healthcare Operations and businesses that operate, maintain, or repair Essential Infrastructure;

    ii. Grocery stores, certified farmers' markets, farm and produce stands, supermarkets, food banks, convenience stores, and other establishments engaged in the retail sale of unprepared food, canned

food, dry goods, non-alcoholic beverages, fresh fruits and vegetables, pet supply, fresh meats, fish, and poultry, as well as hygienic products and household consumer products necessary for personal hygiene or the habitability, sanitation, or operation of residences. The businesses included in this subparagraph (ii) include establishments that sell multiple categories of products provided that they sell a significant amount of essential products identified in this subparagraph, such as liquor stores that also sell a significant amount of food.

iii. Food cultivation, including farming, livestock, and fishing;

iv. Businesses that provide food, shelter, and social services, and other necessities of life for economically disadvantaged or otherwise needy individuals;

v. Construction, but only as permitted under the State Shelter Order and only pursuant to the Construction Safety Protocols listed in Appendix B and incorporated into this Order by this reference. Public works projects shall also be subject to Appendix B, except if other protocols are specified by the Health Officer;

vi. Newspapers, television, radio, and other media services;

vii. Gas stations and auto-supply, auto-repair (including, but not limited to, for cars, trucks, motorcycles and motorized scooters), and automotive dealerships, but only for the purpose of providing auto-supply and auto-repair services. This subparagraph (vii) does not restrict the on-line purchase of automobiles if they are delivered to a residence or Essential Business;

viii. Bicycle repair and supply shops;

ix. Banks and related financial institutions;

x. Service providers that enable real estate transactions (including rentals, leases, and home sales), including, but not limited to, real estate agents, escrow agents, notaries, and title companies, provided that appointments and other residential real estate viewings must only occur virtually or, if a virtual viewing is not feasible, by appointment with no more than two visitors at a time residing within the same household or living unit and one individual showing the unit (except that in person visits are not allowed when the occupant is present in the residence);

xi. Hardware stores;

xii. Plumbers, electricians, exterminators, and other service providers who provide services that are necessary to maintaining the habitability, sanitation, or operation of residences and Essential Businesses;

xiii. Businesses providing mailing and shipping services, including post office boxes;

xiv. Educational institutions—including public and private K-12 schools, colleges, and universities—for purposes of facilitating distance learning or performing essential functions, or as allowed under subparagraph xxvi, provided that social distancing of six feet per person is maintained to the greatest extent possible;

xv. Laundromats, drycleaners, and laundry service providers;

xvi. Restaurants and other facilities that prepare and serve food, but only for delivery or carry out. Schools and other entities that typically provide free food services to students or members of the

public may continue to do so under this Order on the condition that the food is provided to students or members of the public on a pick-up and take-away basis only.  Schools and other entities that provide food services under this exemption shall not permit the food to be eaten at the site where it is provided, or at any other gathering site;

xvii. Funeral home providers, mortuaries, cemeteries, and crematoriums, to the extent necessary for the transport, preparation, or processing of bodies or remains;

xviii. Businesses that supply other Essential Businesses and Outdoor Businesses with the support or supplies necessary to operate, but only to the extent that they support or supply these businesses. This exemption shall not be used as a basis for engaging in sales to the general public from retail storefronts;

xix. Businesses that have the primary function of shipping or delivering groceries, food, or other goods directly to residences or businesses.  This exemption shall not be used to allow for manufacturing or assembly of non-essential products or for other functions besides those necessary to the delivery operation;

xx. Airlines, taxis, rental car companies, rideshare services (including shared bicycles and scooters), and other private transportation providers providing transportation services necessary for Essential Activities and other purposes expressly authorized in this Order;

xxi. Home-based care for seniors, adults, children, and pets;

xxii. Residential facilities and shelters for seniors, adults, and children;

xxiii. Professional services, such as legal, notary, or accounting services, when necessary to assist in compliance with non-elective, legally required activities or in relation to death or incapacity;

xxiv. Services to assist individuals in finding employment with Essential Businesses;

xxv. Moving services that facilitate residential or commercial moves that are allowed under this Order; and

xxvi. Childcare establishments, summer camps, and other educational or recreational institutions or programs providing care or supervision for children of all ages that enable owners, employees, volunteers, and contractors for Essential Businesses, Essential Governmental Functions, Outdoor Businesses, Additional Businesses, or Minimum Basic Operations to work as allowed under this Order.  To the extent possible, these operations must comply with the following conditions:

1. They must be carried out in stable groups of 12 or fewer children ("stable" means that the same 12 or fewer children are in the same group each day).

2. Children shall not change from one group to another.

3. If more than one group of children is at one facility, each group shall be in a separate room. Groups shall not mix with each other.

4. Providers or educators shall remain solely with one group of children.

The Health Officer will carefully monitor the changing public health situation as well as any changes to the State Shelter Order.  In the event that the State relaxes restrictions on

childcare and related institutions and programs, the Health Officer will consider whether to similarly relax the restrictions imposed by this Order.

g. For the purposes of this Order, "Minimum Basic Operations" means the following activities for businesses, provided that owners, personnel, and contractors comply with Social Distancing Requirements as defined this Section, to the extent possible, while carrying out such operations:

  i. The minimum necessary activities to maintain and protect the value of the business's inventory and facilities; ensure security, safety, and sanitation; process payroll and employee benefits; provide for the delivery of existing inventory directly to residences or businesses; and related functions.  For clarity, this section does not permit businesses to provide curbside pickup to customers.

  ii. The minimum necessary activities to facilitate owners, personnel, and contractors of the business being able to continue to work remotely from their residences, and to ensure that the business can deliver its service remotely.

h. For the purposes of this Order, all businesses that are operating at facilities in the County visited or used by the public or personnel must, as a condition of such operation, prepare and post a "Site-Specific Protection Plan" for each of these facilities; provided, however, that construction activities shall instead comply with the Construction Project Safety Protocols set forth in Appendix B and not the Site-Specific Protection Plan.  The Site-Specific Protection Plan must be substantially in the form attached to this Order as Appendix A, and it must be updated from prior versions to address new requirements listed in this Order or in related guidance or directives from the Health Officer.  The Site-Specific Protection Plan must be posted at or near the entrance of the relevant facility, and shall be easily viewable by the public and personnel.  All businesses subject to this paragraph shall implement the Site-Specific Protection Plan and provide evidence of its implementation to any authority enforcing this Order upon demand.  The Site-Specific Protection Plan must explain how the business is achieving the following, as applicable:

  i. Limiting the number of people who can enter into the facility at any one time to ensure that people in the facility can easily maintain a minimum six-foot distance from one another at all times, except as required to complete Essential Business activity;

  ii. Requiring face coverings to be worn by all persons entering the facility, other than those exempted from face covering requirements (e.g. young children);

  iii. Where lines may form at a facility, marking six-foot increments at a minimum, establishing where individuals should stand to maintain adequate social distancing;

  iv. Providing hand sanitizer, soap and water, or effective disinfectant at or near the entrance of the facility and in other appropriate areas for use by the public and personnel, and in locations where there is high-frequency employee interaction with members of the public (e.g. cashiers);

  v. Providing for contactless payment systems or, if not feasible to do so, the providing for disinfecting all payment portals, pens, and styluses after each use;

  vi. Regularly disinfecting other high-touch surfaces;

  vii. Posting a sign at the entrance of the facility informing all personnel and customers that they

should: avoid entering the facility if they have any COVID-19 symptoms; maintain a minimum six-foot distance from one another; sneeze and cough into one's elbow; not shake hands or engage in any unnecessary physical contact; and

viii. Any additional social distancing measures being implemented (see the Centers for Disease Control and Prevention's guidance at: https://www.cdc.gov/coronavirus/2019-ncov/community/guidance-business-response.html (https://urldefense.proofpoint.com/v2/url?u=https-3A__www.cdc.gov_coronavirus_2019-2Dncov_community_guidance-2Dbusiness-2Dresponse.html&d=DwMFAw&c=jIuf2QGe13CVwCCNhnnHSyGX0TfHadH8sr2VwRkl7n8&r=ngkLopuMRZUOqEIlIlHX3zVLl4AZMj7V3rWqAE9UGqQ&m=Qer8m3QWIWOVAJdc_vNH--0HKkNvhAMe3lrb0WmOdBI&s=DyfmdZVnfn5xjeIVMnDZJxkHd-kHAhoUnoNIl0WHytw&e=)).

i. For the purposes of this Order, "Essential Travel" means travel for any of the following purposes:

  i. Travel related to the provision of or access to Essential Activities, Essential Governmental Functions, Essential Businesses, Minimum Basic Operations, Outdoor Activities, Outdoor Businesses, Additional Activities, and Additional Businesses.

  ii. Travel to care for any elderly, minors, dependents, or persons with disabilities.

  iii. Travel to or from educational institutions for purposes of receiving materials for distance learning, for receiving meals, and any other related services.

  iv. Travel to return to a place of residence from outside the County.

  v. Travel required by law enforcement or court order.

  vi. Travel required for non-residents to return to their place of residence outside the County. Individuals are strongly encouraged to verify that their transportation out of the County remains available and functional prior to commencing such travel.

  vii. Travel to manage after-death arrangements and burial.

  viii. Travel to arrange for shelter or avoid homelessness.

  ix. Travel to avoid domestic violence or child abuse.

  x. Travel for parental custody arrangements.

  xi. Travel to a place to temporarily reside in a residence or other facility to avoid potentially exposing others to COVID-19, such as a hotel or other facility provided by a governmental authority for such purposes.

j. For purposes of this Order, "residences" include hotels, motels, shared rental units, and similar facilities.  Residences also include living structures and outdoor spaces associated with those living structures, such as patios, porches, backyards, and front yards that are only accessible to a single family or household unit.

k. For purposes of this Order, "Social Distancing Requirements" means:

  i. Maintaining at least six-foot social distancing from individuals who are not part of the same household or living unit;

ii. Frequently washing hands with soap and water for at least 20 seconds, or using hand sanitizer that is recognized by the Centers for Disease Control and Prevention as effective in combatting COVID-19;

iii. Covering coughs and sneezes with a tissue or fabric or, if not possible, into the sleeve or elbow (but not into hands);

iv. Wearing a face covering when out in public, consistent with the orders or guidance of the Health Officer; and

v. Avoiding all social interaction outside the household when sick with a fever, cough, or other COVID-19 symptoms.

All individuals must strictly comply with Social Distancing Requirements, except to the limited extent necessary to provide care (including childcare, adult or senior care, care to individuals with special needs, and patient care); as necessary to carry out the work of Essential Businesses, Essential Governmental Functions, or provide for Minimum Basic Operations; or as otherwise expressly provided in this Order. Outdoor Activities, Outdoor Businesses, Additional Activities, and Additional Businesses must strictly adhere to these Social Distancing Requirements.

ax. For purposes of this Order, "Outdoor Businesses" means:

i. The following businesses that normally operated primarily outdoors prior to March 16, 2020 and where there is the ability to fully maintain social distancing of at least six feet between all persons:

1. Businesses primarily operated outdoors, such as wholesale and retail plant nurseries, agricultural operations, and garden centers.

2. Service providers that primarily provide outdoor services, such as landscaping and gardening services, and environmental site remediation services.

For clarity, "Outdoor Businesses" do not include outdoor restaurants, cafes, or bars. Except as otherwise provided in Appendix C, they also do not include businesses that promote large, coordinated, and prolonged gatherings, such as outdoor concert venues and amusement parks.

all. For purposes of this Order, "Outdoor Activities" means:

i. To obtain goods, services, or supplies from, or perform work for, an Outdoor Business.

ii. To engage in outdoor recreation as permitted in Section 15.a.

n. For purposes of this Order, "Additional Business" means any business, entity, or other organization identified as an Additional Business in Appendix C-1 (https://coronavirus.marinhhs.org/appendix-c-1-additional-businesses-permitted-operate-51520), which will be updated as warranted based on the Health Officer's ongoing evaluation of the COVID-19 Indicators and other data. In addition to the other requirements in this Order, operation of those Additional Businesses is subject to any conditions and health and safety requirements set forth in Appendix C-1 (https://coronavirus.marinhhs.org /appendix-c-1-additional-businesses-permitted-operate-51520) and in any industry-specific guidance issued by the Health Officer.

○ For purposes of this Order, "Additional Activities" means:

    i. To obtain goods, services, or supplies from, or perform work for, Additional Businesses identified in Appendix C-1 (https://coronavirus.marinhhs.org/appendix-c-1-additional-businesses-permitted-operate-51520), subject to requirements in this Order, and any conditions and health and safety requirements set forth in this Order or in any industry-specific guidance issued by the Health Officer.

    ii. To engage in outdoor recreation activities or other activities set forth in Appendix C-2 (https://coronavirus.marinhhs.org/appendix-c-2-allowed-additional-activities-51520), subject to any conditions and health and safety requirements set forth there.

16. Government agencies and other entities operating shelters and other facilities that house or provide meals or other necessities of life for individuals experiencing homelessness must take appropriate steps to help ensure compliance with Social Distancing Requirements, including adequate provision of hand sanitizer. Also, individuals experiencing homelessness who are unsheltered and living in encampments should, to the maximum extent feasible, abide by 12 foot by 12 foot distancing for the placement of tents, and government agencies should provide restroom and hand washing facilities for individuals in such encampments as set forth in Centers for Disease Control and Prevention Interim Guidance Responding to Coronavirus 2019 (COVID-19) Among People Experiencing Unsheltered Homelessness (https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/unsheltered-homelessness.html (https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/unsheltered-homelessness.html)).

17. Pursuant to Government Code sections 26602 and 41601 and Health and Safety Code section 101029, the Health Officer requests that the Sheriff and all chiefs of police in the County ensure compliance with and enforce this Order. The violation of any provision of this Order constitutes an imminent threat and menace to public health, constitutes a public nuisance, and is punishable by fine, imprisonment, or both.

18. This Order shall become effective at 11:59 p.m. on May 17, 2020 and will continue to be in effect until it is rescinded, superseded, or amended in writing by the Health Officer.

19. Copies of this Order shall promptly be: (1) made available at the Bulletin Board adjacent to the entrance to the Chambers of the Board of Supervisors, Room 330, Administration Building, and in the display case in the center arch of the Hall of Justice, Marin County Civic Center, San Rafael, California; (2) posted on the County of Marin website (www.marincounty.org (http://www.marincounty.org/)) as well as the County of Marin Department of Health and Human Services website (www.marinhhs.org (http://www.marinhhs.org/)); and (3) provided to any member of the public requesting a copy of this Order.

20. If any provision of this Order or its application to any person or circumstance is held to be invalid, the remainder of the Order, including the application of such part or provision to other persons or circumstances, shall not be affected and shall continue in full force and effect. To this end, the provisions of this Order are severable.

**IT IS SO ORDERED:**

_____

Matt Willis, MD, MPH                         Dated: May 15, 2020

Health Officer of the County of Marin

Attachments:   Appendix A – Site-Specific Protection Plan (https://coronavirus.marinhhs.org/file/182)(Fillable PDF (https://marinrecovers.com/documents/covid-19-site-specific-protection-plan-spp/))

Appendix B-1 – Small Construction Project Safety Protocol (https://coronavirus.marinhhs.org/appendix-b-1-marin-health-order-april-29-2020)

Appendix B-2 – Large Construction Project Safety Protocol (https://coronavirus.marinhhs.org/appendix-b-2-marin-health-order-april-29-2020)

Appendix C-1 – Additional Businesses (https://coronavirus.marinhhs.org/appendix-c-1-additional-businesses-permitted-operate-51520)

Appendix C-2 – Additional Activities (https://coronavirus.marinhhs.org/appendix-c-2-allowed-additional-activities-51520)

---

If you are a person with a disability and require an accommodation to participate in a County program, service, or activity, requests may be made by calling (415) 473-4381 (Voice), (415) 473-3232 (TDD/TTY), or by email (mailto:disabilityaccess@marincounty.org) at least six days in advance of the event. Copies of documents are available in alternative formats upon request.

Website Accessibility (https://www.marincounty.org/main/accessibility) | Adjust Text Size (https://www.marinhhs.org/node/467)
Download Adobe Acrobat PDF Document Viewer (http://get.adobe.com/reader/otherversions/)

Notice of Nondiscrimination and Accessibility Rights (https://www.marinhhs.org/node/2237)
(https://www.marincounty.org/)



COUNTY OF MARIN

EXHIBIT 6



Dr. Scott Morrow, Health Officer
Cassius Lockett, PhD, Director

Public Health, Policy & Planning
225 37th Avenue
San Mateo, CA 94403
smchealth.org

# ORDER No. c19-5c (REVISED) OF THE HEALTH OFFICER OF THE COUNTY OF SAN MATEO DIRECTING ALL INDIVIDUALS IN THE COUNTY TO CONTINUE SHELTERING AT THEIR PLACE OF RESIDENCE EXCEPT FOR ESSENTIAL NEEDS AND IDENTIFIED OUTDOOR ACTIVITIES IN COMPLIANCE WITH SPECIFIED REQUIREMENTS; CONTINUING TO EXEMPT HOMELESS INDIVIDUALS FROM THE ORDER BUT URGING GOVERNMENT AGENCIES TO PROVIDE THEM SHELTER; REQUIRING ALL BUSINESSES AND RECREATION FACILITIES THAT ARE ALLOWED TO OPERATE TO IMPLEMENT SOCIAL DISTANCING, FACE COVERING, AND CLEANING PROTOCOLS; AND DIRECTING ALL BUSINESSES, FACILITY OPERATORS, AND GOVERNMENTAL AGENCIES TO CONTINUE THE TEMPORARY CLOSURE OF ALL OTHER OPERATIONS NOT ALLOWED UNDER THIS ORDER

## DATE OF ORDER: APRIL 29, 2020

**Please read this Order carefully. Violation of or failure to comply with this Order is a misdemeanor punishable by fine, imprisonment, or both. (California Health and Safety Code § 120295, *et seq.*; Cal. Penal Code §§ 69, 148(a)(1))**

UNDER THE AUTHORITY OF CALIFORNIA HEALTH AND SAFETY CODE SECTIONS 101040, 101085, AND 120175, THE HEALTH OFFICER OF THE COUNTY OF SAN MATEO ("HEALTH OFFICER") ORDERS:

1. This Order supersedes the March 31, 2020 Order of the Health Officer directing all individuals to shelter in place ("Prior Order"). This Order amends, clarifies, and extends certain terms of the Prior Order to ensure continued social distancing and limit person-to-person contact to reduce the rate of transmission of Novel Coronavirus Disease 2019 ("COVID-19"). This Order continues to restrict most activity, travel, and governmental and business functions. But in light of progress achieved in slowing the spread of COVID-19 in the County of San Mateo (the "County") and neighboring counties, the Order allows a limited number of additional Essential Businesses and certain lower risk Outdoor Businesses (both as defined in Section 16 below) to resume operating. This initial, measured resumption of those activities is designed to keep the overall volume of person-to-person contact very low to prevent a surge in COVID-19 cases in the County and neighboring counties. The activities allowed by this Order will be assessed on an ongoing basis and may need to be modified if the risk associated with COVID-19 increases in the future. As of the effective date and time of this Order set forth in Section 19 below, all

1



SAN MATEO COUNTY HEALTH
**PUBLIC HEALTH,**
**POLICY & PLANNING**

individuals, businesses, and government agencies in the County are required to follow the provisions of this Order.

2. The primary intent of this Order is to ensure that County residents continue to shelter in their places of residence to slow the spread of COVID-19 and mitigate the impact on delivery of critical healthcare services.  This Order allows a limited number of additional essential and outdoor business activities to resume while the Health Officer continues to assess the transmissibility and clinical severity of COVID-19 and monitors indicators described in Section 11.  All provisions of this Order must be interpreted to effectuate this intent.  Failure to comply with any of the provisions of this Order constitutes an imminent threat and menace to public health, constitutes a public nuisance, and is punishable by fine, imprisonment, or both.

3. All individuals currently living within the County are ordered to shelter at their place of residence.  They may leave their residence only for Essential Activities as defined in Section 16.a and Outdoor Activities as defined in Section 16.m, Essential Governmental Functions as defined in Section 16.d, Essential Travel as defined in Section 16.i, to work for Essential Businesses as defined in Section 16.f, and Outdoor Businesses as defined in Section 16.*l*, or to perform Minimum Basic Operations for other businesses that must remain temporarily closed, as provided in Section 16.g.  For clarity, individuals who do not currently reside in the County must comply with all applicable requirements of the Order when in the County.  Individuals experiencing homelessness are exempt from this Section, but are strongly urged to obtain shelter, and governmental and other entities are strongly urged to, as soon as possible, make such shelter available and provide handwashing or hand sanitation facilities to persons who continue experiencing homelessness.

4. When people need to leave their place of residence for the limited purposes allowed in this Order, they must strictly comply with Social Distancing Requirements as defined in Section 16.k, except as expressly provided in this Order, and must wear Face Coverings as provided in Health Officer Order No. c19-8 (the "Face Covering Order"), including in connection with accessing or working for an Outdoor Business.

5. All businesses with a facility in the County, except Essential Businesses and Outdoor Businesses, as defined in Section 16, are required to cease all activities at facilities located within the County except Minimum Basic Operations, as defined in Section 16.g.  For clarity, all businesses may continue operations consisting exclusively of owners, personnel, volunteers, or contractors performing activities at their own residences (i.e., working from home).  All Essential Businesses are strongly encouraged to remain open.  But all businesses are directed to maximize the number of personnel who work from home.  Essential Businesses and Outdoor Businesses may only assign those personnel who cannot perform their job duties from home to work outside the home.  Outdoor Businesses must conduct all business and transactions involving members of the public outdoors.

6. As a condition of operating under this Order, the operators of all businesses must prepare or update, post, implement, and distribute to their personnel a Social Distancing Protocol for each of their facilities in the County frequented by personnel or members of the public, as specified in Section 16.h. Businesses that include an Essential Business or Outdoor Business component at their facilities

2



SAN MATEO COUNTY HEALTH
PUBLIC HEALTH,
POLICY & PLANNING

alongside other components must, to the extent feasible, scale down their operations to the Essential Business and Outdoor Business components only; provided, however, mixed retail businesses that are otherwise allowed to operate under this Order may continue to stock and sell non-essential products.  All businesses allowed to operate under this Order must follow any industry-specific guidance issued by the Health Officer related to COVID-19.

7.  All public and private gatherings of any number of people occurring outside a single household or living unit are prohibited, except for the limited purposes expressly permitted in this Order.  Nothing in this Order prohibits members of a single household or living unit from engaging in Essential Travel, Essential Activities, or Outdoor Activities together.

8.  All travel, including, but not limited to, travel on foot, bicycle, scooter, motorcycle, automobile, or public transit, except Essential Travel, as defined below in Section 16.i, is prohibited.  People may use public transit only for purposes of performing Essential Activities and Outdoor Activities, or to travel to and from work for Essential Businesses or Outdoor Businesses, to maintain Essential Governmental Functions, or to perform Minimum Basic Operations at non-essential businesses.  Transit agencies and people riding on public transit must comply with Social Distancing Requirements, as defined in Section 16.k, to the greatest extent feasible, and personnel and passengers must wear Face Coverings as required by the Face Covering Order.  This Order allows travel into or out of the County only to perform Essential Activities and Outdoor Activities, to operate or perform work for Essential Businesses or Outdoor Businesses, to maintain Essential Governmental Functions, or to perform Minimum Basic Operations at non-essential businesses.

9.  This Order is issued based on evidence of continued significant community transmission of COVID-19 within the County and throughout the Bay Area; continued uncertainty regarding the degree of undetected asymptomatic transmission; scientific evidence and best practices regarding the most effective approaches to slow the transmission of communicable diseases generally and COVID-19 specifically; evidence that the age, condition, and health of a significant portion of the population of the County places it at risk for serious health complications, including death, from COVID-19; and further evidence that others, including younger and otherwise healthy people, are also at risk for serious outcomes.  Due to the outbreak of the COVID-19 disease in the general public, which is now a pandemic according to the World Health Organization, there is a public health emergency throughout the County.  Making the problem worse, some individuals who contract the virus causing the COVID-19 disease have no symptoms or have mild symptoms, which means they may not be aware they carry the virus and are transmitting it to others.  Further, evidence shows that the virus can survive for hours to days on surfaces and be indirectly transmitted between individuals.  Because even people without symptoms can transmit the infection, and because evidence shows the infection is easily spread, gatherings and other direct or indirect interpersonal interactions can result in preventable transmission of the virus.

10.  The collective efforts taken to date regarding this public health emergency have slowed the virus' trajectory, but the emergency and the attendant risk to public health remain significant.  As of April 27, 2020, there are 1,099 confirmed cases of COVID-19 in the County (up from 41 on March 15, 2020, just before the first shelter-in-place order) as well as at least 7,273 confirmed cases (up from 258 confirmed



cases on March 15, 2020) and at least 266 deaths (up from 3 deaths on March 15, 2020) in the seven Bay Area jurisdictions jointly issuing this Order.  The cumulative number of confirmed cases continues to increase, though the rate of increase has slowed in the days leading up to this Order.  Evidence suggests that the restrictions on mobility and social distancing requirements imposed by the Prior Order (and the March 16, 2020 shelter-in-place order) are slowing the rate of increase in community transmission and confirmed cases by limiting interactions among people, consistent with scientific evidence of the efficacy of similar measures in other parts of the country and world.

11. The local health officers who jointly issued the Prior Order are monitoring several key indicators ("COVID-19 Indicators"), which are among the many factors informing their decisions whether to modify existing shelter-in-place restrictions.  Progress on some of these COVID-19 Indicators—specifically related to hospital utilization and capacity—makes it appropriate, at this time, to ease certain restrictions imposed by the Prior Order to allow individuals to engage in a limited set of additional activities and perform work for a limited set of additional businesses associated with the lower risk of COVID-19 transmission, as set forth in Section 16.l  But the continued prevalence of the virus that causes COVID-19 requires most activities and business functions to remain restricted, and those activities that are permitted to occur must do so subject to social distancing and other infection control practices identified by the Health Officer.  Progress on the COVID-19 Indicators will be critical to determinations by the local health officers regarding whether the restrictions imposed by this Order may be further modified.  The Health Officer will continually review whether modifications to the Order are justified based on (1) progress on the COVID-19 Indicators; (2) developments in epidemiological and diagnostic methods for tracing, diagnosing, treating, or testing for COVID-19; and (3) scientific understanding of the transmission dynamics and clinical impact of COVID-19.  The COVID-19 Indicators include, but are not limited to, the following:

   a. The trend of the number of new COVID-19 cases and hospitalizations per day, and the capacity of hospitals and the health system in the County and region, including acute care beds and intensive care unit beds, to provide care for COVID-19 patients and other patients, including during a surge in COVID-19 cases.

   b. The supply of personal protective equipment (PPE) available for hospital staff and other healthcare providers and personnel who need PPE to safely respond to and treat COVID-19 patients.

   c. The ability and capacity to quickly and accurately test persons to determine whether they are COVID-19 positive, especially those in vulnerable populations or high-risk settings or occupations.

   d. The ability to conduct case investigation and contact tracing for the volume of cases and associated contacts that will continue to occur, isolating confirmed cases and quarantining persons who have had contact with confirmed cases.

12. The scientific evidence shows that at this stage of the emergency, it remains essential to continue to slow virus transmission to help (a) protect the most vulnerable; (b) prevent the health care system from being



overwhelmed; (c) prevent long-term chronic health conditions, such as cardiovascular, kidney, and respiratory damage and loss of limbs from blood clotting; and (d) prevent deaths.  Extension of the Prior Order is necessary to slow the spread of the COVID-19 disease, preserving critical and limited healthcare capacity in the County and advancing toward a point in the public health emergency where transmission can be controlled.  At the same time, since the Prior Order was issued the County has made significant progress in expanding health system capacity and healthcare resources and in slowing community transmission of COVID-19.  In light of progress on these indicators, and subject to continued monitoring and potential public health-based responses, it is appropriate at this time to allow additional Essential Businesses and Outdoor Businesses to operate in the County.  Outdoor Businesses, by virtue of their operation outdoors, carry a lower risk of transmission than most indoor businesses.  Because Outdoor Businesses, as defined in section 16.*l*, generally involve only brief and limited person-to-person interactions, they also carry lower risk of transmission than business activities prohibited under the Order, which tend to involve prolonged interactions between individuals in close proximity or in confined spaces where transmission is more likely.  Existing Outdoor Businesses also constitute a relatively small proportion of business activity in the County, and therefore do not substantially increase the volume of interaction between persons in the County when reopened.

13. This Order is issued in accordance with, and incorporates by reference, the March 4, 2020 Proclamation of a State of Emergency issued by Governor Gavin Newsom, the March 3, 2020 Proclamation by the Director of Emergency Services Declaring the Existence of a Local Emergency in the County, the March 3, 2020 Declaration of Local Health Emergency Regarding Novel Coronavirus 2019 (COVID-19) issued by the Health Officer, the March 10, 2020 Resolution of the Board of Supervisors of the County of San Mateo Ratifying and Extending the Declaration of a Local Health Emergency, the April 7, 2020, Board of Supervisors' Resolution Further Extending the Proclamation of Local Health Emergency Until the County Takes Action to Terminate the Local Emergency, the April 15, 2020 Order of the Health Officer No. c19-1b extending and revising the Order restricting visitors to skilled nursing facilities to all residential type facilities, the April 13, 2020 Order of the Health Officer No. c19-3c extending and revising the School Operations Modification Order, the March 24, 2020 Order of the Health officer No. c19-4 directing all laboratories conducting COVID-19 diagnostic tests to report COVID-19 test information, the April 6, 2020 Orders of the Health Officer Nos. c19-6 and c19-7 requiring isolation for COVID-19 positive individuals and quarantine of Close Contacts of COVID-19 positive individuals, and the April 18, 2020 Order of the Health Officer No. c19-8 requiring members of the public and workers to wear face coverings.

14. This Order comes after the release of substantial guidance from the Health Officer, the Centers for Disease Control and Prevention, the California Department of Public Health, and other public health officials throughout the United States and around the world, including the widespread adoption of orders imposing similar social distancing requirements and mobility restrictions to combat the spread and harms of COVID-19.  The Health Officer will continue to assess the quickly evolving situation and may modify or extend this Order, or issue additional Orders, related to COVID-19, as changing circumstances dictate.

15. This Order is also issued in light of the March 19, 2020 Order of the State Public Health Officer (the "State Shelter Order"), which set baseline statewide restrictions on non-residential business activities,



effective until further notice, as well as the Governor's March 19, 2020 Executive Order N-33-20 directing California residents to follow the State Shelter Order. The State Shelter Order was complementary to the Prior Order and is complementary to this Order. This Order adopts in certain respects more stringent restrictions addressing the particular facts and circumstances in this County, which are necessary to control the public health emergency as it is evolving within the County and the Bay Area. Without this tailored set of restrictions that further reduces the number of interactions between persons, scientific evidence indicates that the public health crisis in the County will worsen to the point at which it may overtake available health care resources within the County and increase the death rate. Also, this Order enumerates additional restrictions on non-work-related travel not covered by the State Shelter Order; sets forth mandatory Social Distancing Requirements for all individuals in the County when engaged in activities outside their residences; and adds a mechanism to ensure that all businesses with facilities that are allowed to operate under the Order comply with the Social Distancing Requirements. Where a conflict exists between this Order and any state public health order related to the COVID-19 pandemic, the most restrictive provision controls. Consistent with California Health and Safety Code section 131080 and the Health Officer Practice Guide for Communicable Disease Control in California, except where the State Health Officer may issue an order expressly directed at this Order and based on a finding that a provision of this Order constitutes a menace to public health, any more restrictive measures in this Order continue to apply and control in this County. In addition, to the extent any federal guidelines allow activities that are not allowed by this Order, this Order controls and those activities are not allowed.

16. <u>Definitions and Exemptions</u>.

   a. For the purposes of this Order, individuals may leave their residence only to perform the following "Essential Activities." But people at high risk of severe illness from COVID-19 and people who are sick are strongly urged to stay in their residence to the extent possible, except as necessary to seek or provide medical care or Essential Governmental Functions. Essential Activities are:

      i. To engage in activities or perform tasks important to their health and safety, or to the health and safety of their family or household members (including pets), such as, by way of example only and without limitation, obtaining medical supplies or medication, or visiting a health care professional.

      ii. To obtain necessary services or supplies for themselves and their family or household members, or to deliver those services or supplies to others, such as, by way of example only and without limitation, canned food, dry goods, fresh fruits and vegetables, pet supply, fresh meats, fish, and poultry, and any other household consumer products, products needed to work from home, or products necessary to maintain the habitability, sanitation, and operation of residences.

      iii. To engage in outdoor recreation activity, including, by way of example and without limitation, walking, hiking, bicycling, and running, in compliance with Social Distancing Requirements and with the following limitations:

         1. Outdoor recreation activity must take place within 10 miles of a person's residence. For clarity, this restriction applies not only to San Mateo County residents, but equally to residents of other counties who wish to travel to the

6



County for outdoor recreation. While residents of other counties are not prohibited from entering the County for other activities allowed by the Order, this provision does, consistent with the State's Shelter in Place Order issued on March 19, 2020, prohibit those living more than 10 miles from San Mateo County from traveling to the County for recreation;

2. Outdoor recreation activity at parks, beaches, and other open spaces must comply with any restrictions on access and use established by the Health Officer, government, or other entity that manages such area to reduce crowding and risk of transmission of COVID-19.  Such restrictions may include, but are not limited to, restricting the number of entrants, closing the area to vehicular access and parking, or closure to all public access. Parks, beaches, and other open spaces that remain open must be actively monitored and managed by the appropriate authority;

3. Beach parking must be closed to the public. Further, local authorities are authorized and encouraged to close and/or prohibit as much parking in areas adjacent to beaches as necessary to prevent crowds that cannot feasibly comply with the requirements of this Order.  Additionally, the following items are prohibited for use or possession on a beach: umbrellas; shade structures; tents; BBQs and grills; coolers; chairs, hammocks, and other conveyances designed to sit and or lounge;

4. Use of outdoor recreational areas and facilities with high-touch equipment or that encourage gathering, including, but not limited to, playgrounds, gym equipment, climbing walls, picnic areas, dog parks, pools, spas, and barbecue areas, is prohibited outside of residences, and all such areas shall be closed to public access including by signage and, as appropriate, by physical barriers;

5. Sports or activities that include the use of shared equipment or physical contact between participants may only be engaged in by members of the same household or living unit;

6. Use of shared outdoor facilities for recreational activities that may occur outside of residences consistent with the restrictions set forth in subsections 1 through 5, above, including, but not limited to, golf courses, skate parks, and athletic fields, must, before they may begin, be in compliance with social distancing and health/safety protocols posted at the site and any other restrictions, including prohibitions, on access and use established by the Health Officer, government, or other entity that manages such area to reduce crowding and risk of transmission of COVID-19; and

iv. To perform work for or access an Essential Business, Outdoor Business, or to otherwise carry out activities specifically permitted in this Order, including Minimum Basic Operations, as defined in this Section.

v. To provide necessary care for a family member or pet in another household who has no other source of care.

vi. To attend a funeral with no more than 10 individuals present.

7



SAN MATEO COUNTY HEALTH
PUBLIC HEALTH,
POLICY & PLANNING

     vii.  To move residences.  When moving into or out of the Bay Area region, individuals are strongly urged to quarantine for 14 days.  To quarantine, individuals should follow the guidance of the United States Centers for Disease Control and Prevention.

b.  For the purposes of this Order, individuals may leave their residence to work for, volunteer at, or obtain services at "Healthcare Operations," including, without limitation, hospitals, clinics, COVID-19 testing locations, dentists, pharmacies, blood banks and blood drives, pharmaceutical and biotechnology companies, other healthcare facilities, healthcare suppliers, home healthcare services providers, mental health providers, or any related and/or ancillary healthcare services.  "Healthcare Operations" also includes veterinary care and all healthcare services provided to animals.  This exemption for Healthcare Operations shall be construed broadly to avoid any interference with the delivery of healthcare, broadly defined.   "Healthcare Operations" excludes fitness and exercise gyms and similar facilities.

c.  For the purposes of this Order, individuals may leave their residence to provide any services or perform any work necessary to the operation and maintenance of "Essential Infrastructure," including airports, utilities (including water, sewer, gas, and electrical), oil refining, roads and highways, public transportation, solid waste facilities (including collection, removal, disposal, recycling, and processing facilities), cemeteries, mortuaries, crematoriums, and telecommunications systems (including the provision of essential global, national, and local infrastructure for internet, computing services, business infrastructure, communications, and web-based services).

d.  For the purposes of this Order, all first responders, emergency management personnel, emergency dispatchers, court personnel, and law enforcement personnel, and others who need to perform essential services are categorically exempt from this Order to the extent they are performing those essential services.  Further, nothing in this Order shall prohibit any individual from performing or accessing "Essential Governmental Functions," as determined by the governmental entity performing those functions in the County.  Each governmental entity shall identify and designate appropriate personnel, volunteers, or contractors to continue providing and carrying out any Essential Governmental Functions, including the hiring or retention of new personnel or contractors to perform such functions.  Each governmental entity and its contractors must employ all necessary emergency protective measures to prevent, mitigate, respond to, and recover from the COVID-19 pandemic, and all Essential Governmental Functions shall be performed in compliance with Social Distancing Requirements to the greatest extent feasible.

e.  For the purposes of this Order, a "business" includes any for-profit, non-profit, or educational entity, whether a corporate entity, organization, partnership or sole proprietorship, and regardless of the nature of the service, the function it performs, or its corporate or entity structure.

f.  For the purposes of this Order, "Essential Businesses" are:
     i.  Healthcare Operations and businesses that operate, maintain, or repair Essential Infrastructure;



ii.   Grocery stores, certified farmers' markets, farm and produce stands, supermarkets, food banks, convenience stores, and other establishments engaged in the retail sale of unprepared food, canned food, dry goods, non-alcoholic beverages, fresh fruits and vegetables, pet supply, fresh meats, fish, and poultry, as well as hygienic products and household consumer products necessary for personal hygiene or the habitability, sanitation, or operation of residences.  The businesses included in this subparagraph (ii) include establishments that sell multiple categories of products provided that they sell a significant amount of essential products identified in this subparagraph, such as liquor stores that also sell a significant amount of food.

iii.   Food cultivation, including farming, livestock, and fishing;

iv.   Businesses that provide food, shelter, and social services, and other necessities of life for economically disadvantaged or otherwise needy individuals;

v.   Construction, but only as permitted under the State Shelter Order and only pursuant to the Construction Safety Protocols listed in Appendix B and incorporated into this Order by this reference.  Public works projects shall also be subject to Appendix B, except if other protocols are specified by the Health Officer;

vi.   Newspapers, television, radio, and other media services;

vii.   Gas stations and auto-supply, auto-repair (including, but not limited to, for cars, trucks, motorcycles and motorized scooters), and automotive dealerships, but only for the purpose of providing auto-supply and auto-repair services.  This subparagraph (vii) does not restrict the on-line purchase of automobiles if they are delivered to a residence or Essential Business;

viii.   Bicycle repair and supply shops;

ix.   Banks and related financial institutions;

x.   Service providers that enable real estate transactions (including rentals, leases, and home sales), including, but not limited to, real estate agents, escrow agents, notaries, and title companies, provided that appointments and other residential real estate viewings must only occur virtually or, if a virtual viewing is not feasible, by appointment with no more than two visitors at a time residing within the same household or living unit and one individual showing the unit (except that in person visits are not allowed when the occupant is present in the residence);

xi.   Hardware stores;

xii.   Plumbers, electricians, exterminators, and other service providers who provide services that are necessary to maintaining the habitability, sanitation, or operation of residences and Essential Businesses;

xiii.   Businesses providing mailing and shipping services, including post office boxes;

xiv.   Educational institutions—including public and private K-12 schools, colleges, and universities—for purposes of facilitating distance learning or performing essential functions, or as allowed under subparagraph xxvi, provided that social distancing of six feet per person is maintained to the greatest extent possible;

xv.   Laundromats, drycleaners, and laundry service providers;

xvi.   Restaurants and other facilities that prepare and serve food, but only for delivery or carry out.  Schools and other entities that typically provide free food services to students or members of the public may continue to do so under this Order on the condition that the

9



food is provided to students or members of the public on a pick-up and take-away basis only.  Schools and other entities that provide food services under this exemption shall not permit the food to be eaten at the site where it is provided, or at any other gathering site;

xvii.   Funeral home providers, mortuaries, cemeteries, and crematoriums, to the extent necessary for the transport, preparation, or processing of bodies or remains;

xviii.   Businesses that supply other Essential Businesses with the support or supplies necessary to operate, but only to the extent that they support or supply these Essential Businesses. This exemption shall not be used as a basis for engaging in sales to the general public from retail storefronts;

xix.   Businesses that have the primary function of shipping or delivering groceries, food, or other goods directly to residences or businesses.  This exemption shall not be used to allow for manufacturing or assembly of non-essential products or for other functions besides those necessary to the delivery operation;

xx.   Airlines, taxis, rental car companies, rideshare services (including shared bicycles and scooters), and other private transportation providers providing transportation services necessary for Essential Activities and other purposes expressly authorized in this Order;

xxi.   Home-based care for seniors, adults, children, and pets;

xxii.   Residential facilities and shelters for seniors, adults, and children;

xxiii.   Professional services, such as legal, notary, or accounting services, when necessary to assist in compliance with non-elective, legally required activities or in relation to death or incapacity;

xxiv.   Services to assist individuals in finding employment with Essential Businesses;

xxv.   Moving services that facilitate residential or commercial moves that are allowed under this Order; and

xxvi.   Childcare establishments, summer camps, and other educational or recreational institutions or programs providing care or supervision for children of all ages that enable owners, employees, volunteers, and contractors for Essential Businesses, Essential Governmental Functions, Outdoor Businesses, or Minimum Basic Operations to work are allowed under this Order.  To the extent possible, these operations must comply with the following conditions:

1.   They must be carried out in stable groups of 12 or fewer children ("stable" means that the same 12 or fewer children are in the same group each day).
2.   Children shall not change from one group to another.
3.   If more than one group of children is at one facility, each group shall be in a separate room.  Groups shall not mix with each other.
4.   Providers or educators shall remain solely with one group of children.

The Health Officer will carefully monitor the changing public health situation as well as any changes to the State Shelter Order.  In the event that the State relaxes restrictions on childcare and related institutions and programs, the Health Officer will consider whether to similarly relax the restrictions imposed by this Order.

g.   For the purposes of this Order, "Minimum Basic Operations" means the following activities for businesses, provided that owners, personnel, and contractors comply with Social Distancing Requirements as defined this Section, to the extent possible, while carrying out such operations:



       i.  The minimum necessary activities to maintain and protect the value of the business's inventory and facilities; ensure security, safety, and sanitation; process payroll and employee benefits; provide for the delivery of existing inventory directly to residences or businesses; and related functions.  For clarity, this section does not permit businesses to provide curbside pickup to customers.

      ii.  The minimum necessary activities to facilitate owners, personnel, and contractors of the business being able to continue to work remotely from their residences, and to ensure that the business can deliver its service remotely.

h.  For the purposes of this Order, all businesses that are operating at facilities in the County visited or used by the public or personnel must, as a condition of such operation, prepare and post a "Social Distancing Protocol" for each of these facilities; provided, however, that construction activities shall instead comply with the Construction Project Safety Protocols set forth in Appendix B and not the Social Distancing Protocol.  The Social Distancing Protocol must be substantially in the form attached to this Order as Appendix A, and it must be updated from prior versions to address new requirements listed in this Order or in related guidance or directives from the Health Officer.  The Social Distancing Protocol must be posted at or near the entrance of the relevant facility, and shall be easily viewable by the public and personnel.  A copy of the Social Distancing Protocol must also be provided to each person performing work at the facility. All businesses subject to this paragraph shall implement the Social Distancing Protocol and provide evidence of its implementation to any authority enforcing this Order upon demand.  The Social Distancing Protocol must explain how the business is achieving the following, as applicable:

       i.  Limiting the number of people who can enter into the facility at any one time to ensure that people in the facility can easily maintain a minimum six-foot distance from one another at all times, except as required to complete Essential Business activity;

      ii.  Requiring face coverings to be worn by all persons entering the facility, other than those exempted from face covering requirements (e.g. young children);

     iii.  Where lines may form at a facility, marking six-foot increments at a minimum, establishing where individuals should stand to maintain adequate social distancing;

     iv.  Providing hand sanitizer, soap and water, or effective disinfectant at or near the entrance of the facility and in other appropriate areas for use by the public and personnel, and in locations where there is high-frequency employee interaction with members of the public (e.g. cashiers);

      v.  Providing for contactless payment systems or, if not feasible to do so, the providing for disinfecting all payment portals, pens, and styluses after each use;

     vi.  Regularly disinfecting other high-touch surfaces;

    vii.  Posting a sign at the entrance of the facility informing all personnel and customers that they should: avoid entering the facility if they have any COVID-19 symptoms; maintain a minimum six-foot distance from one another; sneeze and cough into one's elbow; not shake hands or engage in any unnecessary physical contact; and

    viii.  Any additional social distancing measures being implemented (see the Centers for Disease Control and Prevention's guidance at: https://www.cdc.gov/coronavirus/2019-ncov/community/guidance-business-response.html).



SAN MATEO COUNTY HEALTH
**PUBLIC HEALTH,**
**POLICY & PLANNING**

i.  For the purposes of this Order, "Essential Travel" means travel for any of the following purposes:

    i.  Travel related to the provision of or access to Essential Activities, Essential Governmental Functions, Essential Businesses, Minimum Basic Operations, Outdoor Activities, and Outdoor Businesses.

    ii.  Travel to care for any elderly, minors, dependents, or persons with disabilities.

    iii.  Travel to or from educational institutions for purposes of receiving materials for distance learning, for receiving meals, and any other related services.

    iv.  Travel to return to a place of residence from outside the County.

    v.  Travel required by law enforcement or court order.

    vi.  Travel required for non-residents to return to their place of residence outside the County. Individuals are strongly encouraged to verify that their transportation out of the County remains available and functional prior to commencing such travel.

    vii.  Travel to manage after-death arrangements and burial.

    viii.  Travel to arrange for shelter or avoid homelessness.

    ix.  Travel to avoid domestic violence or child abuse.

    x.  Travel for parental custody arrangements.

    xi.  Travel to a place to temporarily reside in a residence or other facility to avoid potentially exposing others to COVID-19, such as a hotel or other facility provided by a governmental authority for such purposes.

j.  For purposes of this Order, "residences" include hotels, motels, shared rental units, and similar facilities.  Residences also include living structures and outdoor spaces associated with those living structures, such as patios, porches, backyards, and front yards that are only accessible to a single family or household unit.

k.  For purposes of this Order, "Social Distancing Requirements" means:

    i.  Maintaining at least six-foot social distancing from individuals who are not part of the same household or living unit;

    ii.  Frequently washing hands with soap and water for at least 20 seconds, or using hand sanitizer that is recognized by the Centers for Disease Control and Prevention as effective in combatting COVID-19;

    iii.  Covering coughs and sneezes with a tissue or fabric or, if not possible, into the sleeve or elbow (but not into hands);

    iv.  Wearing a face covering when out in public, consistent with the orders or guidance of the Health Officer; and

    v.  Avoiding all social interaction outside the household when sick with a fever, cough, or other COVID-19 symptoms.

All individuals must strictly comply with Social Distancing Requirements, except to the limited extent necessary to provide care (including childcare, adult or senior care, care to individuals with special needs, and patient care); as necessary to carry out the work of Essential Businesses, Essential Governmental Functions, or provide for Minimum Basic Operations; or as otherwise

12



expressly provided in this Order. Outdoor Activities and Outdoor Businesses must strictly adhere to these Social Distancing Requirements.

    l. For purposes of this Order, "Outdoor Businesses" means:
        i. The following businesses that normally operated primarily outdoors prior to March 16, 2020 and where there is the ability to fully maintain social distancing of at least six feet between all persons:
            1. Businesses primarily operated outdoors, such as wholesale and retail plant nurseries, agricultural operations, and garden centers.
            2. Service providers that primarily provide outdoor services, such as landscaping and gardening services, and environmental site remediation services.

        For clarity, "Outdoor Businesses" do not include outdoor restaurants, cafes, or bars.

    m. For purposes of this Order, "Outdoor Activities" means:
        i. To obtain goods, services, or supplies from, or perform work for, an Outdoor Business.
        ii. To engage in outdoor recreation as permitted in Section 16.a.

17. Government agencies and other entities operating shelters and other facilities that house or provide meals or other necessities of life for individuals experiencing homelessness must take appropriate steps to help ensure compliance with Social Distancing Requirements, including adequate provision of hand sanitizer. Also, individuals experiencing homelessness who are unsheltered and living in encampments should, to the maximum extent feasible, abide by 12 foot by 12 foot distancing for the placement of tents, and government agencies should provide restroom and hand washing facilities for individuals in such encampments as set forth in Centers for Disease Control and Prevention Interim Guidance Responding to Coronavirus 2019 (COVID-19) Among People Experiencing Unsheltered Homelessness (https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/unsheltered-homelessness.html).

18. Pursuant to Government Code sections 26602 and 41601 and Health and Safety Code section 101029, the Health Officer requests that the Sheriff and all chiefs of police in the County ensure compliance with and enforce this Order. The violation of any provision of this Order constitutes an imminent threat and menace to public health, constitutes a public nuisance, and is punishable by fine, imprisonment, or both.

19. This Order shall become effective at 11:59 p.m. on May 3, 2020 and will continue to be in effect until 11:59 p.m. on May 31, 2020, or until it is extended, rescinded, superseded, or amended in writing by the Health Officer. However, while this Order is being extended for four weeks, it is being done so, in its current form, reluctantly. It is clear San Mateo County is moving into a different stage of this crisis and that we will require a different framework to balance many competing interests. An Order based on a framework of essential and non-essential business categories was absolutely necessary and appropriate in the earliest stages of this crisis. I am grateful that the State issued an Order based on this framework several days after we did. If we continue to have the public's cooperation, I have great hope that the COVID-19 Indicators will continue to improve and this Order can be revised before May 31, 2020 in a manner that focuses more on behavior (social distancing, face masks, etc.) and risk of disease transmission in contrast to categories of businesses (essential vs. non-essential). However, for me to



issue such an Order, the State first needs to revise its Order to allow it.  While, the Governor has indicated that the State will do so in weeks, not months, the actual date is uncertain.  Modification by the State of its Order is a pre-requisite for such a change here.

20. Copies of this Order shall promptly be: (1) made available at 400 County Center, Redwood City, CA 94063; (2) posted on the County Public Health Department website (www.smchealth.org); and (3) provided to any member of the public requesting a copy of this Order.

21. If any provision of this Order or its application to any person or circumstance is held to be invalid, the remainder of the Order, including the application of such part or provision to other persons or circumstances, shall not be affected and shall continue in full force and effect.  To this end, the provisions of this Order are severable.

**IT IS SO ORDERED:**

Scott Morrow MD, MPH                                    Dated: April 29, 2020
Health Officer of the County of San Mateo


Attachments:   Appendix A – Social Distancing Protocol
                        Appendix B1 – Small Construction Project Safety Protocol
                        Appendix B2 – Large Construction Project Safety Protocol



**SAN MATEO COUNTY HEALTH**
**PUBLIC HEALTH,**
**POLICY & PLANNING**

Dr. Scott Morrow, Health Officer
Cassius Lockett, PhD, Director

Public Health, Policy & Planning
225 37th Avenue
San Mateo, CA 94403
smchealth.org

**APPENDIX A: Social Distancing Protocol (Updated April 29, 2020)**

Business name: Click or tap here to enter text.

Facility Address: Click or tap here to enter text.

Approximate gross square footage of space open to the public: Click or tap here to enter text.

**Businesses must implement all applicable measures listed below, and be prepared to explain why any measure that is not implemented is inapplicable to the business.**

_**Signage**_:

☐ Signage at each public entrance of the facility to inform all employees and customers that they should: avoid entering the facility if they have COVID-19 symptoms; maintain a minimum six-foot distance from one another; sneeze and cough into a cloth or tissue or, if not available, into one's elbow; wear face coverings, as appropriate; and not shake hands or engage in any unnecessary physical contact.

☐ Signage posting a copy of the Social Distancing Protocol at each public entrance to the facility.

_**Measures To Protect Employee Health (check all that apply to the facility)**_:

☐ Everyone who can carry out their work duties from home has been directed to do so.

☐ All employees have been told not to come to work if sick.

☐ Symptom checks are being conducted before employees may enter the work space.

☐ Employees are required to wear face coverings, as appropriate.

☐ All desks or individual work stations are separated by at least six feet.

☐ Break rooms, bathrooms, and other common areas are being disinfected frequently, on the following schedule:
    ☐ Break rooms:
    ☐ Bathrooms:
    ☐ Other (Click or tap here to enter text.): Click or tap here to enter text.

☐ Disinfectant and related supplies are available to all employees at the following location(s): Click or tap here to enter text.

☐ Hand sanitizer effective against COVID-19 is available to all employees at the following location(s): Click or tap here to enter text.

☐ Soap and water are available to all employees at the following location(s): Click or tap here to enter text.

☐ Copies of this Protocol have been distributed to all employees.



**SAN MATEO COUNTY HEALTH**
**PUBLIC HEALTH,**
**POLICY & PLANNING**

☐ Optional—Describe other measures: Click or tap here to enter text.

***Measures To Prevent Crowds From Gathering (check all that apply to the facility):***

☐ Limit the number of customers in the store at any one time to Click or tap here to enter text., which allows for customers and employees to easily maintain at least six-foot distance from one another at all practicable times.

☐ Post an employee at the door to ensure that the maximum number of customers in the facility set forth above is not exceeded.

☐ Placing per-person limits on goods that are selling out quickly to reduce crowds and lines. Explain: Click or tap here to enter text.

☐ Optional—Describe other measures: Click or tap here to enter text.

***Measures To Keep People At Least Six Feet Apart (check all that apply to the facility)***

☐ Placing signs outside the store reminding people to be at least six feet apart, including when in line.

☐ Placing tape or other markings at least six feet apart in customer line areas inside the store and on sidewalks at public entrances with signs directing customers to use the markings to maintain distance.

☐ Separate order areas from delivery areas to prevent customers from gathering.

☐ All employees have been instructed to maintain at least six feet distance from customers and from each other, except employees may momentarily come closer when necessary to accept payment, deliver goods or services, or as otherwise necessary.

☐ Optional—Describe other measures: Click or tap here to enter text.

***Measures To Prevent Unnecessary Contact (check all that apply to the facility):***

☐ Preventing people from self-serving any items that are food-related.

☐ Lids for cups and food-bar type items are provided by staff; not to customers to grab.

☐ Bulk-item food bins are not available for customer self-service use.

☐ Not permitting customers to bring their own bags, mugs, or other reusable items from home.

☐ Providing for contactless payment systems or, if not feasible, sanitizing payment systems regularly. Describe: Click or tap here to enter text.

☐ Optional—Describe other measures (e.g. providing senior-only hours): Click or tap here to enter text.

***Measures To Increase Sanitization (check all that apply to the facility):***

☐ Disinfecting wipes that are effective against COVID-19 are available near shopping carts and shopping baskets.



☐ Employee(s) assigned to disinfect carts and baskets regularly.

☐ Hand sanitizer, soap and water, or effective disinfectant is available to the public at or near the entrance of the facility, at checkout counters, and anywhere else where people have direct interactions.

☐ Disinfecting all payment portals, pens, and styluses after each use.

☐ Disinfecting all high-contact surfaces frequently.

☐ Optional—Describe other measures: Click or tap here to enter text.

\* Any additional measures not included here should be listed on separate pages and attached to this document.

**You may contact the following person with any questions or comments about this protocol:**

**Name:** Click or tap here to enter text.          **Phone number:** Click or tap here to enter text.



SAN MATEO COUNTY HEALTH
**PUBLIC HEALTH,
POLICY & PLANNING**

Dr. Scott Morrow, Health Officer
**Cassius Lockett, PhD,** Director

**Public Health, Policy & Planning**
225 37th Avenue
San Mateo, CA 94403
smchealth.org

## APPENDIX B-1: Small Construction Project Safety Protocol

1.  Any construction project meeting any of the following specifications is subject to this Small Construction Project Safety Protocol ("SCP Protocol"), including public works projects unless otherwise specified by the Health Officer:

    a.  For residential projects, any single-family, multi-family, senior, student, or other residential construction, renovation, or remodel project consisting of 10 units or less. This SCP Protocol does not apply to construction projects where a person is performing construction on their current residence either alone or solely with members of their own household.

    b.  For commercial projects, any construction, renovation, or tenant improvement project consisting of 20,000 square feet of floor area or less.

    c.  For mixed-use projects, any project that meets both of the specifications in subsection 1.a and 1.b.

    d.  All other construction projects not subject to the Large Construction Project Safety Protocol set forth in Appendix B-2.

2.  The following restrictions and requirements must be in place at all construction job sites subject to this SCP Protocol:

    a.  Comply with all applicable and current laws and regulations including but not limited to OSHA and Cal-OSHA. If there is any conflict, difference, or discrepancy between or among applicable laws and regulations and/or this SCP Protocol, the stricter standard shall apply.

    b.  Designate a site-specific COVID-19 supervisor or supervisors to enforce this guidance. A designated COVID-19 supervisor must be present on the construction site at all times during construction activities. A COVID-19 supervisor may be an on-site worker who is designated to serve in this role.

    c.  The COVID-19 supervisor must review this SCP Protocol with all workers and visitors to the construction site.

    d.  Establish a daily screening protocol for arriving staff to ensure that potentially infected staff do not enter the construction site. If workers leave the jobsite and return the same day, establish a cleaning and decontamination protocol prior to entry and exit of the jobsite. Post the daily screening protocol at all entrances and exits to



SAN MATEO COUNTY HEALTH
PUBLIC HEALTH,
POLICY & PLANNING

e.  the jobsite.  More information on screening can be found online
    at:  https://www.cdc.gov/coronavirus/2019-ncov/community/index.html.

f.  In the event of a confirmed case of COVID-19 at any jobsite, the following must take
    place:
    i.   Immediately remove the infected individual from the jobsite with directions to
         seek medical care.
    ii.  Each location the infected worker was at must be decontaminated and sanitized
         by an outside vendor certified in hazmat clean ups, and work in these locations
         must cease until decontamination and sanitization is complete.
    iii. The County Public Health Department must be notified immediately and any
         additional requirements per the County health officials must be completed,
         including full compliance with any tracing efforts by the County.

g.  Practice social distancing by maintaining a minimum six-foot distance between
    workers at all times, except as strictly necessary to carry out a task associated with the
    construction project.

h.  Where construction work occurs within an occupied residential unit, separate work
    areas must be sealed off from the remainder of the unit with physical barriers such as
    plastic sheeting or closed doors sealed with tape to the extent feasible.  If possible,
    workers must access the work area from an alternative entry/exit door to the entry/exit
    door used by residents.  Available windows and exhaust fans must be used to ventilate
    the work area.  If residents have access to the work area between workdays, the work
    area must be cleaned and sanitized at the beginning and at the end of workdays.  Every
    effort must be taken to minimize contact between workers and residents, including
    maintaining a minimum of six feet of social distancing at all times.

i.  Where construction work occurs within common areas of an occupied residential or
    commercial building or a mixed-use building in use by on-site employees or residents,
    separate work areas must be sealed off from the rest of the common areas with physical
    barriers such as plastic sheeting or closed doors sealed with tape to the extent feasible.
    If possible, workers must access the work area from an alternative building entry/exit
    door to the building entry/exit door used by residents or other users of the building.
    Every effort must be taken to minimize contact between worker and building residents
    and users, including maintaining a minimum of six feet of social distancing at all times.

j.  Prohibit gatherings of any size on the jobsite, including gatherings for breaks or eating,
    except for meetings regarding compliance with this protocol or as strictly necessary to
    carry out a task associated with the construction project.

k.  Cal-OSHA requires employers to provide water, which should be provided in single-
    serve containers.  Sharing of any of any food or beverage is strictly prohibited and if
    sharing is observed, the worker must be sent home for the day.

l.  Provide personal protective equipment ("PPE") specifically for use in construction,
    including gloves, goggles, face shields, and face coverings as appropriate for the



SAN MATEO COUNTY HEALTH
**PUBLIC HEALTH,**
**POLICY & PLANNING**

m.  activity being performed.  At no time may a contractor secure or use medical-grade PPE unless required due to the medical nature of a jobsite.  Face coverings must be worn in compliance with the Health Officer's Order No. C19-8, dated April 18, 2020, or any subsequently issued or amended order.

n.  Strictly control "choke points" and "high-risk areas" where workers are unable to maintain six-foot social distancing and prohibit or limit use to ensure that six-foot distance can easily be maintained between individuals.

o.  Minimize interactions and maintain social distancing with all site visitors, including delivery workers, design professionals and other project consultants, government agency representatives, including building and fire inspectors, and residents at residential construction sites.

p.  Stagger trades as necessary to reduce density and allow for easy maintenance of a minimum six-foot separation.

q.  Discourage workers from using others' desks, work tools, and equipment.  If more than one worker uses these items, the items must be cleaned and disinfected with disinfectants that are effective against COVID-19 in between use by each new worker. Prohibit sharing of PPE.

r.  If hand washing facilities are not available at the jobsite, place portable wash stations or hand sanitizers that are effective against COVID-19 at entrances to the jobsite and in multiple locations dispersed throughout the jobsite as warranted.

s.  Clean and sanitize any hand washing facilities, portable wash stations, jobsite restroom areas, or other enclosed spaces daily with disinfectants that are effective against COVID-19.  Frequently clean and disinfect all high touch areas, including entry and exit areas, high traffic areas, restrooms, hand washing areas, , tools, and equipment.

t.  Maintain a daily attendance log of all workers and visitors that includes contact information, including name, phone number, address, and e-mail.

u.  Post a notice in an area visible to all workers and visitors instructing workers and visitors to do the following:
   i.   Do not touch your face with unwashed hands or with gloves.
   ii.  Frequently wash your hands with soap and water for at least 20 seconds or use hand sanitizer with at least 60% alcohol.
   iii. Clean and disinfect frequently touched objects and surfaces such as work stations, keyboards, telephones, handrails, machines, shared tools, elevator control buttons, and doorknobs.
   iv.  Cover your mouth and nose when coughing or sneezing, or cough or sneeze into the crook of your arm at your elbow/sleeve.
   v.   Do not enter the jobsite if you have a fever, cough, or other COVID-19 symptoms.  If you feel sick, or have been exposed to anyone who is sick, stay at home.



SAN MATEO COUNTY HEALTH
**PUBLIC HEALTH,
POLICY & PLANNING**

vi.   Constantly observe your work distances in relation to other staff.  Maintain the recommended minimum six feet at all times. If not possible, wear the necessary PPE for working in close proximity to another person.

vii.   Do not carpool to and from the jobsite with anyone except members of your own household unit, or as necessary for workers who have no alternative means of transportation.

viii.   Do not share phones or PPE.



Dr. Scott Morrow, Health Officer
Cassius Lockett, PhD, Director

Public Health, Policy & Planning
225 37th Avenue
San Mateo, CA 94403
smchealth.org

**APPENDIX B-2: Large Construction Project Safety Protocol**

1. Any construction project meeting any of the following specifications is subject to this Large Construction Project Safety Protocol ("LCP Protocol"), including public works projects unless otherwise specified by the Health Officer:

    a. For residential construction projects, any single-family, multi-family, senior, student, or other residential construction, renovation, or remodel project consisting of more than 10 units.

    b. For commercial construction projects, any construction, renovation, or tenant improvement project consisting of more than 20,000 square feet of floor area.

    c. For construction of Essential Infrastructure, as defined in section 16.c of the Order, any project that requires five or more workers at the jobsite at any one time.

2. The following restrictions and requirements must be in place at all construction job sites subject to this LCP Protocol:

    a. Comply with all applicable and current laws and regulations including but not limited to OSHA and Cal-OSHA. If there is any conflict, difference or discrepancy between or among applicable laws and regulations and/or this LCP Protocol, the stricter standard will apply.

    b. Prepare a new or updated Site-Specific Health and Safety Plan to address COVID-19-related issues, post the Plan on-site at all entrances and exits, and produce a copy of the Plan to County governmental authorities upon request. The Plan must be translated as necessary to ensure that all non-English speaking workers are able to understand the Plan.

    c. Provide personal protective equipment (PPE) specifically for use in construction, including gloves, goggles, face shields, and face coverings as appropriate for the activity being performed. At no time may a contractor secure or use medical-grade PPE, unless required due to the medical nature of a job site. Face Coverings must be worn in compliance with the Health Officer's Order No. C19-8, dated April 18, 2020, or any subsequently issued or amended order.

    d. Ensure that employees are trained in the use of PPE. Maintain and make available a log of all PPE training provided to employees and monitor all employees to ensure proper use of the PPE.

    e. Prohibit sharing of PPE.





f. Implement social distancing requirements including, at minimum:

    i. Stagger stop- and start-times for shift schedules to reduce the quantity of workers at the jobsite at any one time to the extent feasible.

    ii. Stagger trade-specific work to minimize the quantity of workers at the jobsite at any one time.

    iii. Require social distancing by maintaining a minimum six-foot distance between workers at all times, except as strictly necessary to carry out a task associated with the project.

    iv. Prohibit gatherings of any size on the jobsite, except for safety meetings or as strictly necessary to carry out a task associated with the project.

    v. Strictly control "choke points" and "high-risk areas" where workers are unable to maintain minimum six-foot social distancing and prohibit or limit use to ensure that minimum six-foot distancing can easily be maintained between workers.

    vi. Minimize interactions and maintain social distancing with all site visitors, including delivery workers, design professionals and other project consultants, government agency representatives, including building and fire inspectors, and residents at residential construction sites.

    vii. Prohibit workers from using others' phones or desks.  Any work tools or equipment that must be used by more than one worker must be cleaned with disinfectants that are effective against COVID-19 before use by a new worker.

    viii. Place wash stations or hand sanitizers that are effective against COVID-19 at entrances to the jobsite and in multiple locations dispersed throughout the jobsite as warranted.

    ix. Maintain a daily attendance log of all workers and visitors that includes contact information, including name, address, phone number, and email.

    x. Post a notice in an area visible to all workers and visitors instructing workers and visitors to do the following:

        1. Do not touch your face with unwashed hands or with gloves.

        2. Frequently wash your hands with soap and water for at least 20 seconds or use hand sanitizer with at least 60% alcohol.

        3. Clean and disinfect frequently touched objects and surfaces such as workstations, keyboards, telephones, handrails, machines, shared tools, elevator control buttons, and doorknobs.

        4. Cover your mouth and nose when coughing or sneezing or cough or sneeze into the crook of your arm at your elbow/sleeve.

        5. Do not enter the jobsite if you have a fever, cough, or other COVID-19 symptoms.  If you feel sick, or have been exposed to anyone who is sick, stay at home.

        6. Constantly observe your work distances in relation to other staff. Maintain the recommended minimum six-feet distancing at all times. If not possible, weare the necessary PPE for working in close proximity to another person.

        7. Do not share phones or PPE.

    xi. The notice in section 2.f.x must be translated as necessary to ensure that all non-English speaking workers are able to understand the notice.



g.  Implement cleaning and sanitization practices in accordance with the following:
   i.   Frequently clean and sanitize, in accordance with CDC guidelines, all high-traffic and high-touch areas including, at a minimum: meeting areas, jobsite lunch and break areas, entrances and exits to the jobsite, jobsite trailers, hand-washing areas, tools, equipment, jobsite restroom areas, stairs, elevators, and lifts.
   ii.  Establish a cleaning and decontamination protocol prior to entry and exit of the jobsite and post the protocol at entrances and exits of jobsite.
   iii. Supply all personnel performing cleaning and sanitization with proper PPE to prevent them from contracting COVID-19.  Employees must not share PPE.
   iv.  Establish adequate time in the workday to allow for proper cleaning and decontamination including prior to starting at or leaving the jobsite for the day.

h.  Implement a COVID-19 community spread reduction plan as part of the Site-Specific Health and Safety Plan that includes, at minimum, the following restrictions and requirements:
   i.   Prohibit all carpooling to and from the jobsite except by workers living within the same household unit, or as necessary for workers who have no alternative means of transportation.
   ii.  Cal-OSHA requires employers to provide water, which should be provided in single-serve containers.  Prohibit any sharing of any food or beverage and if sharing is observed, the worker must be sent home for the day.
   iii. Prohibit use of microwaves, water coolers, and other similar shared equipment.

i.  Assign a COVID-19 Safety Compliance Officer (SCO) to the jobsite and ensure the SCO's name is posted on the Site-Specific Health and Safety Plan.  The SCO must:
   i.   Ensure implementation of all recommended safety and sanitation requirements regarding the COVID-19 virus at the jobsite.
   ii.  Compile daily written verification that each jobsite is compliant with the components of this LCP Protocol.  Each written verification form must be copied, stored, and made immediately available upon request by any County official.
   iii. Establish a daily screening protocol for arriving staff, to ensure that potentially infected staff do not enter the construction site.  If workers leave the jobsite and return the same day, establish a cleaning and decontamination protocol prior to entry and exit of the jobsite.  Post the daily screening protocol at all entrances and exit to the jobsite.  More information on screening can be found online at:  https://www.cdc.gov/coronavirus/2019-ncov/community/index.html.
   iv.  Conduct daily briefings in person or by teleconference that must cover the following topics:
      1.  New jobsite rules and pre-job site travel restrictions for the prevention of COVID-19 community spread.
      2.  Review of sanitation and hygiene procedures.
      3.  Solicitation of worker feedback on improving safety and sanitation.
      4.  Coordination of construction site daily cleaning/sanitation requirements.
      5.  Conveying updated information regarding COVID-19.
      6.  Emergency protocols in the event of an exposure or suspected exposure to COVID-19.
   v.   Develop and ensure implementation of a remediation plan to address any non-compliance with this LCP Protocol and post remediation plan at entrance and exit of jobsite during



remediation period.  The remediation plan must be translated as necessary to ensure that all non-English speaking workers are able to understand the document.

     vi.  The SCO must not permit any construction activity to continue without bringing such activity into compliance with these requirements.

     vii.  Report repeated non-compliance with this LCP Protocol to the appropriate jobsite supervisors and a designated County official.

j.  Assign a COVID-19 Third-Party Jobsite Safety Accountability Supervisor (JSAS) for the jobsite, who at a minimum holds an OSHA-30 certificate and first-aid training within the past two years, who must be trained in the protocols herein and verify compliance, including by visual inspection and random interviews with workers, with this LCP Protocol.

     i.  Within seven calendar days of each jobsite visit, the JSAS must complete a written assessment identifying any failure to comply with this LCP Protocol.  The written assessment must be copied, stored, and, upon request by the County, sent to a designated County official.

     ii.  If the JSAS discovers that a jobsite is not in compliance with this LCP Protocol, the JSAS must work with the SCO to develop and implement a remediation plan.

     iii.  The JSAS must coordinate with the SCO to prohibit continuation of any work activity not in compliance with rules stated herein until addressed and the continuing work is compliant.

     iv.  The remediation plan must be sent to a designated County official within five calendar days of the JSAS's discovery of the failure to comply.

k.  In the event of a confirmed case of COVID-19 at any jobsite, the following must take place:

     i.  Immediately remove the infected individual from the jobsite with directions to seek medical care.

     ii.  Each location the infected worker was at must be decontaminated and sanitized by an outside vendor certified in hazmat clean ups, and work in these locations must cease until decontamination and sanitization is complete.

     iii.  The County Public Health Department must be notified immediately and any additional requirements per the County health officials must be completed, including full compliance with any tracing efforts by the County.

l.  Where construction work occurs within an occupied residential unit, any separate work area must be sealed off from the remainder of the unit with physical barriers such as plastic sheeting or closed doors sealed with tape to the extent feasible.  If possible, workers must access the work area from an alternative entry/exit door to the entry/exit door used by residents.  Available windows and exhaust fans must be used to ventilate the work area.  If residents have access to the work area between workdays, the work area must be cleaned and sanitized at the beginning and at the end of workdays. Every effort must be taken to minimize contact between workers and residents, including maintaining a minimum of six feet of social distancing at all times.

m.  Where construction work occurs within common areas of an occupied residential or commercial building or a mixed-use building in use by on-site employees or residents, any separate work area must be sealed off from the rest of the common areas with physical barriers such as plastic



sheeting or closed doors sealed with tape to the extent feasible.  If possible, workers must access the work area from an alternative building entry/exit door to the building entry/exit door used by residents or other users of the building.  Every effort must be taken to minimize contact between worker and building residents and users, including maintaining a minimum of six feet of social distancing at all times.

EXHIBIT 7

**County of Santa Clara**
Public Health Department

Health Officer
976 Lenzen Avenue, 2nd Floor
San José, CA 95126
408.792.3798



<div align="center">

### ORDER OF THE HEALTH OFFICER
### OF THE COUNTY OF SANTA CLARA DIRECTING
### ALL INDIVIDUALS IN THE COUNTY TO CONTINUE SHELTERING AT
### THEIR PLACE OF RESIDENCE EXCEPT FOR ESSENTIAL NEEDS AND
### IDENTIFIED OUTDOOR ACTIVITIES IN COMPLIANCE WITH SPECIFIED
### REQUIREMENTS; CONTINUING TO EXEMPT HOMELESS INDIVIDUALS
### FROM THE ORDER BUT URGING GOVERNMENT AGENCIES TO
### PROVIDE THEM SHELTER; REQUIRING ALL BUSINESSES AND
### RECREATION FACILITIES THAT ARE ALLOWED TO OPERATE TO
### IMPLEMENT SOCIAL DISTANCING, FACE COVERING, AND CLEANING
### PROTOCOLS; AND DIRECTING ALL BUSINESSES, FACILITY
### OPERATORS, AND GOVERNMENTAL AGENCIES TO CONTINUE THE
### TEMPORARY CLOSURE OF ALL OTHER OPERATIONS NOT ALLOWED
### UNDER THIS ORDER

### DATE OF ORDER: APRIL 29, 2020

</div>

**Please read this Order carefully. Violation of or failure to comply with this Order is a misdemeanor punishable by fine, imprisonment, or both. (California Health and Safety Code § 120295, *et seq.*; Cal. Penal Code §§ 69, 148(a)(1); Santa Clara County Ordinance Code § A1-28.)**

UNDER THE AUTHORITY OF CALIFORNIA HEALTH AND SAFETY CODE SECTIONS 101040, 101085, AND 120175, THE HEALTH OFFICER OF THE COUNTY OF SANTA CLARA ("HEALTH OFFICER") ORDERS:

1.  This Order supersedes the March 31, 2020 Order of the Health Officer directing all individuals to shelter in place ("Prior Order"). This Order amends, clarifies, and extends certain terms of the Prior Order to ensure continued social distancing and limit person-to-person contact to reduce the rate of transmission of Novel Coronavirus Disease 2019 ("COVID-19"). This Order continues to restrict most activity, travel, and governmental and business functions. But in light of progress achieved in slowing the spread of COVID-19 in the County of Santa Clara (the "County") and neighboring counties, the Order allows a limited number of additional Essential Businesses and certain lower risk Outdoor Businesses (both as defined in Section 16 below) to resume operating. This initial, measured resumption of those activities is designed to keep the overall volume of person-to-person contact very low to prevent a surge in COVID-19 cases in the County and neighboring counties. The activities allowed by this Order will be assessed on an ongoing basis and may need to be modified if the risk associated with COVID-

19 increases in the future. As of the effective date and time of this Order set forth in Section 19 below, all individuals, businesses, and government agencies in the County are required to follow the provisions of this Order.

2.  The primary intent of this Order is to ensure that County residents continue to shelter in their places of residence to slow the spread of COVID-19 and mitigate the impact on delivery of critical healthcare services. This Order allows a limited number of additional essential and outdoor business activities to resume while the Health Officer continues to assess the transmissibility and clinical severity of COVID-19 and monitors indicators described in Section 11. All provisions of this Order must be interpreted to effectuate this intent. Failure to comply with any of the provisions of this Order constitutes an imminent threat and menace to public health, constitutes a public nuisance, and is punishable by fine, imprisonment, or both.

3.  All individuals currently living within the County are ordered to shelter at their place of residence. They may leave their residence only for Essential Activities as defined in Section 16.a and Outdoor Activities as defined in Section 16.m, Essential Governmental Functions as defined in Section 16.d, Essential Travel as defined in Section 16.i, to work for Essential Businesses as defined in Section 16.f, and Outdoor Businesses as defined in Section 16.*l*, or to perform Minimum Basic Operations for other businesses that must remain temporarily closed, as provided in Section 16.g. For clarity, individuals who do not currently reside in the County must comply with all applicable requirements of the Order when in the County. Individuals experiencing homelessness are exempt from this Section, but are strongly urged to obtain shelter, and governmental and other entities are strongly urged to, as soon as possible, make such shelter available and provide handwashing or hand sanitation facilities to persons who continue experiencing homelessness.

4.  When people need to leave their place of residence for the limited purposes allowed in this Order, they must strictly comply with Social Distancing Requirements as defined in Section 16.k, except as expressly provided in this Order, and are also strongly urged to wear face coverings as provided in the Health Officer's April 17, 2020 Critical Guidance on Facial Coverings (the "Face Covering Guidance").

5.  All businesses with a facility in the County, except Essential Businesses and Outdoor Businesses, as defined in Section 16, are required to cease all activities at facilities located within the County except Minimum Basic Operations, as defined in Section 16. For clarity, all businesses may continue operations consisting exclusively of owners, personnel, volunteers, or contractors performing activities at their own residences (i.e., working from home). All Essential Businesses are strongly encouraged to remain open. But all businesses are directed to maximize the number of personnel who work from home. Essential Businesses and Outdoor Businesses may only assign those personnel who cannot perform their job duties from home to work outside the home. Outdoor Businesses must conduct all business and transactions involving members of the public outdoors.

6.  As a condition of operating under this Order, the operators of all businesses must prepare or update, post, implement, and distribute to their personnel a Social Distancing Protocol for each

Order of the County Health Officer
to Shelter in Place (effective May 4, 2020)
Page 2 of 14

of their facilities in the County frequented by personnel or members of the public, as specified in Section 16.h.  Businesses that include an Essential Business or Outdoor Business component at their facilities alongside other components must, to the extent feasible, scale down their operations to the Essential Business and Outdoor Business components only; provided, however, mixed retail businesses that are otherwise allowed to operate under this Order may continue to stock and sell non-essential products.  All businesses allowed to operate under this Order must follow any industry-specific guidance issued by the Health Officer related to COVID-19.

7.  All public and private gatherings of any number of people occurring outside a single household or living unit are prohibited, except for the limited purposes expressly permitted in this Order. Nothing in this Order prohibits members of a single household or living unit from engaging in Essential Travel, Essential Activities, or Outdoor Activities together.

8.  All travel, including, but not limited to, travel on foot, bicycle, scooter, motorcycle, automobile, or public transit, except Essential Travel, as defined below in Section 16.i, is prohibited.  People may use public transit only for purposes of performing Essential Activities and Outdoor Activities, or to travel to and from work for Essential Businesses or Outdoor Businesses, to maintain Essential Governmental Functions, or to perform Minimum Basic Operations at non-essential businesses.  Transit agencies and people riding on public transit must comply with Social Distancing Requirements, as defined in Section 16.k, to the greatest extent feasible, and personnel and passengers must wear Face Coverings as provided by the Face Covering Guidance.  This Order allows travel into or out of the County only to perform Essential Activities and Outdoor Activities, to operate or perform work for Essential Businesses or Outdoor Businesses, to maintain Essential Governmental Functions, or to perform Minimum Basic Operations at non-essential businesses.

9.  This Order is issued based on evidence of continued significant community transmission of COVID-19 within the County and throughout the Bay Area; continued uncertainty regarding the degree of undetected asymptomatic transmission; scientific evidence and best practices regarding the most effective approaches to slow the transmission of communicable diseases generally and COVID-19 specifically; evidence that the age, condition, and health of a significant portion of the population of the County places it at risk for serious health complications, including death, from COVID-19; and further evidence that others, including younger and otherwise healthy people, are also at risk for serious outcomes.  Due to the outbreak of the COVID-19 disease in the general public, which is now a pandemic according to the World Health Organization, there is a public health emergency throughout the County. Making the problem worse, some individuals who contract the virus causing the COVID-19 disease have no symptoms or have mild symptoms, which means they may not be aware they carry the virus and are transmitting it to others.  Further, evidence shows that the virus can survive for hours to days on surfaces and be indirectly transmitted between individuals. Because even people without symptoms can transmit the infection, and because evidence shows the infection is easily spread, gatherings and other direct or indirect interpersonal interactions can result in preventable transmission of the virus.

Order of the County Health Officer
to Shelter in Place (effective May 4, 2020)
Page 3 of 14

10. The collective efforts taken to date regarding this public health emergency have slowed the virus' trajectory, but the emergency and the attendant risk to public health remain significant. As of April 27, 2020, there are 2,105 confirmed cases of COVID-19 in the County (up from 123 on March 15, 2020, just before the first shelter-in-place order) as well as at least 7,273 confirmed cases (up from 258 confirmed cases on March 15, 2020) and at least 266 deaths (up from 3 deaths on March 15, 2020) in the seven Bay Area jurisdictions jointly issuing this Order. The cumulative number of confirmed cases continues to increase, though the rate of increase has slowed in the days leading up to this Order. Evidence suggests that the restrictions on mobility and social distancing requirements imposed by the Prior Order (and the March 16, 2020 shelter-in-place order) are slowing the rate of increase in community transmission and confirmed cases by limiting interactions among people, consistent with scientific evidence of the efficacy of similar measures in other parts of the country and world.

11. The local health officers who jointly issued the Prior Order are monitoring several key indicators ("COVID-19 Indicators"), which are among the many factors informing their decisions whether to modify existing shelter-in-place restrictions. Progress on some of these COVID-19 Indicators—specifically related to hospital utilization and capacity—makes it appropriate, at this time, to ease certain restrictions imposed by the Prior Order to allow individuals to engage in a limited set of additional activities and perform work for a limited set of additional businesses associated with the lower risk of COVID-19 transmission, as set forth in Section 16.m. But the continued prevalence of the virus that causes COVID-19 requires most activities and business functions to remain restricted, and those activities that are permitted to occur must do so subject to social distancing and other infection control practices identified by the Health Officer. Progress on the COVID-19 Indicators will be critical to determinations by the local health officers regarding whether the restrictions imposed by this Order may be further modified. The Health Officer will continually review whether modifications to the Order are justified based on (1) progress on the COVID-19 Indicators; (2) developments in epidemiological and diagnostic methods for tracing, diagnosing, treating, or testing for COVID-19; and (3) scientific understanding of the transmission dynamics and clinical impact of COVID-19. The COVID-19 Indicators include, but are not limited to, the following:

   a. The trend of the number of new COVID-19 cases and hospitalizations per day.

   b. The capacity of hospitals and the health system in the County and region, including acute care beds and Intensive Care Unit beds, to provide care for COVID-19 patients and other patients, including during a surge in COVID-19 cases.

   c. The supply of personal protective equipment (PPE) available for hospital staff and other healthcare providers and personnel who need PPE to safely respond to and treat COVID-19 patients.

   d. The ability and capacity to quickly and accurately test persons to determine whether they are COVID-19 positive, especially those in vulnerable populations or high-risk settings or occupations.

Order of the County Health Officer
to Shelter in Place (effective May 4, 2020)

    e.   The ability to conduct case investigation and contact tracing for the volume of cases and associated contacts that will continue to occur, isolating confirmed cases and quarantining persons who have had contact with confirmed cases.

12. The scientific evidence shows that at this stage of the emergency, it remains essential to continue to slow virus transmission to help (a) protect the most vulnerable; (b) prevent the health care system from being overwhelmed; (c) prevent long-term chronic health conditions, such as cardiovascular, kidney, and respiratory damage and loss of limbs from blood clotting; and (d) prevent deaths. Extension of the Prior Order is necessary to slow the spread of the COVID-19 disease, preserving critical and limited healthcare capacity in the County and advancing toward a point in the public health emergency where transmission can be controlled. At the same time, since the Prior Order was issued the County has made significant progress in expanding health system capacity and healthcare resources and in slowing community transmission of COVID-19.  In light of progress on these indicators, and subject to continued monitoring and potential public health-based responses, it is appropriate at this time to allow additional Essential Businesses and Outdoor Businesses to operate in the County.  Outdoor Businesses, by virtue of their operation outdoors, likely carry a lower risk of transmission than most indoor businesses.  Because Outdoor Businesses, as defined in section 16.*l*, generally involve only brief and limited person-to-person interactions, they also likely carry lower risk of transmission than business activities prohibited under the Order, which tend to involve prolonged interactions between individuals in close proximity or in confined spaces where transmission is more likely.  Existing Outdoor Businesses also constitute a relatively small proportion of business activity in the County, and therefore do not substantially increase the volume of interaction between persons in the County when reopened.

13. This Order is issued in accordance with, and incorporates by reference, the March 4, 2020 Proclamation of a State of Emergency issued by Governor Gavin Newsom, the February 3, 2020 Proclamation by the Director of Emergency Services Declaring the Existence of a Local Emergency in the County, the February 3, 2020 Declaration of Local Health Emergency Regarding Novel Coronavirus 2019 (COVID-19) issued by the Health Officer, the February 10, 2020 Resolution of the Board of Supervisors of the County of Santa Clara Ratifying and Extending the Declaration of a Local Health Emergency, and the February 10, 2020 Resolution of the Board of Supervisors of the County of Santa Clara Ratifying and Extending the Proclamation of a Local Emergency.

14. This Order comes after the release of substantial guidance from the Health Officer, the Centers for Disease Control and Prevention, the California Department of Public Health, and other public health officials throughout the United States and around the world, including the widespread adoption of orders imposing similar social distancing requirements and mobility restrictions to combat the spread and harms of COVID-19.  The Health Officer will continue to assess the quickly evolving situation and may modify or extend this Order, or issue additional Orders, related to COVID-19, as changing circumstances dictate.

Order of the County Health Officer
to Shelter in Place (effective May 4, 2020)

15. This Order is also issued in light of the March 19, 2020 Order of the State Public Health Officer (the "State Shelter Order"), which set baseline statewide restrictions on non-residential business activities, effective until further notice, as well as the Governor's March 19, 2020 Executive Order N-33-20 directing California residents to follow the State Shelter Order. The State Shelter Order was complementary to the Prior Order and is complementary to this Order. This Order adopts in certain respects more stringent restrictions addressing the particular facts and circumstances in this County, which are necessary to control the public health emergency as it is evolving within the County and the Bay Area. Without this tailored set of restrictions that further reduces the number of interactions between persons, scientific evidence indicates that the public health crisis in the County will worsen to the point at which it may overtake available health care resources within the County and increase the death rate. Also, this Order enumerates additional restrictions on non-work-related travel not covered by the State Shelter Order; sets forth mandatory Social Distancing Requirements for all individuals in the County when engaged in activities outside their residences; and adds a mechanism to ensure that all businesses with facilities that are allowed to operate under the Order comply with the Social Distancing Requirements. Where a conflict exists between this Order and any state public health order related to the COVID-19 pandemic, the most restrictive provision controls. Consistent with California Health and Safety Code section 131080 and the Health Officer Practice Guide for Communicable Disease Control in California, except where the State Health Officer may issue an order expressly directed at this Order and based on a finding that a provision of this Order constitutes a menace to public health, any more restrictive measures in this Order continue to apply and control in this County. In addition, to the extent any federal guidelines allow activities that are not allowed by this Order, this Order controls and those activities are not allowed.

16. <u>Definitions and Exemptions</u>.

    a. For the purposes of this Order, individuals may leave their residence only to perform the following "Essential Activities." But people at high risk of severe illness from COVID-19 and people who are sick are strongly urged to stay in their residence to the extent possible, except as necessary to seek or provide medical care or Essential Governmental Functions. Essential Activities are:

        i. To engage in activities or perform tasks important to their health and safety, or to the health and safety of their family or household members (including pets), such as, by way of example only and without limitation, obtaining medical supplies or medication, or visiting a health care professional.

        ii. To obtain necessary services or supplies for themselves and their family or household members, or to deliver those services or supplies to others, such as, by way of example only and without limitation, canned food, dry goods, fresh fruits and vegetables, pet supply, fresh meats, fish, and poultry, and any other household consumer products, products needed to work from home, or products necessary to maintain the habitability, sanitation, and operation of residences.

        iii. To engage in outdoor recreation activity, including, by way of example and without limitation, walking, hiking, bicycling, and running, in compliance with Social Distancing Requirements and with the following limitations:

Order of the County Health Officer
to Shelter in Place (effective May 4, 2020)
Page 6 of 14

1. Outdoor recreation activity at parks, beaches, and other open spaces must comply with any restrictions on access and use established by the Health Officer, government, or other entity that manages such area to reduce crowding and risk of transmission of COVID-19. Such restrictions may include, but are not limited to, restricting the number of entrants, closing the area to vehicular access and parking, or closure to all public access;

2. Use of outdoor recreational areas and facilities with high-touch equipment or that encourage gathering, including, but not limited to, playgrounds, gym equipment, climbing walls, picnic areas, dog parks, pools, spas, and barbecue areas, is prohibited outside of residences, and all such areas shall be closed to public access including by signage and, as appropriate, by physical barriers;

3. Sports or activities that include the use of shared equipment or physical contact between participants may only be engaged in by members of the same household or living unit; and

4. Use of shared outdoor facilities for recreational activities that may occur outside of residences consistent with the restrictions set forth in subsections 1, 2, and 3, above, including, but not limited to, golf courses, skate parks, and athletic fields, must, before they may begin, comply with social distancing and health/safety protocols posted at the site and any other restrictions, including prohibitions, on access and use established by the Health Officer, government, or other entity that manages such area to reduce crowding and risk of transmission of COVID-19.

   iv. To perform work for or access an Essential Business, Outdoor Business, or to otherwise carry out activities specifically permitted in this Order, including Minimum Basic Operations, as defined in this Section.

   v. To provide necessary care for a family member or pet in another household who has no other source of care.

   vi. To attend a funeral with no more than 10 individuals present.

   vii. To move residences. When moving into or out of the Bay Area region, individuals are strongly urged to quarantine for 14 days. To quarantine, individuals should follow the guidance of the United States Centers for Disease Control and Prevention.

b. For the purposes of this Order, individuals may leave their residence to work for, volunteer at, or obtain services at "Healthcare Operations," including, without limitation, hospitals, clinics, COVID-19 testing locations, dentists, pharmacies, blood banks and blood drives, pharmaceutical and biotechnology companies, other healthcare facilities, healthcare suppliers, home healthcare services providers, mental health providers, or any related and/or ancillary healthcare services. "Healthcare Operations" also includes veterinary care and all healthcare services provided to animals. This exemption for Healthcare Operations shall be construed broadly to avoid any

Order of the County Health Officer
to Shelter in Place (effective May 4, 2020)
Page 7 of 14

interference with the delivery of healthcare, broadly defined. "Healthcare Operations" excludes fitness and exercise gyms and similar facilities.

c. For the purposes of this Order, individuals may leave their residence to provide any services or perform any work necessary to the operation and maintenance of "Essential Infrastructure," including airports, utilities (including water, sewer, gas, and electrical), oil refining, roads and highways, public transportation, solid waste facilities (including collection, removal, disposal, recycling, and processing facilities), cemeteries, mortuaries, crematoriums, and telecommunications systems (including the provision of essential global, national, and local infrastructure for internet, computing services, business infrastructure, communications, and web-based services).

d. For the purposes of this Order, all first responders, emergency management personnel, emergency dispatchers, court personnel, and law enforcement personnel, and others who need to perform essential services are categorically exempt from this Order to the extent they are performing those essential services. Further, nothing in this Order shall prohibit any individual from performing or accessing "Essential Governmental Functions," as determined by the governmental entity performing those functions in the County. Each governmental entity shall identify and designate appropriate personnel, volunteers, or contractors to continue providing and carrying out any Essential Governmental Functions, including the hiring or retention of new personnel or contractors to perform such functions. Each governmental entity and its contractors must employ all necessary emergency protective measures to prevent, mitigate, respond to, and recover from the COVID-19 pandemic, and all Essential Governmental Functions shall be performed in compliance with Social Distancing Requirements to the greatest extent feasible.

e. For the purposes of this Order, a "business" includes any for-profit, non-profit, or educational entity, whether a corporate entity, organization, partnership or sole proprietorship, and regardless of the nature of the service, the function it performs, or its corporate or entity structure.

f. For the purposes of this Order, "Essential Businesses" are:
   i. Healthcare Operations and businesses that operate, maintain, or repair Essential Infrastructure;
   ii. Grocery stores, certified farmers' markets, farm and produce stands, supermarkets, food banks, convenience stores, and other establishments engaged in the retail sale of unprepared food, canned food, dry goods, non-alcoholic beverages, fresh fruits and vegetables, pet supply, fresh meats, fish, and poultry, as well as hygienic products and household consumer products necessary for personal hygiene or the habitability, sanitation, or operation of residences. The businesses included in this subparagraph (ii) include establishments that sell multiple categories of products provided that they sell a significant amount of essential products identified in this subparagraph, such as liquor stores that also sell a significant amount of food.

Order of the County Health Officer
to Shelter in Place (effective May 4, 2020)
Page 8 of 14

iii. Food cultivation, including farming, livestock, and fishing;

iv. Businesses that provide food, shelter, and social services, and other necessities of life for economically disadvantaged or otherwise needy individuals;

v. Construction, but only as permitted under the State Shelter Order and only pursuant to the Construction Safety Protocols listed in Appendix B and incorporated into this Order by this reference. Public works projects shall also be subject to Appendix B, except if other protocols are specified by the Health Officer;

vi. Newspapers, television, radio, and other media services;

vii. Gas stations and auto-supply, auto-repair (including, but not limited to, for cars, trucks, motorcycles and motorized scooters), and automotive dealerships, but only for the purpose of providing auto-supply and auto-repair services. This subparagraph (vii) does not restrict the on-line purchase of automobiles if they are delivered to a residence or Essential Business;

viii. Bicycle repair and supply shops;

ix. Banks and related financial institutions;

x. Service providers that enable real estate transactions (including rentals, leases, and home sales), including, but not limited to, real estate agents, escrow agents, notaries, and title companies, provided that appointments and other real estate viewings must only occur virtually or, if a virtual viewing is not feasible, by appointment with no more than two visitors at a time residing within the same household or living unit and one individual showing the unit (except that in person visits are not allowed when an occupant is present in a residence);

xi. Hardware stores;

xii. Plumbers, electricians, exterminators, and other service providers who provide services that are necessary to maintaining the habitability, sanitation, or operation of residences and Essential Businesses;

xiii. Businesses providing mailing and shipping services, including post office boxes;

xiv. Educational institutions—including public and private K-12 schools, colleges, and universities—for purposes of facilitating distance learning or performing essential functions, or as allowed under subparagraph xxvi, provided that social distancing of six feet per person is maintained to the greatest extent possible;

xv. Laundromats, drycleaners, and laundry service providers;

xvi. Restaurants and other facilities that prepare and serve food, but only for delivery or carry out. Schools and other entities that typically provide free food services to students or members of the public may continue to do so under this Order on the condition that the food is provided to students or members of the public on a pick-up and take-away basis only. Schools and other entities that provide food services under this exemption shall not permit the food to be eaten at the site where it is provided, or at any other gathering site;

xvii. Funeral home providers, mortuaries, cemeteries, and crematoriums, to the extent necessary for the transport, preparation, or processing of bodies or remains;

Order of the County Health Officer
to Shelter in Place (effective May 4, 2020)
Page 9 of 14

xviii.  Businesses that supply other Essential Businesses with the support or supplies necessary to operate, but only to the extent that they support or supply these Essential Businesses. This exemption shall not be used as a basis for engaging in sales to the general public from retail storefronts;

xix.  Businesses that have the primary function of shipping or delivering groceries, food, or other goods directly to residences or businesses. This exemption shall not be used to allow for manufacturing or assembly of non-essential products or for other functions besides those necessary to the delivery operation;

xx.  Airlines, taxis, rental car companies, rideshare services (including shared bicycles and scooters), and other private transportation providers providing transportation services necessary for Essential Activities and other purposes expressly authorized in this Order;

xxi.  Home-based care for seniors, adults, children, and pets;

xxii.  Residential facilities and shelters for seniors, adults, and children;

xxiii.  Professional services, such as legal, notary, or accounting services, when necessary to assist in compliance with non-elective, legally required activities or in relation to death or incapacity;

xxiv.  Services to assist individuals in finding employment with Essential Businesses;

xxv.  Moving services that facilitate residential or commercial moves that are allowed under this Order; and

xxvi.  Childcare establishments, summer camps, and other educational or recreational institutions or programs providing care or supervision for children of all ages that enable owners, employees, volunteers, and contractors for Essential Businesses, Essential Governmental Functions, Outdoor Businesses, or Minimum Basic Operations to work as allowed under this Order. To the extent possible, these operations must comply with the following conditions:

1.  They must be carried out in stable groups of 12 or fewer children ("stable" means that the same 12 or fewer children are in the same group each day).
2.  Children shall not change from one group to another.
3.  If more than one group of children is at one facility, each group shall be in a separate room. Groups shall not mix with each other.
4.  Providers or educators shall remain solely with one group of children.

The Health Officer will carefully monitor the changing public health situation as well as any changes to the State Shelter Order. In the event that the State relaxes restrictions on childcare and related institutions and programs, the Health Officer will consider whether to similarly relax the restrictions imposed by this Order.

g.  For the purposes of this Order, "Minimum Basic Operations" means the following activities for businesses, provided that owners, personnel, and contractors comply with Social Distancing Requirements as defined this Section, to the extent possible, while carrying out such operations:

i.  The minimum necessary activities to maintain and protect the value of the business's inventory and facilities; ensure security, safety, and sanitation;

Order of the County Health Officer
to Shelter in Place (effective May 4, 2020)
Page 10 of 14

process payroll and employee benefits; provide for the delivery of existing inventory directly to residences or businesses; and related functions.  For clarity, this section does not permit businesses to provide curbside pickup to customers.

ii.  The minimum necessary activities to facilitate owners, personnel, and contractors of the business being able to continue to work remotely from their residences, and to ensure that the business can deliver its service remotely.

h.  For the purposes of this Order, all businesses that are operating at facilities in the County visited or used by the public or personnel must, as a condition of such operation, prepare and post a "Social Distancing Protocol" for each of these facilities; provided, however, that construction activities shall instead comply with the Construction Project Safety Protocols set forth in Appendix B and not the Social Distancing Protocol.  The Social Distancing Protocol must be substantially in the form attached to this Order as Appendix A, and it must be updated from prior versions to address new requirements listed in this Order or in related guidance or directives from the Health Officer.  The Social Distancing Protocol must be posted at or near the entrance of the relevant facility, and shall be easily viewable by the public and personnel.  A copy of the Social Distancing Protocol must also be provided to each person performing work at the facility.  All businesses subject to this paragraph shall implement the Social Distancing Protocol and provide evidence of its implementation to any authority enforcing this Order upon demand.  The Social Distancing Protocol must explain how the business is achieving the following, as applicable:

i.  Limiting the number of people who can enter into the facility at any one time to ensure that people in the facility can easily maintain a minimum six-foot distance from one another at all times, except as required to complete Essential Business activity;

ii.  Requiring face coverings to be worn by all persons entering the facility, other than those exempted from face covering requirements (e.g., young children);

iii.  Where lines may form at a facility, marking six-foot increments at a minimum, establishing where individuals should stand to maintain adequate social distancing;

iv.  Providing hand sanitizer, soap and water, or effective disinfectant at or near the entrance of the facility and in other appropriate areas for use by the public and personnel, and in locations where there is high-frequency employee interaction with members of the public (e.g., cashiers);

v.  Providing for contactless payment systems or, if not feasible to do so, the providing for disinfecting all payment portals, pens, and styluses after each use;

vi.  Regularly disinfecting other high-touch surfaces;

vii.  Posting a sign at the entrance of the facility informing all personnel and customers that they should: avoid entering the facility if they have any COVID-19 symptoms; maintain a minimum six-foot distance from one another; sneeze and cough into their own elbow; and not shake hands or engage in any unnecessary physical contact; and

Order of the County Health Officer
to Shelter in Place (effective May 4, 2020)
Page 11 of 14

viii.   Any additional social distancing measures being implemented (see the Centers for Disease Control and Prevention's guidance at: https://www.cdc.gov/coronavirus/2019-ncov/community/guidance-business-response.html).

i.   For the purposes of this Order, "Essential Travel" means travel for any of the following purposes:

   i.   Travel related to the provision of or access to Essential Activities, Essential Governmental Functions, Essential Businesses, Minimum Basic Operations, Outdoor Activities, and Outdoor Businesses.

   ii.   Travel to care for any elderly, minors, dependents, or persons with disabilities.

   iii.   Travel to or from educational institutions for purposes of receiving materials for distance learning, for receiving meals, and any other related services.

   iv.   Travel to return to a place of residence from outside the County.

   v.   Travel required by law enforcement or court order.

   vi.   Travel required for non-residents to return to their place of residence outside the County. Individuals are strongly encouraged to verify that their transportation out of the County remains available and functional prior to commencing such travel.

   vii.   Travel to manage after-death arrangements and burial.

   viii.   Travel to arrange for shelter or avoid homelessness.

   ix.   Travel to avoid domestic violence or child abuse.

   x.   Travel for parental custody arrangements.

   xi.   Travel to a place to temporarily reside in a residence or other facility to avoid potentially exposing others to COVID-19, such as a hotel or other facility provided by a governmental authority for such purposes.

j.   For purposes of this Order, "residences" include hotels, motels, shared rental units, and similar facilities. Residences also include living structures and outdoor spaces associated with those living structures, such as patios, porches, backyards, and front yards that are only accessible to a single family or household unit.

k.   For purposes of this Order, "Social Distancing Requirements" means:

   i.   Maintaining at least six-foot social distancing from individuals who are not part of the same household or living unit;

   ii.   Frequently washing hands with soap and water for at least 20 seconds, or using hand sanitizer that is recognized by the Centers for Disease Control and Prevention as effective against COVID-19;

   iii.   Covering coughs and sneezes with a tissue or fabric or, if not possible, into the sleeve or elbow (but not into hands);

   iv.   Wearing a face covering when out in public, consistent with the orders or guidance of the Health Officer; and

   v.   Avoiding all social interaction outside the household when sick with a fever, cough, or other COVID-19 symptoms.

Order of the County Health Officer
to Shelter in Place (effective May 4, 2020)
                    Page 12 of 14

All individuals must strictly comply with Social Distancing Requirements, except to the limited extent necessary to provide care (including childcare, adult or senior care, care to individuals with special needs, and patient care); as necessary to carry out the work of Essential Businesses, Essential Governmental Functions, or provide for Minimum Basic Operations; or as otherwise expressly provided in this Order.  Outdoor Activities and Outdoor Businesses must strictly adhere to these Social Distancing Requirements.

l. For purposes of this Order, "Outdoor Businesses" means:
   i. The following businesses that normally operated primarily outdoors prior to March 16, 2020 and where there is the ability to fully maintain social distancing of at least six feet between all persons:
      1. Businesses primarily operated outdoors, such as wholesale and retail plant nurseries, agricultural operations, and garden centers.
      2. Service providers that primarily provide outdoor services, such as landscaping and gardening services, and environmental site remediation services.

   For clarity, "Outdoor Businesses" do not include outdoor restaurants, cafes, or bars.

m. For purposes of this Order, "Outdoor Activities" means:
   i. To obtain goods, services, or supplies from, or perform work for, an Outdoor Business.
   ii. To engage in outdoor recreation as permitted in Section 16.a.

17. Government agencies and other entities operating shelters and other facilities that house or provide meals or other necessities of life for individuals experiencing homelessness must take appropriate steps to help ensure compliance with Social Distancing Requirements, including adequate provision of hand sanitizer.  Also, individuals experiencing homelessness who are unsheltered and living in encampments should, to the maximum extent feasible, abide by 12 foot by 12 foot distancing for the placement of tents, and government agencies should provide restroom and hand washing facilities for individuals in such encampments as set forth in Centers for Disease Control and Prevention Interim Guidance Responding to Coronavirus 2019 (COVID-19) Among People Experiencing Unsheltered Homelessness (https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/unsheltered-homelessness.html).

18. Pursuant to Government Code sections 26602 and 41601, Health and Safety Code section 101029, and Santa Clara County Ordinance Code section A1-34 *et seq.*, the Health Officer requests that the Sheriff, all chiefs of police in the County, and all enforcement officers ensure compliance with and enforce this Order.  The violation of any provision of this Order constitutes an imminent threat and menace to public health, constitutes a public nuisance, and is punishable by fine, imprisonment, or both.

Order of the County Health Officer
to Shelter in Place (effective May 4, 2020)
Page 13 of 14

19. This Order shall become effective at 11:59 p.m. on May 3, 2020 and will continue to be in effect until 11:59 p.m. on May 31, 2020, or until it is extended, rescinded, superseded, or amended in writing by the Health Officer.

20. Copies of this Order shall promptly be: (1) made available at the County Government Center at 70 W. Hedding Street, San José, California; (2) posted on the County Public Health Department website (www.sccphd.org); and (3) provided to any member of the public requesting a copy of this Order.

21. If any provision of this Order or its application to any person or circumstance is held to be invalid, the remainder of the Order, including the application of such part or provision to other persons or circumstances, shall not be affected and shall continue in full force and effect. To this end, the provisions of this Order are severable.

**IT IS SO ORDERED:**

Sara H. Cody, M.D.
Health Officer of the County of Santa Clara

Dated: 4/29/2020

Approved as to form and legality:

James R. Williams
County Counsel

Dated: 4/29/2020

Attachments:   Appendix A – Social Distancing Protocol
Appendix B1 – Small Construction Project Safety Protocol
Appendix B2 – Large Construction Project Safety Protocol

Order of the County Health Officer
to Shelter in Place (effective May 4, 2020)
Page 14 of 14

**Appendix A: Social Distancing Protocol** (**Updated April 29, 2020**)

Business name:

Facility Address:

Approximate gross square footage of space open to the public:

**Businesses must implement all applicable measures listed below, and be prepared to explain why any measure that is not implemented is inapplicable to the business.**

___

*Signage:*

☐ Signage at each public entrance of the facility to inform all employees and customers that they should: avoid entering the facility if they have COVID-19 symptoms; maintain a minimum six-foot distance from one another; sneeze and cough into a cloth or tissue or, if not available, into one's elbow; wear face coverings, as appropriate; and not shake hands or engage in any unnecessary physical contact.

☐ Signage posting a copy of the Social Distancing Protocol at each public entrance to the facility.

___

*Measures To Protect Employee Health (check all that apply to the facility):*

☐ Everyone who can carry out their work duties from home has been directed to do so.

☐ All employees have been told not to come to work if sick.

☐ Symptom checks are being conducted before employees may enter the work space.

☐ Employees are required to wear face coverings, as appropriate.

☐ All desks or individual work stations are separated by at least six feet.

☐ Break rooms, bathrooms, and other common areas are being disinfected frequently, on the following schedule:
      ☐ Break rooms:
      ☐ Bathrooms:
      ☐ Other (           ):

☐ Disinfectant and related supplies are available to all employees at the following location(s):

☐ Hand sanitizer effective against COVID-19 is available to all employees at the following location(s):

☐ Soap and water are available to all employees at the following location(s):

☐ Copies of this Protocol have been distributed to all employees.

☐ Optional—Describe other measures:

___

*Measures To Prevent Crowds From Gathering (check all that apply to the facility):*

☐ Limit the number of customers in the store at any one time to _____, which allows for customers and employees to easily maintain at least six-foot distance from one another at all practicable times.

☐ Post an employee at the door to ensure that the maximum number of customers in the facility set forth above is not exceeded.

**Appendix A: Social Distancing Protocol** (Updated April 29, 2020)

☐ Placing per-person limits on goods that are selling out quickly to reduce crowds and lines. Explain:

☐ Optional—Describe other measures:

---

### *Measures To Keep People At Least Six Feet Apart (check all that apply to the facility)*

☐ Placing signs outside the store reminding people to be at least six feet apart, including when in line.

☐ Placing tape or other markings at least six feet apart in customer line areas inside the store and on sidewalks at public entrances with signs directing customers to use the markings to maintain distance.

☐ Separate order areas from delivery areas to prevent customers from gathering.

☐ All employees have been instructed to maintain at least six feet distance from customers and from each other, except employees may momentarily come closer when necessary to accept payment, deliver goods or services, or as otherwise necessary.

☐ Optional—Describe other measures:

---

### *Measures To Prevent Unnecessary Contact (check all that apply to the facility):*

☐ Preventing people from self-serving any items that are food-related.

☐ Lids for cups and food-bar type items are provided by staff; not to customers to grab.

☐ Bulk-item food bins are not available for customer self-service use.

☐ Not permitting customers to bring their own bags, mugs, or other reusable items from home.

☐ Providing for contactless payment systems or, if not feasible, sanitizing payment systems regularly. Describe:

☐ Optional—Describe other measures (e.g. providing senior-only hours):

---

### *Measures To Increase Sanitization (check all that apply to the facility):*

☐ Disinfecting wipes that are effective against COVID-19 are available near shopping carts and shopping baskets.

☐ Employee(s) assigned to disinfect carts and baskets regularly.

☐ Hand sanitizer, soap and water, or effective disinfectant is available to the public at or near the entrance of the facility, at checkout counters, and anywhere else where people have direct interactions.

☐ Disinfecting all payment portals, pens, and styluses after each use.

☐ Disinfecting all high-contact surfaces frequently.

☐ Optional—Describe other measures:

\* Any additional measures not included here should be listed on separate pages and attached to this document.

**You may contact the following person with any questions or comments about this protocol:**

**Name:**                                            **Phone number:**

Appendix B-1

**Small Construction Project Safety Protocol**

1. Any construction project meeting any of the following specifications is subject to this Small Construction Project Safety Protocol ("SCP Protocol"), including public works projects unless otherwise specified by the Health Officer:

   a. For residential projects, any single-family, multi-family, senior, student, or other residential construction, renovation, or remodel project consisting of 10 units or less. This SCP Protocol does not apply to construction projects where a person is performing construction on their current residence either alone or solely with members of their own household.

   b. For commercial projects, any construction, renovation, or tenant improvement project consisting of 20,000 square feet of floor area or less.

   c. For mixed-use projects, any project that meets both of the specifications in subsection 1.a and 1.b.

   d. All other construction projects not subject to the Large Construction Project Safety Protocol set forth in Appendix B-2.

2. The following restrictions and requirements must be in place at all construction job sites subject to this SCP Protocol:

   a. Comply with all applicable and current laws and regulations including but not limited to OSHA and Cal-OSHA. If there is any conflict, difference, or discrepancy between or among applicable laws and regulations and/or this SCP Protocol, the stricter standard shall apply.

   b. Designate a site-specific COVID-19 supervisor or supervisors to enforce this guidance. A designated COVID-19 supervisor must be present on the construction site at all times during construction activities. A COVID-19 supervisor may be an on-site worker who is designated to serve in this role.

   c. The COVID-19 supervisor must review this SCP Protocol with all workers and visitors to the construction site.

   d. Establish a daily screening protocol for arriving staff to ensure that potentially infected staff do not enter the construction site. If workers leave the jobsite and return the same day, establish a cleaning and decontamination protocol prior to entry and exit of the jobsite. Post the daily screening protocol at all entrances and exits to the jobsite. More information on screening can be found online at: https://www.cdc.gov/coronavirus/2019-ncov/community/index.html.

   e. Practice social distancing by maintaining a minimum six-foot distance between workers at all times, except as strictly necessary to carry out a task associated with the construction project.

1

(Rev. 4/29/20)

**Appendix B-1**

f.   Where construction work occurs within an occupied residential unit, separate work areas must be sealed off from the remainder of the unit with physical barriers such as plastic sheeting or closed doors sealed with tape to the extent feasible.  If possible, workers must access the work area from an alternative entry/exit door to the entry/exit door used by residents.  Available windows and exhaust fans must be used to ventilate the work area.  If residents have access to the work area between workdays, the work area must be cleaned and sanitized at the beginning and at the end of workdays.  Every effort must be taken to minimize contact between workers and residents, including maintaining a minimum of six feet of social distancing at all times.

g.   Where construction work occurs within common areas of an occupied residential or commercial building or a mixed-use building in use by on-site employees or residents, separate work areas must be sealed off from the rest of the common areas with physical barriers such as plastic sheeting or closed doors sealed with tape to the extent feasible. If possible, workers must access the work area from an alternative building entry/exit door to the building entry/exit door used by residents or other users of the building. Every effort must be taken to minimize contact between worker and building residents and users, including maintaining a minimum of six feet of social distancing at all times.

h.   Prohibit gatherings of any size on the jobsite, including gatherings for breaks or eating, except for meetings regarding compliance with this protocol or as strictly necessary to carry out a task associated with the construction project.

i.   Cal-OSHA requires employers to provide water, which should be provided in single-serve containers.  Sharing of any of any food or beverage is strictly prohibited and if sharing is observed, the worker must be sent home for the day.  Use of microwaves, water coolers, and other similar shared equipment is prohibited.

j.   Provide personal protective equipment (PPE) specifically for use in construction, including gloves, goggles, face shields, and face coverings as appropriate for the activity being performed.  At no time may a contractor secure or use medical-grade PPE unless required due to the medical nature of a jobsite.  Face coverings must be worn in compliance with the April 17, 2020 Guidance from the County of Santa Clara Public Health Department, available at: https://www.sccgov.org/sites/covid19/Pages/learn-what-to-do.aspx#howto.

k.   Strictly control "choke points" and "high-risk areas" where workers are unable to maintain six-foot social distancing and prohibit or limit use to ensure that six-foot distance can easily be maintained between individuals.

l.   Minimize interactions and maintain social distancing with all site visitors, including delivery workers, design professional and other project consultants, government agency representatives, including building and fire inspectors, and residents at residential construction sites.

m.   Stagger trades as necessary to reduce density and allow for easy maintenance of minimum six-foot separation.

(Rev. 4/29/20)

Appendix B-1

n.  Discourage workers from using others' desks, work tools, and equipment.  If more than one worker uses these items, the items must be cleaned and disinfected with disinfectants that are effective against COVID-19 in between use by each new worker.  Prohibit sharing of PPE.

o.  If hand washing facilities are not available at the jobsite, place portable wash stations or hand sanitizers that are effective against COVID-19 at entrances to the jobsite and in multiple locations dispersed throughout the jobsite as warranted.

p.  Clean and sanitize any hand washing facilities, portable wash stations, jobsite restroom areas, or other enclosed spaces daily with disinfectants that are effective against COVID-19.  Frequently clean and disinfect all high touch areas, including entry and exit areas, high traffic areas, rest rooms, hand washing areas, high touch surfaces, tools, and equipment

q.  Maintain a daily attendance log of all workers and visitors that includes contact information, including name, phone number, address, and email.

r.  Post a notice in an area visible to all workers and visitors instructing workers and visitors to do the following:
    i.  Do not touch your face with unwashed hands or with gloves.
    ii.  Frequently wash your hands with soap and water for at least 20 seconds or use hand sanitizer with at least 60% alcohol.
    iii.  Clean and disinfect frequently touched objects and surfaces such as work stations, keyboards, telephones, handrails, machines, shared tools, elevator control buttons, and doorknobs.
    iv.  Cover your mouth and nose when coughing or sneezing, or cough or sneeze into the crook of your arm at your elbow/sleeve.
    v.  Do not enter the jobsite if you have a fever, cough, or other COVID-19 symptoms.  If you feel sick, or have been exposed to anyone who is sick, stay at home.
    vi.  Constantly observe your work distances in relation to other staff.  Maintain the recommended minimum six feet at all times when not wearing the necessary PPE for working in close proximity to another person.
    vii.  Do not carpool to and from the jobsite with anyone except members of your own household unit, or as necessary for workers who have no alternative means of transportation.
    viii.  Do not share phones or PPE.

s.  In the event of a confirmed case of COVID-19 at any jobsite, the following must take place:
    i.  Immediately remove the infected individual from the jobsite with directions to seek medical care.
    ii.  Each location the infected worker was at must be decontaminated and sanitized by an outside vendor certified in hazmat clean ups, and work in these locations must cease until decontamination and sanitization is complete.
    iii.  The County Public Health Department must be notified immediately and any additional requirements per the County health officials must be completed, including full compliance with any tracing efforts by the County.

(Rev. 4/29/20)

Appendix B-2


**Large Construction Project Safety Protocol**


1. Any construction project meeting any of the following specifications is subject to this Large Construction Project Safety Protocol ("LCP Protocol"), including public works projects unless otherwise specified by the Health Officer:

   a. For residential construction projects, any single-family, multi-family, senior, student, or other residential construction, renovation, or remodel project consisting of more than 10 units.

   b. For commercial construction projects, any construction, renovation, or tenant improvement project consisting of more than 20,000 square feet of floor area.

   c. For construction of Essential Infrastructure, as defined in section 16.c of the Order, any project that requires five or more workers at the jobsite at any one time.

2. The following restrictions and requirements must be in place at all construction job sites subject to this LCP Protocol:

   a. Comply with all applicable and current laws and regulations including but not limited to OSHA and Cal-OSHA. If there is any conflict, difference or discrepancy between or among applicable laws and regulations and/or this LCP Protocol, the stricter standard will apply.

   b. Prepare a new or updated Site-Specific Health and Safety Plan to address COVID-19-related issues, post the Plan on-site at all entrances and exits, and produce a copy of the Plan to County governmental authorities upon request. The Plan must be translated as necessary to ensure that all non-English speaking workers are able to understand the Plan.

   c. Provide personal protective equipment (PPE) specifically for use in construction, including gloves, goggles, face shields, and face coverings as appropriate for the activity being performed. At no time may a contractor secure or use medical-grade PPE, unless required due to the medical nature of a job site. Face coverings must be worn in compliance with the April 17, 2020 Guidance from the County of Santa Clara Public Health Department, available at: https://www.sccgov.org/sites/covid19/Pages/learn-what-to-do.aspx#howto.

   d. Ensure that employees are trained in the use of PPE. Maintain and make available a log of all PPE training provided to employees and monitor all employees to ensure proper use of the PPE.

   e. Prohibit sharing of PPE.

(Rev. 4/29/20)

1

**Appendix B-2**

f.  Implement social distancing requirements including, at minimum:

   i.  Stagger stop- and start-times for shift schedules to reduce the quantity of workers at the jobsite at any one time to the extent feasible.

   ii.  Stagger trade-specific work to minimize the quantity of workers at the jobsite at any one time.

   iii.  Require social distancing by maintaining a minimum six-foot distance between workers at all times, except as strictly necessary to carry out a task associated with the project.

   iv.  Prohibit gatherings of any size on the jobsite, except for safety meetings or as strictly necessary to carry out a task associated with the project.

   v.  Strictly control "choke points" and "high-risk areas" where workers are unable to maintain minimum six-foot social distancing and prohibit or limit use to ensure that minimum six-foot distancing can easily be maintained between workers.

   vi.  Minimize interactions and maintain social distancing with all site visitors, including delivery workers, design professional and other project consultants, government agency representatives, including building and fire inspectors, and residents at residential construction sites.

   vii.  Prohibit workers from using others' phones or desks.  Any work tools or equipment that must be used by more than one worker must be cleaned with disinfectants that are effective against COVID-19 before use by a new worker.

   viii.  Place wash stations or hand sanitizers that are effective against COVID-19 at entrances to the jobsite and in multiple locations dispersed throughout the jobsite as warranted.

   ix.  Maintain a daily attendance log of all workers and visitors that includes contact information, including name, address, phone number, and email.

   x.  Post a notice in an area visible to all workers and visitors instructing workers and visitors to do the following:

      1.  Do not touch your face with unwashed hands or with gloves.

      2.  Frequently wash your hands with soap and water for at least 20 seconds or use hand sanitizer with at least 60% alcohol.

      3.  Clean and disinfect frequently touched objects and surfaces such as workstations, keyboards, telephones, handrails, machines, shared tools, elevator control buttons, and doorknobs.

      4.  Cover your mouth and nose when coughing or sneezing or cough or sneeze into the crook of your arm at your elbow/sleeve.

      5.  Do not enter the jobsite if you have a fever, cough, or other COVID-19 symptoms.  If you feel sick, or have been exposed to anyone who is sick, stay at home.

      6.  Constantly observe your work distances in relation to other staff. Maintain the recommended minimum six-feet distancing at all times when not wearing the necessary PPE for working in close proximity to another person.

      7.  Do not share phones or PPE.

(Rev. 4/29/20)

**Appendix B-2**

xi. The notice in section 2.f.x must be translated as necessary to ensure that all non-English speaking workers are able to understand the notice.

g. Implement cleaning and sanitization practices in accordance with the following:
   i. Frequently clean and sanitize, in accordance with CDC guidelines, all high-traffic and high-touch areas including, at a minimum: meeting areas, jobsite lunch and break areas, entrances and exits to the jobsite, jobsite trailers, hand-washing areas, tools, equipment, jobsite restroom areas, stairs, elevators, and lifts.
   ii. Establish a cleaning and decontamination protocol prior to entry and exit of the jobsite and post the protocol at entrances and exits of jobsite.
   iii. Supply all personnel performing cleaning and sanitization with proper PPE to prevent them from contracting COVID-19. Employees must not share PPE.
   iv. Establish adequate time in the workday to allow for proper cleaning and decontamination including prior to starting at or leaving the jobsite for the day.

h. Implement a COVID-19 community spread reduction plan as part of the Site-Specific Health and Safety Plan that includes, at minimum, the following restrictions and requirements:
   i. Prohibit all carpooling to and from the jobsite except by workers living within the same household unit, or as necessary for workers who have no alternative means of transportation.
   ii. Cal-OSHA requires employers to provide water, which should be provided in single-serve containers. Prohibit any sharing of any food or beverage and if sharing is observed, the worker must be sent home for the day.
   iii. Prohibit use of microwaves, water coolers, and other similar shared equipment.

i. Assign a COVID-19 Safety Compliance Officer (SCO) to the jobsite and ensure the SCO's name is posted on the Site-Specific Health and Safety Plan. The SCO must:
   i. Ensure implementation of all recommended safety and sanitation requirements regarding the COVID-19 virus at the jobsite.
   ii. Compile daily written verification that each jobsite is compliant with the components of this LCP Protocol. Each written verification form must be copied, stored, and made immediately available upon request by any County official.
   iii. Establish a daily screening protocol for arriving staff, to ensure that potentially infected staff do not enter the construction site. If workers leave the jobsite and return the same day, establish a cleaning and decontamination protocol prior to entry and exit of the jobsite. Post the daily screening protocol at all entrances and exit to the jobsite. More information on screening can be found online at: https://www.cdc.gov/coronavirus/2019-ncov/community/index.html.
   iv. Conduct daily briefings in person or by teleconference that must cover the following topics:
      1. New jobsite rules and pre-job site travel restrictions for the prevention of COVID-19 community spread.
      2. Review of sanitation and hygiene procedures.
      3. Solicitation of worker feedback on improving safety and sanitation.
      4. Coordination of construction site daily cleaning/sanitation requirements.
      5. Conveying updated information regarding COVID-19.

(Rev. 4/29/20)

Appendix B-2

      6.  Emergency protocols in the event of an exposure or suspected exposure to COVID-19.

    v.  Develop and ensure implementation of a remediation plan to address any non-compliance with this LCP Protocol and post remediation plan at entrance and exit of jobsite during remediation period.  The remediation plan must be translated as necessary to ensure that all non-English speaking workers are able to understand the document.

    vi.  The SCO must not permit any construction activity to continue without bringing such activity into compliance with these requirements.

    vii.  Report repeated non-compliance with this LCP Protocol to the appropriate jobsite supervisors and a designated County official.

j.  Assign a COVID-19 Third-Party Jobsite Safety Accountability Supervisor (JSAS) for the jobsite, who at a minimum holds an OSHA-30 certificate and first-aid training within the past two years, who must be trained in the protocols herein and verify compliance, including by visual inspection and random interviews with workers, with this LCP Protocol.

    i.  Within seven calendar days of each jobsite visit, the JSAS must complete a written assessment identifying any failure to comply with this LCP Protocol.  The written assessment must be copied, stored, and, upon request by the County, sent to a designated County official.

    ii.  If the JSAS discovers that a jobsite is not in compliance with this LCP Protocol, the JSAS must work with the SCO to develop and implement a remediation plan.

    iii.  The JSAS must coordinate with the SCO to prohibit continuation of any work activity not in compliance with rules stated herein until addressed and the continuing work is compliant.

    iv.  The remediation plan must be sent to a designated County official within five calendar days of the JSAS's discovery of the failure to comply.

k.  In the event of a confirmed case of COVID-19 at any jobsite, the following must take place:

    i.  Immediately remove the infected individual from the jobsite with directions to seek medical care.

    ii.  Each location the infected worker was at must be decontaminated and sanitized by an outside vendor certified in hazmat clean ups, and work in these locations must cease until decontamination and sanitization is complete.

    iii.  The County Public Health Department must be notified immediately and any additional requirements per the County health officials must be completed, including full compliance with any tracing efforts by the County.

l.  Where construction work occurs within an occupied residential unit, any separate work area must be sealed off from the remainder of the unit with physical barriers such as plastic sheeting or closed doors sealed with tape to the extent feasible.  If possible, workers must access the work area from an alternative entry/exit door to the entry/exit door used by residents.  Available windows and exhaust fans must be used to ventilate the work area.  If residents have access to the work area between workdays, the work area must be cleaned and

4

(Rev. 4/29/20)

Appendix B-2

sanitized at the beginning and at the end of workdays. Every effort must be taken to minimize contact between workers and residents, including maintaining a minimum of six feet of social distancing at all times.

m.  Where construction work occurs within common areas of an occupied residential or commercial building or a mixed-use building in use by on-site employees or residents, any separate work area must be sealed off from the rest of the common areas with physical barriers such as plastic sheeting or closed doors sealed with tape to the extent feasible. If possible, workers must access the work area from an alternative building entry/exit door to the building entry/exit door used by residents or other users of the building. Every effort must be taken to minimize contact between worker and building residents and users, including maintaining a minimum of six feet of social distancing at all times.

5

EXHIBIT 8

**STAY WELL VC**
**Safely Reopening Ventura County**

**ORDER OF THE VENTURA COUNTY HEALTH
OFFICER SUPPLEMENTING THE STATE
PUBLIC HEALTH OFFICER'S ORDER DATED
MARCH 19, 2020, TO ADDRESS THE UNIQUE
NEEDS OF VENTURA COUNTY IN RESPONSE
TO THE COVID-19 PANDEMIC**

**DATE OF THIS ORDER: <u>MAY 7, 2020</u>**

**[As amended May 20, 2020]**

**WHEREAS** on March 4, 2020, Governor Gavin Newsom proclaimed a State of Emergency to exist in the State of California as a result of the threat of COVID-19; and

**WHEREAS** on March 12, 2020, the County of Ventura Health Officer ("County Health Officer") issued a Declaration of Local Health Emergency pursuant to Health and Safety Code section 101080, finding that there existed an imminent and proximate threat of the spread of COVID-19 in Ventura County ("County"), and said Declaration was ratified by the County of Ventura Board of Supervisors on March 12, 2020; and

**WHEREAS** on March 17, 2020, the County Health Officer issued an order directing that all individuals past a certain age remain in their places of residence, limiting the operation of food facilities, and closing specified businesses that serve large gatherings; and

**WHEREAS** on March 19, 2020, the State Public Health Officer issued an order requiring that all individuals living in the State of California stay at home except as needed to maintain continuity of operations of critical infrastructure sectors as defined ("State Stay at Home Order"); and

**WHEREAS** the County Health Officer is required by Health and Safety Code section 101030 to enforce and observe all orders of the State Public Health Officer and all statutes relating to public health; and

**WHEREAS** State law permits local health officers to issue public health orders that are more restrictive, but not less restrictive, than an order issued by the State Public Health Officer, the County Health Officer, based on his evaluation of the unique needs and circumstances existing within the County, issued additional health orders on March 20, March 31, April 9, April 18 and April 20, 2020; and

1

WHEREAS the County Health Officer has determined that there no longer exists a need for local health orders that are more restrictive than the State Stay at Home Order with respect to many activities of individuals and businesses, and that the public health and welfare would best be served by a single set of regulations where reasonable to avoid public confusion between State and local orders; and

WHEREAS the State of California has identified businesses on its website at https://covid19.ca.gov/roadmap/ that are able to reopen under the statewide order; and

WHEREAS the County Health Officer has determined that some elements of his current order are not addressed by the State Stay at Home Order, and that the public health would be served by supplementing the State Stay at Home Order as set forth below;

NOW, THEREFORE, I, Dr. Robert Levin, the County Health Officer, pursuant to Health and Safety Code sections 101040, 101085 and 120175, hereby issue the following order ("Local Order") to be effective immediately:

IT IS HEREBY ORDERED THAT:

1. **Commercial laboratory test results.** All commercial laboratories that test persons in the County for the presence of COVID-19 must report all test results (whether positive or negative) to the Ventura County Public Health Department laboratory within eight hours of receiving the test results.

2. **Special rule for persons 70 years of age or older.** All persons currently living in the County equal to or older than 75 years of age, or equal to or older than 70 years of age with an active or unstable comorbidity, are ordered to stay in their place of residence and must at all times follow Social Distancing Requirements to the greatest extent feasible. Such persons may leave their places of residence only as necessary to seek medical care or exercise or nutrition or to perform essential work in furtherance of Healthcare Operations or Essential Governmental Functions or Services.

   a. For purposes of this section, "Healthcare Operations" means and includes hospitals, clinics, dentists, pharmacies, pharmaceutical and biotechnology companies, other licensed healthcare facilities, healthcare suppliers, home healthcare services providers, mental health providers, chiropractors, acupuncturists or any related and/or ancillary healthcare services, including blood donation centers, and veterinarians and all other healthcare services provided to

animals. "Healthcare Operation" does not include fitness and exercise gyms, aquatic centers and similar facilities.

b.  For purposes of this section, "Essential Governmental Functions or Services" means government functions or services performed by first responders, emergency management personnel, emergency dispatchers, court personnel, law enforcement personnel, and others who perform essential governmental functions or services as such may be determined by the governmental entity performing those functions or services.

3.  **Admittance to Long-Term Care Facilities.** Long-Term Care Facilities may not refuse to admit any person who has been diagnosed with or treated for COVID-19 after that person has been discharged from a health care facility and approved for admittance to a Long-Term Care Facility by the Ventura County Public Health Department.

a.  For purposes of this Local Order, "Long-Term Care Facility" means a long-term care facility, skilled nursing facility, intermediate care facility, congregate living health facility, nursing facility, hospice facility, residential care facility for the elderly, residential facility, or community care facility as defined in Health and Safety Code sections 1250, 1502, 1503.5 and 1569, and regulations promulgated thereunder, as they may be amended from time to time.

4.  **Hospitals and Long-Term Care Facilities.** The County Health Officer recognizes the authority of the guidance documents "Hospital Holding Unit Guidance for COVID-19" and "Long-Term Care Facility Guidance for Preventing and Managing COVID-19" (the current versions of which are available at www.vcemergency.com) and strongly advises all hospitals and Long-Term Care Facilities to comply with the guidance.

5.  **All businesses must establish, implement and enforce COVID-19 prevention plans**.  All businesses must establish, implement and enforce a site-specific prevention plan in accordance with the State of California COVID-19 industry Guidance and associated checklist found at https://covid19.ca.gov/roadmap/. Prior to reopening, all businesses must register and attest to their preparedness for safely reopening at vcreopen.com.  Businesses that were operating under the previous order must also register and attest to their adherence to state guidelines within ten days at vcreopen.com.

As a condition of operation, each business must post a written notice explaining how it will comply with Social Distancing Requirements in conspicuous places

3

where it can easily be seen by employees and patrons of the business facility. The written posting shall identify by name and telephone number the County Covid Compliance Hotline where compliance related questions or complaints may be reported by employees and patrons.

Further, all businesses, as a condition of operation, shall admit without delay any officer, employee or agent of the County of Ventura or local city to their business facilities for the purposes of inspection for monitoring and compliance. The failure to cooperate with such inspectors, or repeated and confirmed violations of COVID-19 prevention requirements, may lead to issuance of a business-specific closure order by the County Health Officer.

6.     **Social Distancing Requirements defined.** "Social Distancing Requirements" means and includes maintaining at least a six-foot physical distance from other persons, washing hands with soap and water for at least 20 seconds or using hand sanitizer as frequently as possible, covering coughs or sneezes (into the sleeve or elbow, not hands), regularly cleaning high-touch surfaces and not shaking hands.

7.     **Repealed May 20, 2020**  ~~**Food facilities.** Under the State Stay at Home Order, all permanent food facilities, as defined by Health and Safety Code section 113849, may only prepare and offer food that is provided to customers via delivery service, via pick-up for takeout dining, and via drive-thru. This Local Order, in addition, requires that permanent food facilities that prepare and offer food via delivery service, pick-up or drive-thru must comply with the following procedures:~~

~~a.  Containers required. All food must be completely contained in a suitable container before being transferred to a customer. For example, ice cream cones are not allowed; ice cream scoops in a covered container are allowed.~~

~~b.  Must consume food away from premises. The exception for take-out food activities is designed to enable persons who are confined to their places of residence to obtain prepared food to take back to their places of residence for consumption. The take-out food shall not be consumed anywhere within the line-of-sight of a person standing in front of the facility that sold the food.~~

~~c.  Six-foot spacing must be maintained. All persons waiting in line or otherwise congregating outside a food facility selling food via take-out, delivery or drive-thru~~

4

~~shall maintain a distance of at least six feet from all other persons.~~

8.    **Repealed May 20, 2020**  ~~**Primary retail business must be critical infrastructure to be fully open.** Only retail businesses whose primary line of business qualifies as critical infrastructure under the State Stay at Home Order may be fully open to the public, e.g., businesses whose primary business is the sale of food, beverages, pet supplies, household cleaning products, etc. Items the sale of which constitute less than 33 percent of a business's gross sales over the last six months are considered to be less than primary. For example, a tobacco or vape store that sells a minimal amount of snacks and water as a side business does not qualify as a grocery store, convenience store or similar establishment that can be fully open to the public under the current State Stay at Home Order.~~

9.    **Businesses and activities that must remain closed even if allowed by State Stay at Home Order.** The State Stay at Home Order does not expressly address every type of business activity. To avoid confusion, this Local Order prohibits the following businesses and activities, whether or not allowed by the State Stay at Home Order:

      a.  All swimming pools, spas, hot tubs, saunas, steam rooms and similar facilities, except those located at a single-family residence, which shall be used only by members of a household residing at the single-family residence.

      b.  All public and private campgrounds and recreational vehicle (RV) parks, except that persons who certify that their RV is their primary residence may be permitted to stay in the RV park. All persons residing in an RV shall comply with all orders otherwise applicable to residents.

10.   **List of activities ordered to cease.** The following activities are deemed non-essential and harmful to public health, and therefore are prohibited whether or not allowed by the State Stay at Home Order:

      a.  Door-to-Door Solicitations. Door-to-door solicitations, whether for purposes of sales of goods or services, charitable contributions, signature-gathering or any other commercial or noncommercial purpose.

11.   **Essential activities allowed.** The State Stay at Home Order implicitly allows for persons to leave their places of residence to engage in essential activities, but does not expressly address that issue. The State Public Health Officer has issued guidance, primarily in the form of posted answers to "Frequently Asked

Questions," which are frequently amended or otherwise changed. For the sake of clarity and guidance to persons residing in the County, this section of the Local Order sets forth those activities that the County Health Officer deems to be essential and allowed. However, to the extent any activity described herein conflicts with and is more permissive than the State Stay at Home Order as it is currently written or as it may be amended, the State Stay at Home Order shall take precedence and shall be enforced.

a.  Persons may leave their places of residence only to perform one of the following essential activities:

(1)  To engage in activities or perform tasks essential to their health and safety, or to the health and safety of their family or household members (including pets), such as, by way of example, obtaining medical supplies or medication, visiting a health care professional or obtaining supplies needed to work from a place of residence.

(2)  To obtain necessary services or supplies for themselves and their family or household members, or to deliver those services or supplies to others, such as, by way of example, canned food, dry goods, fresh fruits and vegetables, pet supplies, fresh meats, fish and poultry, and any other household consumer products, and products necessary to maintain the safety, sanitation and essential operation of places of residence.

(3)  To engage in funeral services, provided the following restrictions are observed:

(i) For indoor services, where the body of the deceased is present for viewing or in a closed casket, members of the deceased's household and the relatives of the deceased within the second degree (including in-laws) may gather for the activity provided that Social Distancing Requirements are followed and that no more than five persons gather inside the facility at a single time. Stable groups of five persons (i.e., persons may not substitute in or out of the group) may rotate within the facility providing protocols are implemented to sanitize the facilities between each group visit.
(ii) For graveside services, members of the deceased's household and the relatives of the deceased within the second degree (including

in-laws) may gather for the activity provided that Social Distancing Requirements are followed and that no more than 10 persons gather.

(4)  To engage in a wedding ceremony, provided that Social Distancing Requirements are followed to the greatest extent feasible and that no more than 10 persons (who need not be from the same household or living unit), in addition to the couple to be married and the officiant, gather in a stable group.

(5)  To attend a gathering of any size to observe or participate in live or virtual presentations to the gathering, such as faith-based services, concerts, plays, political speeches, movies and similar activities, provided that all of the following protocols are followed:

(i) all activity must occur outdoors;
(ii) all persons attending the activity must be inside a motor vehicle occupied only by persons from the same household or living unit;
(iii) all motor vehicles at the gathering must maintain a distance of six feet from all other vehicles;
(iv) the motor vehicle windows must be closed at all times during the event;
(v) all persons must remain in the vehicle in which they arrived at all times during the event;
(vi) no restroom facilities shall be made available to persons at the facility during the event;
(vii) no tangible items of any kind, including food products, may be transferred to persons in the motor vehicles;
(viii) notwithstanding the above, one or more persons, not exceeding five, may enter nearby buildings as necessary to putting on the presentation; and
(ix) all Social Distancing Requirements shall be complied with to the greatest extent feasible.

(6)  To engage in outdoor activity, provided the persons comply with Social Distancing Requirements, such as, by way of example, golfing, tennis, pickle-ball, walking, hiking, running, bicycling, pleasure driving and working around their places of residence, including gardening.

(i) To provide accommodations for persons who wish to golf as a

7

form of outdoor activity, public and private golf courses may operate provided they strictly enforce Social Distancing Requirements and enforce the following additional protocols:

> (a) Motorized carts are not allowed;
> (b) No more than four golfers (who need not be from the same household or living unit), are allowed per group and each group must be stable (i.e., persons may not substitute in or out of the group);
> (c) A distance of at least 30 feet shall be maintained between groups of golfers at all times;
> (d) All ball washers shall be covered and flag pins shall be removed and the cup on each green shall be inverted or otherwise installed to eliminate high-frequency touch surfaces on the greens and tees;
> (e) Persons may use a driving range provided that range balls are properly sanitized before distribution to customers (stand-alone golf driving ranges may also operate);
> (f) Practice putting greens shall remain closed;
> (g) The "Pro Shop" or similar facility designed for the sale of golf-related equipment and supplies shall remain closed; and
> (h) The snack shop(s) and restaurant(s) shall remain closed.

(7)  To otherwise carry out activities specifically permitted in this Local Order.

(8)  To care for a family member or pet in another household.

(9)  To prepare and present a live-stream or other virtual communication by an organization or association to its members, including worship services. Staff of organizations or associations (who need not be of the same household or living unit), including faith-based organizations, may gather in a single space at the same time solely for the purpose of preparing and presenting live-stream or other virtual communications provided that the number of such staff is the fewest necessary to prepare and present those communications, but in no event in excess of 10 persons, and that Social Distancing Requirements are followed.

12.   **<u>Compliance.</u>** The violation of any provision of this Local Order or the State Stay at Home Order constitutes a threat to public health and a public nuisance per se.  In

addition, pursuant to Government Code sections 26602 and 41601 and Health and Safety Code section 101029, the County Health Officer requests that the Sheriff and all chiefs of police in the County ensure compliance with and enforce this Local Order.

13.   **Violation may constitute unfair competition.** Any person that, after notice, operates, manages, maintains or occupies or continues to operate, manage, maintain or occupy, any business in violation of this Local Order or the State Stay at Home Order may, in addition or in the alternative to any other civil and criminal penalties allowed by law, be subject to liability under the Unfair Competition Law (chapter 5 of part 2 of division 7 of the Business and Professions Code, commencing at section 17200), and subject to civil penalties and other relief as provided therein, for each act or practice in violation of this Local Order, the State Stay at Home Order, any predecessor order, or any of them.

14.   **More restrictive provisions of local and State orders enforceable.** This Local Order is issued to supplement the State Stay at Home Order, which establishes minimum requirements for individuals and businesses, as well as the Governor's March 19, 2020 Executive Order N-33-20 directing California residents to follow the State Stay at Home Order. This Local Order adopts in certain respects more stringent restrictions addressing the particular facts and circumstances in this County, which are necessary to control the public health emergency as it is evolving within the County and the south coast region. Where a conflict exists between this Local Order and any State public health order, including the State Stay at Home Order, the more restrictive provision controls.

15.   **Applicable to entire County.** This Local Order applies to all persons in the cities and the entire unincorporated area of the County.

16.   **Effective date and time; repeal of prior order.** This Local Order shall become effective and operative at 11:59 p.m. on May 7, 2020, and will continue to be in effect until 11:59 p.m. on May 31, 2020, or until it is extended, rescinded, superseded or amended in writing by the County Health Officer. The County Health Officer order dated April 20, 2020, is hereby repealed and replaced with this Local Order, except that all prior violations of previous orders remain prosecutable, criminally or civilly. All prior closure or cease and desist orders directed at specified persons or businesses shall remain in force, but shall be reviewed by enforcement staff and rescinded if appropriate.

17.   **Copies of Local Order.** Copies of this Local Order shall promptly be: (1) made

9

available at the County of Ventura Public Health Office, 2240 East Gonzalez Road, Suite 210, Oxnard, California, 93036; (2) posted on the Ventura County Public Health Department website (available at www.vchca.org/ph); and (3) provided to any member of the public requesting a copy of this Local Order.

18.    **Severability.** If any provision of this Local Order or the application thereof to any person or circumstance is held to be invalid by a court of competent jurisdiction, the remainder of the Local Order, including the application of such part or provision to other persons or circumstances, shall not be affected and shall continue in full force and effect. To this end, the provisions of this Local Order are severable.

**IT IS SO ORDERED:**

Dated: May __7__, 2020

Robert Levin, M.D.
Ventura County Health Officer

Pursuant to Health and Safety Code section 120295 et seq., violation of or failure to comply with this Order is a misdemeanor punishable by fine, imprisonment, or both.

10